UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

**FILED**

JUL 15 2016

CLERK

| | |
|---|---|
| Gary L. Chute, individually and personally, and as the Personal Representative of the Estate of Donna M. Chute | ) ) ) ) |
| Plaintiff | ) ) |
| vs. | ) Case No. _16-5064_ ) |
| Nifty-Fifties, Inc. | ) ) |
| Markel Service, Incorporated (CA dba Markel Insurance Services) | ) ) COMPLAINT |
| Lynn, Jackson, Shultz & Lebrun, P.C. and an Unknown Supervising Attorney | ) ) ) |
| Catherine Sabers, Attorney | ) ) |
| Barbara Anderson Lewis, Attorney | ) ) |
| Marcia Hultman, South Dakota Secretary of Labor and Regulation, in her official capacity, and individually | ) ) ) ) |
| Donald W. Hageman, Administrative Law Judge for the South Dakota Department of Labor and Regulation, in his official capacity, and individually as an attorney | ) ) ) ) ) |
| Honorable Heidi L. Linngren, Seventh Judicial Circuit Court Judge, in her official capacity, and individually as an attorney | ) ) ) ) |
| Honorable David Gilbertson, South Dakota Supreme Court Chief Justice, in his official capacity and  individually as an attorney | ) ) ) ) |
| Honorable Steven L. Zinter, South Dakota Supreme Court Justice, in his official capacity, and | ) ) |

1

individually as an attorney                              )
                                                          )
Honorable Glen A. Severson, South Dakota                  )
Supreme Court Justice, in his official capacity, and      )
individually as an attorney                              )
                                                          )
Honorable Lori S. Wilbur, South Dakota Supreme            )
Court Justice, in her official capacity, and              )
individually as an attorney                              )
                                                          )
Honorable Janine M. Kern, South Dakota Supreme            )
Court Justice, in her official capacity, and              )
individually as an attorney                              )
                                                          )
and Five Unknown South Dakota Supreme Court               )
Law Clerks/Attorneys, in their official capacity and      )
individually as attorneys                                )
                                                          )
Honorable John G. Roberts, Jr., Chief Justice of          )
the United States Supreme Court, in his official          )
capacity, and individually as an attorney                )
                                                          )
Honorable Anthony M. Kennedy, Associate Justice           )
of the United States Supreme Court, in his official       )
capacity, and individually as an attorney                )
                                                          )
Honorable Clarence Thomas, Associate Justice              )
of the United States Supreme Court, in his official       )
capacity, and individually as an attorney                )
                                                          )
Honorable Ruth Bader Ginsburg, Associate Justice          )
of the United States Supreme Court, in her official       )
capacity, and individually as an attorney                )
                                                          )
Honorable Stephen G. Breyer, Associate Justice            )
of the United States Supreme Court, in his official       )
capacity, and individually as an attorney                )
                                                          )
Honorable Samuel Anthony Alito, Jr., Associate            )
Justice of the United States Supreme Court, in his        )
official capacity, and individually as an attorney        )
                                                          )
Honorable Sonia Sotomayor, Associate Justice              )
of the United States Supreme Court, in her official       )
capacity, and individually as an attorney                )
                                                          )

2

Honorable Elena Kagan, Associate Justice of the  )
United States Supreme Court, in her official  )
capacity, and individually as an attorney  )
  )
And at least Eight Unknown United States Supreme )
Court Law Clerks/Attorneys, in their official  )
capacity and individually as attorneys  )
  )
          Defendants  )

---

## JURISDICTION

## and PRELIMINARY STATEMENT

1.    The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.    The Plaintiff, Gary L. Chute (Mr. Chute), is a natural born citizen of the United States, and a resident of Rapid City, in Pennington County, South Dakota, and represents himself personally and individually, *pro se.*

3.    Mr. Chute, who is not an attorney, also represents (*pro se*) the Estate of his late wife, Donna M. Chute (Mrs. Chute), as he is the sole beneficiary of the Estate that has no creditors. *See* Jones ex rel Jones v. Correctional Medical Services, Inc., 401 F.3d 950 (8th Cir. 2005), Guest v. Hansen, 603 F.3d 15, 19-21 (2d Cir. 2010), and Bass v. Leatherwood, 788 F.3d 228, 230–31 (6th Cir. 2015).

4.    Mrs. Chute fell at work on September 10, 2008, and sustained compensable injuries under South Dakota Worker's Compensation laws. Mrs. Chute's Employer and place of employment at that time, was Defendant Nifty-Fifties Inc. (Employer), a South Dakota corporation located at 312 East Blvd. N., Rapid City, SD 57701; commonly known as Parkway Restaurant and Casino.

5.    At the time of her injury, Employer carried worker's compensation insurance issued by First Comp Insurance Company, located in a different State, at Central Park Plaza South, 222

South 15th St. STE 1200, Omaha, NE 68102. On November 23, 2013, First Comp Insurance

Company was merged into Defendant Markel Service, Incorporated (CA d/b/a Markel Insurance

Services)" (Insurer), whose primary place of business and corporate headquarters is also located

in a different State at: 4521 Highwoods Parkway, Glen Allen, VA 23060.

6.      This Court has jurisdiction over the Plaintiff and Insurer pursuant to 28 U.S.C. § 1332,

and supplemental jurisdiction over the Employer pursuant to 28 U.S.C. § 1367.

7.      First Comp Insurance Company, on an unknown date, hired Defendant law firm; Lynn,

Jackson, Shultz, & Lebrun, P.C., to represent them, and who have offices located at 909 St.

Joseph Street, Rapid City, SD, and 141 N. Main Avenue, Sioux Falls, SD.

8.      Defendant attorney Catherine Sabers (attorney Ms. Sabers) of said law firm, who has an

unknown supervising attorney (Unknown Defendant) filed a Notice of Appearance with the

South Dakota Department of Labor and Regulation (Department) on July 22, 2009, representing

the Insurer.

9.      Defendant attorney Barbara Anderson Lewis (attorney Ms. Lewis) of said law firm, who

also has an unknown supervising attorney (Unknown Defendant), later filed a Notice of

Appearance with the Department, also representing the Insurer.

10.     Plaintiff, Mr. Chute has numerous State causes of action against said law firm and

attorneys, individually and personally, and acting as agents of the Insurer (Defendant Markel),

making Defendant Markel vicariously liable, including claims for Deceit and Collusion pursuant

to SDCL § 16-18-28; Wrongful Death pursuant to SDCL § 21-5-5; Fraud and Fraudulent

Insurance Acts pursuant to SDCL § 58-4A-2; an action for personal injury pursuant to SDCL §

15-2-14, crimes and others. This Court has supplemental jurisdiction over Defendant law firm

and attorneys pursuant to 28 U.S.C. § 1367.

11.     Approximately two months after Mrs. Chute fell at work in 2008, Mr. Chute filed for Social Security disability insurance benefits on November 8, 2008, and was denied for years.

12.     In a distant, but related Social Security Disability case (CIV. 11-5062-JLV) before this Court and the Honorable Chief Judge Jeffrey L. Viken, the Plaintiff, Mr. Chute prevailed and was found to be disabled in two separate Social Security Administrative Hearings (first on January 14, 2013, and secondly on September 9, 2014 (Docket 116-1)) after two separate Remands were issued by this Court.

13.     Mrs.Chute died on July 17, 2013, and her ongoing workers compensation case survived.

14.     On April 14, 2014, Mr. Chute was duly appointed as the Personal Representative of his wife's Estate in the Seventh Judicial Circuit Court (PRO: 14-13), Pennington County, Rapid City, SD, and issued Letters. The worker's compensation case (cause of action for "Bad Faith") survived Mrs. Chute's death and is brought by the personal representative (Mr. Chute) pursuant to SDCL § 15-4-1. Mr. Chute has standing to sue and be sued pursuant to SDCL § 29A-3-703(c); and is authorized to prosecute and defend all claims pursuant to SDCL § 29A-3-715(22).

15.     As the Personal Representative of Mrs. Chute's Estate, Mr. Chute was substituted as the "Party" in Mrs. Chute's workers compensation case, and responded (as ordered) to the Insurer's Motion for Partial Summary Judgment and Motion to Dismiss before the Department, but he lost. Mr. Chute then appealed to the Secretary of the Department, but lost again.

16.     Mr. Chute was denied due process by Defendant Administrative Law Judge (ALJ) Donald W. Hageman (ALJ Hageman), and Defendant the Secretary of the Department, Marcia Hultman (Secretary), pursuant to SDCL § 15-6-52(a). Under the Supremacy Clause of Art. VI, State courts must follow federal law, and Federal trial judges have authority to review decisions of local governmental agencies when issues of federal or constitutional law are raised. (City of

5

Chicago v. Int'l Coll. Of Surgeons, 91 F. 3d 981, reversed and remanded). Mr. Chute was denied

due process under the 14th Amendment of the Constitution and brings this action against ALJ

Hageman and Secretary Hultman pursuant to 42 U.S.C. § 1983, and SDCL § 1-26-26; also

against ALJ Hageman for State violations pursuant to SDCL § 16-18-28 and others. This Court

has jurisdiction and supplemental jurisdiction over these Defendants.

17.     Mr. Chute appealed the Department's decision to Seventh Judicial Circuit Court in

Pennington County, Rapid City, SD, where the Honorable Judge Heidi Linngren (Judge

Linngren) conspired and colluded with the Department, ALJ Hageman, the law firm, and

attorneys, to deceive and deny Mr. Chute and the Estate due process under the 14th Amendment.

Mr. Chute brings this action against Defendant Judge Linngren pursuant to 42 U.S.C. § 1983,

and for State violations pursuant to SDCL § 16-18-28. This Court has jurisdiction.

18.     Mr. Chute then filed an appeal to the South Dakota Supreme Court (May 26, 2015), along

with an Affidavit of Indigency (which was granted without any objections), explaining that he

was disabled and that his sole source of income was his Social Security Disability Insurance

(SSDI) benefits.

19.     The South Dakota Supreme Court ordered Mr. Chute to hire an attorney to represent the

Estate, using his SSDI benefits to pay the attorney, or they threatened to dismiss the appeal if he

did not.

20.     Mr. Chute refused to surrender control over his SSDI benefits and hire an attorney using

those protected benefits. The South Dakota Supreme Court then carried out its threat and

dismissed Mr. Chute's appeal.

21.     The named five South Dakota Supreme Court Justices (Defendants) and their attorney

law clerks (Unknown Defendants), conspired and colluded to deceive and discriminate against

Mr. Chute, a disabled person, denying him due process, access to the courts pursuant to the Americans with Disabilities Act (ADA), and unlawfully subjecting his SSDI benefits to "other legal process". Mr. Chute brings this action against Defendants, the five named South Dakota Supreme Court Justices and their unknown attorney/law clerks (Defendants) pursuant to 42 U.S.C. § 1983, § 1985, § 1986, 42 U.S.C. § 12132,  42 U.S.C. § 12203(b), 42 U.S.C. 407 and state law claims pursuant to SDCL § 16-18-28, SDCL § 20-13-24, SDCL § 20-13-26, SDCL § 1-1A-1, § 1-1A-2, and § 1-1A-3, SDCL § 3-16-1, and others. This Court has jurisdiction and supplemental jurisdiction over the Plaintiff these Defendants.

22.     Mr. Chute then filed a Petition for a Writ of Certiorari in the United States Supreme Court along with a Motion for Leave to Proceed in *Forma Pauperis* on December 4, 2015, which was placed on the Court's Docket on December 9, 2015 as No. 15-7302. On February 29, 2016, the Petition was denied. Mr. Chute filed a Petition for Rehearing on March 21, 2016. On April 18, 2016, the Rehearing was denied.

23.     All eight of the named Defendants, U.S. Supreme Court Justices, who are residents of a different state, conspired and colluded with their attorney/law clerks (Unknown Defendants, who are also residents of a different state) and the South Dakota Supreme Court Justices and their attorney/law clerks (Unknown Defendants), to deprive Mr. Chute of his civil rights to due process, access to the courts in violation of the ADA laws, and protection of his SSDI benefits from other legal process. Mr. Chute brings this action against these Defendants pursuant to 42 U.S.C. § 1985, § 1986, § 1988, 42 U.S.C. § 12132 and state law claims pursuant to SDCL § 16-18-28 and others. This Court has jurisdiction and supplemental jurisdiction over these Defendants.

24.     Mr. Chute has exhausted all administrative procedures and remedies as of April 18, 2016.

JURY TRIAL DEMAND

25.     Plaintiff hereby demands a jury trial on all issues.

FACTS

26.     Nifty-Fifties Inc. (Employer-a Mom and Pop corporation owned and operated by husband and wife, Burton and Carol Long (Mr. or Mrs. Long)) hired Mrs. Chute in August of 2001 to work in their casino located at 312 East Blvd. N., Rapid City, SD. Mrs. Chute worked for Employer until she was terminated in March of 2010.

27.     Mrs. Chute's job duties included: bending, lifting, squatting, reaching, walking, standing, cleaning, vacuuming, and carrying bus tubs full of dishes weighing around 25-40 lbs. from the casino, through the restaurant, into the kitchen. Mrs. Chute made change, paid winning lottery tickets, served drinks, including coffee, tea, beer and wine coolers, and would get a waitress from the restaurant to take orders from customers who sat at the counter in the casino to eat.

28.     Mrs. Chute was also given a key to the business, the alarm code, and the combination to the safe on the premises where all the money was kept, and the occasional responsibility of opening and/or closing the business as the owners requested.

29.     In June of 2007, Mrs. Chute was diagnosed with Breast cancer. She underwent treatment including a left sided mastectomy.

30.     On September 10, 2008, around 7 pm in the evening, during her shift at work for Employer, Mrs. Chute, then 62 years old, slipped and fell on a wet kitchen floor while carrying a bus tub full of dishes, injuring, mainly, her back.

31.     Mrs. Chute's injuries arose out of and in the course of her employment.

32.     Mrs. Chute's Employer (Burton Long) had immediate knowledge of her work injury, as he was standing next to her when Mr. Chute informed him that he was taking Mrs. Chute to the

8

emergency room of the hospital, immediately, to be checked out and treated.

33.    Mrs. Chute was given work restrictions by her family doctor, Dr. Weiland, on

September 12, 2008, not to bend, lift, or squat, and was off work for approximately twelve weeks

after her injury.

34.    Insurer paid some of Mrs. Chute's medical claims, but refused to pay others.

35.    Insurer never paid Mrs. Chute any weekly compensation for partial disability

(SDCL § 62-4-5) while she was off work under work restrictions.

36.    As a direct result of Mrs. Chute being off work after her compensable work injury, and

the Insurer refusing to pay the weekly workers compensation benefits due to her pursuant to

SDCL § 62-4-5, Mr. and Mrs. Chute were forced to file a Chapter 7 Bankruptcy.

37.    After receiving notice of their bankruptcy filing, Mr. and Mrs. Chute were notified by

Rapid City Medical Center (RCMC), in a letter dated September 30, 2008, (where Mrs. Chute's

cancer doctor practiced), that from now on they would be on a "cash basis" and have to pay in

full before any further treatments.

38.    Without payment by the Insurer of the workers compensation benefits she was entitled to,

Mrs. Chute did not have the $285.00 up front to go back to her cancer doctor for treatment.

39.    In June of 2011, Mrs. Chute turned 65 years old and got Medicare.

40.    With Medicare insurance, Mrs. Chute returned to her cancer doctor, Dr. Godbe at RCMC.

Dr. Godbe's medical notes dated June 9, 2011 states in part:

> "The patient is here for a followup. I last saw her 4 years ago when I did her breast cancer
> treatment. She has not followed up with me at all in that interim. She told me that she was
> supposed to follow up with me in 3 months and then she made it back 4 years later."

After testing, Dr. Godbe referred Mrs. Chute to Dr. Tenglin, an oncologist, at Regional

Cancer Care Institute.

41.     Dr. Tenglin sent Mr. and Mrs. Chute a letter, dated August 15, 2011, describing

Mrs. Chute's condition, stating in part:

> "Donna Chute is currently a patient of mine...with a diagnosis of metastatic [stage 4] Breast cancer. Her disease is considered terminal. Patients with metastatic Breast cancer have an average survival of two years."

42.     Mrs. Chute died two years later on July 17, 2013, from the prolonged need for treatment

of her pre-existing condition (Breast cancer), that combined with her work injury

(SDCL § 62-1-1(7)(b)), caused by the direct result of the Insurer's "bad faith" refusal to pay

compensation for partial disability according to South Dakota worker's compensation laws and

the terms of the Insurance Policy.

43.     While she was still alive, Mrs. Chute filed an Amended Petition for Hearing (Amended

Petition) with the South Dakota Department of Labor (Department), on January 7, 2011 and

represented herself in her worker's compensation case (HF No. 16, 2009/10).

STATEMENT OF CLAIM AGAINST INSURER: No. 1

44.     All paragraphs above are incorporated herein by this reference.

45.     Defendant Employer secured payment of workers compensation benefits to its employees

in accordance with SDCL § 62-5-2, by insuring that compensation through Insurer, Defendant

Markel (previously FirstComp), who issued a Worker's Compensation Insurance Contract (WC

Insurance Contract), Number: WC0077648-01.

46.     SDCL § 58-1-2(10) defines an "Insurer" as "every person engaged as indemnitor, surety,

or contractor in the business of entering into *contracts* of insurance". (emphasis added)

Defendant Markel is an "Insurer".

47.     SDCL § 58-1-2(8) defines "Insurance" as a *contract*. (emphasis added)

48.     The WC Insurance Contract states in Part One, section B, on page 5: "We will pay

promptly when due the benefits required of you [Employer] by the workers compensation law."

49.     The WC Insurance Contract also states in Part One, section H, at number 3, on page 6:

> "We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us."

50.     Insurer owed the injured employee, Mrs. Chute, a duty of "Good Faith and Fair Dealing" in investigating and promptly paying claims, for compensable injuries, for benefits that were due to her under the WC Insurance Contract. See *Duty of Good Faith and Fair Dealing* (Restatement, Second, Contracts § 205).

51.     South Dakota Workers Compensation law mandates that the Insurer, after filing the "First Report of Injury" with the Department, investigate Mrs. Chute's claim.

> "The insurer....shall make an investigation of the claim and shall notify the injured employee and the department, in writing, within twenty days from its receipt of the report [first report of injury], if it denies coverage in whole or in part."

*See* SDCL § 62-6-3.

52.     The Insurer did not notify Mrs. Chute, or the Department, in writing, that the Insurer was denying coverage in whole or in part, as required by SDCL § 62-6-3, or that Insurer was refusing to pay compensation for partial disability pursuant to SDCL § 62-4-5. Refusing to investigate and concealing this written notification was fraud, fraudulent concealment, and deceit, and induced Mr. and Mrs. Chute to file bankruptcy to their detriment.

53.     Insurer was obligated to investigate and notify Mrs. Chute in writing of their denial of her claim in part, or in full, pursuant to SDCL § 62-6-3. Insurer breached that noncontractual obligation, and fraudulently concealed it, causing Mr. and Mrs. Chute damages, including bankruptcy and wrongful death. (*See* SDCL § 21-3-1)

54.     Mrs. Chute never discovered Insurer's fraudulent concealment.

55.     Mr. Chute has just discovered the Insurer's fraudulent concealment on July 7, 2016.

56.     All statute of limitations will be tolled as of today's date, July 7, 2016 as a result of Insurer's fraudulent concealment. *See* SDCL § 15-2-3.

57.     The South Dakota Supreme Court has repeated the principle that insurance companies act in bad faith when they fail to fairly and adequately investigate insurance claims. In <u>Walz v. Fireman's Fund Ins. Co.</u>, 1996 SD 135, the Court held that an insurer had a duty to review *current case law* as well as facts. (emphasis added)

58.     Under SDCL § 62-4-5; Compensation for partial disability states in part;

> "If, after an injury has been sustained, the employee as a result thereof becomes *partially incapacitated* from pursuing the employee's usual and customary line of employment...the employee shall receive compensation." (emphasis added)

59.     The term "partially incapacitated" in SDCL § 62-4-5 was addressed in the Departments Declaratory Rulings; Re: SDCL 62-4-5 dated August 2, 2001, which stated in part:

"In the hypothetical situation, as there was a difference between the employee's pre-injury and post-injury average earnings, temporary partial disability benefits would be owed."; and in

Re: SDCL §§ 62-4-2, 62-4-5 dated July 7, 2005, it declared:

> "It is therefore the ruling of the Department of Labor that Worker would meet the waiting period in SDCL § 62-4-2 when she is on medical restrictions and is not earning her pre-injury wages for seven consecutive days."

60.     The Departments own website states:

> "If the employer is unable to accommodate an employee's light-duty restrictions and does not offer work to the employee, he or she will still receive temporary partial disability benefits, but at a rate equal to the amount received for temporary total disability." See http://dlr.sd.gov/workerscomp/returningtowork.aspx

61.     The Departments website also again notes the earnings rule:

> "If the employee is released to part-time or modified work and is earning less than what he or she was earning at the time of the injury, the employee may be entitled to temporary partial disability benefits. Temporary partial disability benefits are calculated as half the

difference between the average amount the employee was earning before the injury and the average amount the employee is earning or is able to earn in some suitable employment after the injury." Id.

62.     The Insurer did not review the current case law available as required, as in <u>Kelsheimer v. Gateway and St. Paul Companies</u>, South Dakota Department of Labor and Regulation, HF 103, 2003/04, August 1, 2006, where the Department cited that <u>Hendrix v. Graham Tire Co.</u>, 94 SD 654, 520 NW2d 876 provided a test for entitlement to temporary partial disability benefits under SDCL § 62-4-5:

> "Under this statute, to receive temporary partial benefits, an employee must establish:
>
> 1. That he is partially incapacitated from pursuing his usual and customary line of employment due to his work related injury; or
>
> 2. That he has been released by his physician from temporary total disability and has not yet been given a permanent partial disability; and
>
> 3. That his present average earned income or that amount he is capable of earning at some suitable employment or business is less than what his average earned income was prior to his disability."

63.     Part 3. of the test in <u>Hendrix</u>, along with the statements on the Departments website, two Declaratory Rulings from the Department, and SDCL § 62-4-5, all require that in order to determine whether or not the injured employee is entitled to compensation for partial disability under SDCL § 62-4-5 based on her wages, the Insurer is required to monitor the injured employees weekly wages, after the injury, to see if the injured employee is earning less than she did before the injury. Not just to monitor for one or two weeks, but to continuously monitor until the claim is settled, as compensation for partial disability under SDCL § 62-4-5 is a weekly benefit.

64.     Insurer's case file notes, dated 03/14/2009, more than six (6) months after Mrs. Chute's work injury states in part:

"In the next 45 days,

1. Follow up with Insured for a wage chart for the 52 weeks prior to this event, as well as *all gross wages from the date of event until 02/24/09*.... (emphasis added)

3. When we get the wage information, address reserves and see if we owe TTD. [Temporary Total Disability]

65.    Insurer's case file notes, dated 03/18/2009, more than six (6) months after Mrs. Chute's

work injury state: "From Insured, request 52 week gross wages PRIOR to 09/10/2008. Also

request a wage statement of all GROSS wages from 09/11/2008 thru 02/23/2009."

66.    The "wage chart" is actually a "Statement of Weekly Earnings" form to be downloaded

from the Department at https://dlr.sd.gov/workerscomp/forms/statementofweeklyearnings.pdf.

67.    Insurer's case file notes also show, in the entry dated 03/14/2009; that the Insurer knew

that Mrs. Chute was under work restrictions resulting from her work injury; that the Employer

did not offer Mrs. Chute any work within those restrictions until February 24, 2009; and, that

Insurer had no idea what Mrs. Chute's pre-injury and post injury weekly earnings were:

"....but, *Insured* [Employer] *did not make a job offer within restrictions until 02/24/09. We do not have 52 week wage chart nor work payment since date of event.* Insured advises IW [injured worker] is paid $10.00 per hour on a normally 40 hour a week work schedule. Until documentation verifys AWW [average weekly wage] we are going with $400.00 a week. 2/3 of this is $266.66, however the State minimum TTD [temporary total disability] rate in effect at the time of this event was $299.00. (emphasis added)

68.    Insurer's case file notes, dated 03/30/2009, almost seven (7) months after Mrs. Chute's

work injury, shows Insurer's employee, Carol Von Eschen, sending a fax to the Employer that

stated in part:

"....in order to calculate any possible disability benefits that may be due, FirstComp will need a listing of Ms. Chute's GROSS wages for the 52 weeks prior to her 09/10/08, date of injury....please fax Ms. Chute's gross wages for the 52 week period of 09/10/07 thru 09/09/08 to me."

69.    "All compensation provided for in §§ 62-4-3 to 62-4-7, inclusive, shall be paid in

14

installments at the same intervals at which the wages or earnings of the employee were paid at the time of the injury." SDCL § 62-4-10.  Mrs. Chute was paid every two weeks.

70.     "Failure to make any payment of workers' compensation benefits pursuant to § 62-4-10 within ten days of the date on which the payment is due shall result in an automatic penalty equal to ten percent of the unpaid amount. Nothing herein precludes any other remedy available to the claimant." SDCL § 62-4-10.1.

71.     Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract and SDCL § 62-4-5, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial.

72.     As a result, Mr. and Mrs. Chute both suffered damages and special damages, for injuries, including out-of-pocket costs in the workers compensation action, non-payment of benefits under SDCL § 62-4-5, pain and suffering, emotional distress, medical and health care costs from doctors, hospitals, state and federal agencies, and pharmacies, all bankruptcy creditors' claims and bills, and costs including lost property of Mrs. Chute, wrongful death, funeral, burial, and headstone costs.

73.     Both, Mr. and Mrs. Chute claim, and are also entitled to, punitive damages, pursuant to SDCL § 21-3-2, as the breach of Insurer's obligations arose from those obligations stated in South Dakota Workers Compensation Laws (Title 62).

DEMAND FOR RELIEF AGAINST INSURER, No. 1

DAMAGES

74.     Mrs. Chute (by and thru the Estate) claims that Insurer owes, and demands payment of,

all workers compensation benefits due under SDCL § 62-4-5, at the rate of $299.00 (the agreed upon state minimum) per week from September 10, 2008 thru February 24, 2009 (minus a previously paid amount of $2,846.48) plus the 10% penalty and 12% interest per state statute.

75.   Mrs. Chute, who was 62 years old on the date of her injury and had a normal life expectancy of 21.5 years more, according to the Workers Compensation Life Expectancy Table, demands payment from Insurer for causing wrongful death, of damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her by the Insurer, for a total of $107,500,000.00. (One hundred and seven million, five hundred thousand dollars)

76.   Mrs. Chute (by and thru the Estate) demands punitive damages from the Insurer for causing wrongful death, in the amount of ten (10) times the amount of compensatory damages, for a total of $1,075,000,000.00. (One billion seventy five million dollars)

77.   Mr. Chute, who was 57 years old on the date of Mrs. Chute's injury, and had a normal life expectancy of 21.7 years more at that time (a difference of only .2), demands compensatory damages and punitive damages for the wrongful death of his wife from Insurer, in the same amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars).

SPECIAL DAMAGES

78.   Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last two years of her life totaling $352,284.89.

79.   Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

80.   Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

81.   Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

82.  Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

83.  Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and

Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

STATEMENT OF CLAIM AGAINST INSURER: No. 2

WRONGFUL DEATH, DECEIT, FRAUD, FRAULENT CONCEALMENT

and INSURANCE FRAUD

84.  All paragraphs above are incorporated herein by this reference.

85.  Insurer's case file notes, sixteen (16) days after Mrs. Chute's date of injury, shows

statements made by Insurer's employee, Nicole Hinsley, to Mrs. Chute on September 26, 2008:

> 09/26/2008    Initial Contact: Clmt [Claimant] at home.
> Clmt did notify Burt...The ER [Emergency Room] did not take her off work.
>
> Clmt went to Rapid City Medical Center. Dr. Wieland, family MD....*He did not give her an off work note. I explained that we and her employer both will need those in order to have a compensable injury.* (emphasis added)
>
> Clmt has had breast Cancer in 2007 that she is in remission for.

And further statements made by Insurer's employee, Nicole Hinsley, to Mrs. Chute on

November 6, 2008, almost two months after her injury, shows:

> 11/06/2008    *I advised her again that since the Dr is not taking her off work that we cannot pay her, she understands* (emphasis added) [referencing no weekly payments of compensation for partial disability pursuant to SDCL § 62-4-5; and Mrs. Chute being deceived into changing her position to her detriment, from demanding payment of weekly benefits, to giving up on them.]

86.  Whether or not an "injury" is compensable under South Dakota's Workers Compensation

Laws has been described and defined by numerous *current case laws* (*See* Collins v. Avera

McKennan Hospital, August 2014, HF NO. 152, 2011/12, South Dakota Department of Labor,

17

Workers Compensation). In <u>Collins</u> the court stated at length: "The causation statute, SDCL §62-1-1(7), defines injury...." and "the South Dakota Supreme Court has interpreted this statute on numerous occasions. Recently, the Supreme Court wrote:

> In a workers' compensation dispute, a claimant must prove the causation elements of SDCL 62-1-1(7) by a preponderance of the evidence. <u>Grauel v. S.D. Sch. of Mines & Tech.</u>, 2000 S.D. 145, ¶11, 619 N.W.2d 260, 263. The first element requires proof that the employee sustained an "injury" *arising out of and in the course of the employment*. SDCL 62-1-1(7); Bender v. Dakota Resorts Mgmt. Group, Inc., 2005 S.D. 81, ¶7, 700 Page 6 of 8 N.W.2d 739, 742. The proof necessary for the second element ("condition") is dependent on whether the worker also suffered from a preexisting condition.... See SDCL 62-1-1(7).... In cases involving a preexisting disease or condition, the claimant must prove that the employment or employment related injury is and remains a "major contributing cause of the disability, impairment, or *need for treatment*." SDCL 62-1-1(7)(b); see also <u>Grauel</u>, 2000 S.D. 145, ¶9, 619 N.W.2d at 263 (citing SDCL 62-1-1(7)(a)-(b))." (emphasis added)

87.     With full knowledge of Mrs. Chute's preexisting Breast Cancer (disease), the statements made by Insurer to Mrs. Chute, that without an "off work note" from her doctor, her injury would not be compensable; and she could not be paid weekly compensation for partial disability pursuant to SDCL § 62-4-5, was deceit, as defined in SDCL § 20-10-2(2). (*The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true*).

88.     Insurer knowingly and with intent to deceive, presented the above statements to Mrs. Chute in telephone calls, on the above referenced dates, knowing that the statements contained false, incomplete and misleading information concerning the facts required to be proven to have a compensable injury, or be entitled to payment of compensation for partial disability pursuant to SDCL § 62-4-5.

89.     Insurer's statements were fraudulent insurance acts as defined in SDCL § 58-4A-2(6), constituting criminal activities, and because the amount involved was over $1,000.00, Insurer's fraudulent insurance acts were felonies. (Felony Insurance Fraud), and caused damages to Mr. and Mrs. Chute.

90.   Mr. and Mrs. Chute are both victims of the Insurer's criminal activities and are owed and entitled to, pecuniary damages from the Insurer.

91.   Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract and SDCL § 62-4-5, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial.

92.   Shown on the Department's website are the "Insurer Requirements", stating in part:

> "All workers' compensation insurers (including self-insured employers) in South Dakota are required to provide case management services in their policies. Therefore, workers' compensation insurance companies are required to contract with one or more case management plans." (*See* http://www.sdjobs.org/workerscomp/casemanagement.aspx)

93.   Insurer's WC Insurance Contract carries a South Dakota Managed Care Endorsement on page 21, which states in part:

> "This endorsement provides for the payment of benefits under the workers compensation law of South Dakota *to provide medical services and health care to injured workers for compensable injuries and diseases by means of a managed care program* which meets the requirements established by the Department of Labor." (emphasis added)

94.   The requirements of Case Management Plans for Workers Compensation established by the Department, are listed in Chapter 47:03:04 of the Administrative Rules of South Dakota (ARSD). And ARSD 47:03:04:04(2) requires that:

> "The employer must notify the case management plan of any compensable injury or disability that requires medical treatment other than minor first aid within *24 hours after obtaining knowledge of the injury* or disability." (emphasis added)

95.   And Insurer's WC Insurance Contract states in Part One, section H, at number 1, page 6: "As between an injured worker and us, we have notice of the injury when you have notice."

96.   Then, Insurer had notice of Mrs. Chute's work injury immediately on September 10,

2008, and was then required to notify their Case Management Plan within 24 hours.

97.     Insurer intentionally, maliciously, fraudulently, and without a reasonable basis, refused

and failed to notify their Case Management Plan within 24 hours of Mrs. Chute's injury

98.     On December 2, 2008, (almost 90 days after Mrs. Chute's work injury occurred) in a four

(4) page "Initial Report" to the Insurer, Karen Bielmaier, Case Manager (CM) for Insurer's Case

Management Plan, administered by Alaris (ARSD 47:03:04), reported under "Case Notes" that

the Case Management Plan wasn't notified of Mrs. Chute's work injury, by the Insurer, until

November 10, 2008; which was 60 days after Mrs. Chute's injury. The report states in part:

| | | |
|---|---|---|
| 11/10/2008 | E-Mails & Faxes: Insurer<br>Receipt of case management referral; confirmed initial CM plan. | |
| 11/10/2008 | File Setup.<br>Obtained, reviewed medical records as received | |
| 11/11/2008 | Phone Call: Client<br>Initial call to client; explained CM role....Plan to contact client again to arrange meeting to perform complete initial interview. | |
| 11/17/2008 | Phone Call: Client<br>Call from Client; very upset that no one has contacted her to let her know what is going on. Stated she has a Rx for pain meds which she cannot afford to pay for, $46.00, and is in significant pain, "getting worse". | |
| 11/17/2008 | Phone Call: Client<br>Returned call to client; advised that CM left a message for insurer regarding Rx coverage....recommended calling Dr. Wisniewski's office for possible samples of Darvocet. | |
| 11/20/2008 | Phone Call: Client<br>Call to client...Confirmed plan to meet....to perform initial interview, obtain further treatment and RTW [Return To Work] plan.... | |
| 12/1/2008 | Phone call: Employers<br><br>Spoke with Burt Long, employer, Carol his wife was not available. Discussed possible work accommodations with the current limitations as per Dr. Wisniewski. Main concern is not the 10# lifting capability rather the bending. The client's *normal duties* is as casino cashier, cashing out | |

video lottery winnings but also serving beverages to customers, bending into a chest type cooler. Burt stated that *if the client cannot do her usual duties, she may not be able to come to work right now.* Before he made any decisions, Burt will discuss with his wife Carol tomorrow what other possible accommodations can be made for this client within the current capabilities. Burt requested a copy of the current work release which CM will forward. Plan to communicate again with ER [employer] tomorrow. (emphasis added)

99.    Additionally, on November 10, 2008, Insurer's employee, Julie Beckner stated:

11/10/2008    Rec call from Lisa at....w/Dr's office. Claimant is in today for MRI. Adv that we are waiting for info from physician and w/o that we are *not guaranteeing payment on anything.* Not denying her need for care – just not guaranteeing payment...(emphasis added)

100.    Even the Insurer's own expert witness, Thomas G. Gratzer, M.D., noted in his report, almost eleven (11) months after Mrs. Chute's injury, dated 10/08/2009, that:

"Unfortunately, it appeared that there had been a delay in thorough evaluation, and not until December 2008 did she [Mrs. Chute] have x-rays and an MRI, leading to an effective procedure. This allowed for pain relief so that she could return to work and have an income."

101.    Not only did Insurer refuse "to provide medical services and health care to injured workers for compensable injuries and diseases *by means of a managed care program"* (See ¶89 above), according to the South Dakota Managed Care Endorsement, shown on page 21 of their own WC Insurance Contract; the Insurer was not *"guaranteeing payment on anything."* (See ¶89 above).

102.    Insurer's fraudulent concealment of intentionally refusing, or failure, to notify the Case Management Plan (CMP) within 24 hours of the notice of injury, denied Mrs. Chute any knowledge of, or rights under the CMP, to immediately receive proper medical care, diagnosis and treatment, and caused her damages.

103.    Insurer's fraudulent concealment of Mrs. Chute's injury to the CMP denied proper medical care, diagnosis, and discovery that her Breast cancer has metastasized into her bones,

including her pelvis and spine, combining with her work injury, to cause disability and prolong

the need for treatment, until it was too late to be treated, and caused her death.

104.    Mrs. Chute never discovered Insurer's fraudulent concealment to its CMP.

105.    Mr. Chute has just discovered the Insurer's fraudulent concealment of Mrs. Chute's

injuries from the CMP. Today's date is July 7, 2016.

106.    All statute of limitations will be tolled as of today's date, July 7, 2016 as a result of

Insurer's fraudulent concealment. *See* SDCL § 15-2-3.

## DEMAND FOR RELIEF AGAINST INSURER, No. 2

## DAMAGES

107.    Because the Insurer's statements (¶ 85 above) were fraudulent insurance acts constituting

criminal activities, and because the amount involved was over $1,000.00, Insurer's fraudulent

insurance acts were Class 4 felonies; Mrs. Chute (by and thru the Estate) claims that Insurer

owes, and demands payment of, the statutory fines for Class 4 felonies of twenty thousand

dollars each, or $40,000.00.

108.    Mr. and Mrs. Chute are both victims of the Insurer's fraudulent insurance acts

constituting criminal activities criminal and are owed and entitled to, pecuniary damages from

the Insurer for wrongful death.

109.    Mrs. Chute (by and thru the Estate)  demands payment from Insurer for all claims stated

after No. 2, causing wrongful death, of additional damages in the amount of five (5) million

dollars for each of the 21.5 years wrongfully taken from her by the Insurer, for a total of

$107,500,000.00. (One hundred and seven million, five hundred thousand dollars)

110.    Mrs. Chute (by and thru the Estate) demands additional punitive damages from the

Insurer, for all claims stated after No. 2,  for causing wrongful death, in the amount of ten (10)

times the amount of compensatory damages, for a total of $1,075,000,000.00. (One billion

seventy five million dollars)

111.    Mr. Chute demands additional compensatory damages and punitive damages for all

claims stated after No. 2,  for the wrongful death of his wife from Insurer, in the same additional

amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty

two million, five hundred thousand dollars).

STATEMENT OF CLAIM No. 3

Against EMPLOYER and INSURER,

BAD FAITH, BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

112.    All paragraphs above are incorporated herein by this reference.

113.    ¶67 above shows "....but, *Insured* [Employer] *did not make a job offer within restrictions*

*until 02/24/09.*" The following is an excerpt (¶¶ 34-36) from Mrs. Chute's Amended Petition for

Hearing filed with the Department on January 7, 2011:

34.    On February 24, 2009, Claimant saw Dr. Brett Lawlor again and he opined;

"I do think she may need injections in the future...I have written out work
restrictions for her. She is at a maximum lift of 10 pounds. She needs to limit bending and
twisting at the waist to occasional. She should change position from sitting to standing to
walking every 45 minutes as necessary."

35.    On February 24, 2009, Insurer (First Comp) sent Employer a fax that stated in

part:

"As advised I am providing a sample offer of permanent modified work, with a
copy of your 12/03/08, Job Questionnaire and Dr. Lawlor's work restrictions.
***Please make a separate Job Description, with the information from the enclosed Job
Questionnaire and the Dr. Lawlor's enclosed work restrictions. I understand you are going
to hand deliver this to Ms. Chute...*Once the enclosed is signed, please fax it back to me,
along with the new job description and Dr. Lawlor's work restrictions...*" (emphasis
added)

Employer then typed an offer of employment and faxed it back to Insurer. Then

23

Insurer made changes to the employment contract and sent it back to Employer.

36.     On February 25, 2009, Employer/Insurer, jointly, or Employer alone, made a

written job offer to Claimant that stated:

"Dear Donna Chute:

As your employer for the captioned worker's compensation claim, I am in receipt of the enclosed copy of Dr. Brett Lawlor's February 24, 2009, notification of work restrictions. It is your employer's understanding the enclosed work restrictions from Dr. Lawlor may or may not be permanent.

As the owner of Nifty Fifties, Inc. I am offering, on an immediate basis, the following permanent modified duty position, pursuant to Dr. Lawlor's enclosed February 24, 2009 work restrictions.

| | |
|---|---|
| Position: | Casino Hostess |
| Job Location: | Nifty Fifties/Parkway Restaurant, 312 East Blvd North, Rapid City, SD 57701 |
| Wage: | $10.00 per hour on approximately a 40 hour work week, 1.5 for any work over 40 hours |
| Fringe Benefits: | Meals @ 50% off list price |
| Work Schedule | Monday through Sunday approximately a 40 hour work week |
| Assigned Work Duties: | See enclosed job description |
| Physical Requirements: | Max lift 10#. Limit bending and twisting to occasional (1-33% of an 8 hour work day), change from sitting to walking every 45 minutes as necessary. Also see enclosed job description. |

Please be advised Ms. Donna Chute, you have seven (7) days from the date of this correspondence to accept or reject this offer of permanent employment. Please sign below, in the presence of a witness, to indicate whether or not you accept the above offer."

Claimant agreed to, signed, and accepted Employer/Insurer's joint offer, or Employer's

offer, of permanent employment on February 25, 2009. [End of excerpt]

114.    The accepted written offer of employment referred to above, was/is an enforceable

employment contract.

115.    The "enclosed job description" shown after "Assigned Work Duties" above, that was

24

attached to the Employment Contract states in handwriting after "List the specific job duties:"
"Cashing Out Lottery tickets, Serving Coffee, Sodas and Beer. The Beer is in Cooler and is All
Bottled Beer – some Bending & Reaching."

116.    The amount of weekly compensation benefits for partial disability under SDCL § 62-4-5
changed, after the Insurer and/or Employer entered into an employment contract with
Mrs. Chute. The weekly benefit amount (previously agreed upon by the Insurer and Mrs. Chute)
under SDCL § 62-4-3 was the state minimum of $299.00 per week. After entering into the
employment contract, the weekly workers compensation benefit amount would have to be the
$400.00 as stated in the employment contract. SDCL § 62-4-5 explains:

> If, after an injury has been sustained, the employee as a result thereof becomes partially
> incapacitated from pursuing the employee's usual and customary line of employment....
> the employee shall receive compensation, subject to the limitations as to maximum
> amounts fixed in § 62-4-3, *equal to one-half of the difference between the average
> amount which the employee earned before the accident, and the average amount which
> the employee is earning or is able to earn in some suitable employment or business after
> the accident.*

117.    This is the earnings rule again, and it explains that the Insurer is required to monitor the
pre injury and post injury weekly earnings of the injured worker, especially in this case, where
the Employer and Insurer had worked together to offer Mrs. Chute an employment contract, the
Insurer was required to monitor Mrs. Chute's wages, on a weekly basis, after the employment
contract was entered into, to determine any difference between (1) *"the average amount which
the employee is earning... after the accident"* or (2) *"the average amount which the employee
is...able to earn in some suitable employment or business after the accident,"* and what her
earnings were before the injury.

118.    It was the Insurer's duty and obligation to monitor Mrs. Chute's post injury weekly
earnings, especially after the Insurer requested: "Once the enclosed [Employment Contract] is

signed, please fax it back to me, along with the new job description and Dr. Lawlor's work restrictions..." (*See* ¶ 109, excerpt subparagraph No. 35 above)

119. SDCL § 62-4-5 required the payment of weekly compensation to Mrs. Chute to make up any difference in the amount of her weekly employment contract wages of $400.00, for every week her earnings fell below the $400.00 compensation rate, after February 25, 2009, the date of her employment contract.

120. Employer breached the employment contract almost immediately. Mrs. Chute's pay check stub for pay period 03/05/2009 – 03/18/2009 shows 73.95 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $739.50, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $60.50 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $125.00 today)

121. Mrs. Chute's pay check stub for pay period 03/19/2009 – 04/01/2009 shows 65.98 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $659.80, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $140.20 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $283.76 today)

122. Mrs. Chute's pay check stub for pay period 04/30/2009 – 05/13/2009 shows 50.48 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $504.80, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $295.20 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $597.48 today)

123. Mrs. Chute's pay check stub for pay period 05/14/2009 -- 05/27/2009 shows 38.68 hours

26

worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $386.80, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $413.20 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $836.32 today)

124.    Mrs. Chute's pay check stub for pay period 06/11/2009 – 06/24/2009 shows 47.90 regular hours worked and 1.88 overtime hours, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $507.20, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $292.80 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $592.63 today)

125.    Mrs. Chute's pay check stub for pay period 06/25/2009 – 07/08/2009 shows 46.50 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $465.00, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $335 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $678.04 today)

126.    Mrs. Chute's pay check stub for pay period 07/09/2009 – 07/22/2009 shows 56.95 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $569.50, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $230.50 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $466.53 today)

127.    Dated July 20, 2009, attorney Catherine Sabers of the law firm of Lynn, Jackson, Shultz & Lebrun, P.C. (Law Firm) filed a Notice of Appearance with the Department.

128.    From the date of Mrs. Chute's injury on September 10, 2008, until the Insurer hired the

Law Firm sometime in July of 2009; the Insurer was responsible, and had a duty and an

obligation, to monitor Mrs. Chute's weekly earnings and determine whether or not compensation

for partial disability, pursuant to SDCL § 62-4-5, was owed to Mrs. Chute during any of her two

week pay periods; and to timely pay her the compensation due and owed as shown above,

according to SDCL § 62-4-5, the current case law including two Declaratory Rulings by the

Department, the terms of the WC Insurance Contract, and the terms of the Employment Contract.

129.    ¶ 64 above shows the Insurer had no intention of monitoring Mrs. Chute's earnings after

the Employer and Insurer offered her the Employment Contract and she accepted it. Insurer's

case file notes, dated March 14, 2009, (more than 2 weeks later) specifically requested only

"...*all gross wages from the date of event until 02/24/09.*"

130.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in

"Bad Faith" by failing to investigate and monitor, and denying to pay workers compensation

benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and

the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer

knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of

the lack of a reasonable basis for denial.

131.    Mrs. Chute suffered damages, including lost income and wrongful death, as a direct result

of the Insurer's "Bad Faith" actions stated above.

DEMAND FOR RELIEF AGAINST EMPLOYER and INSURER, No. 3

DAMAGES

132.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for all weekly

benefits due pursuant to SDCL § 62-4-5, at the rate of $400.00 a week as stated in the

Employment Contract, from February 25, 2009 thru July 22, 2009, as stated approximately

above.

133.    Mrs. Chute (by and thru the Estate) demands payment from Employer and Insurer, for

Breach of Employment Contract, for the amount of $400.00 per week, from February 25, 2009

through March 8, 2010, (when Employer terminated Mrs. Chute) minus weekly wages earned

and already paid. From March 9, 2010 through the date of Mrs. Chute's death on July 17, 2013,

Mrs. Chute (by and thru the Estate) demands payment of $400.00 per week, plus yearly COLA

increases determined by the Department, a 10% penalty, and 12% interest.

STATEMENT OF CLAIM No. 4

Against EMPLOYER, INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ &<br>LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown<br>DEFENDANT SUPERVISING ATTORNEY

BAD FAITH, DECEIT, INSURANCE FRAUD, COLLUSION, MANSLAUGHTER<br>BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

134.    All paragraphs above are incorporated herein by this reference.

135.    Insurer solicited, hired, conspired and colluded with, and ordered, the Defendant Law

Firm and Defendant attorneys Catherine Sabers (Ms. Sabers) and her unknown Defendant

Supervising Attorney, sometime between April 22, 2009 and July of 2009, to commit insurance

fraud by unlawfully denying all payments of weekly workers compensation benefits to

Mrs. Chute, pursuant to SDCL § 62-4-5, the terms of the WC Insurance Contract, and the

Employment Contract, which they agreed to do, and did, making Insurer vicariously liable for

said Defendant's actions.

136.    Insurer committed a class 5 felony of criminal solicitation by soliciting, hiring, request-

ing, and commanding; with the intent to promote or facilitate the commission of the crime of

29

insurance fraud; the Defendant Law Firm, Defendant attorneys Ms. Sabers, Ms. Lewis, and their

Defendant Unknown Supervising attorney, to engage in specific conduct which would constitute

the commission of such offense or an attempt to commit such offense, (*See* SDCL § 22-4A-1),

which they did,  making Insurer vicariously liable for said Defendant's actions.

137.    After Mrs. Chute accepted the Employment Contract in February of 2009, the Employer

breached it, and started to cut down Mrs. Chute's weekly work hours over the course of the next

year; down to around 6 hours a day, and then down to 4 days a week, and then down to 3 days a

week, and then 2 days a week, until Mrs. Chute finally had to file for Unemployment benefits in

January of 2010. She was terminated on March 8, 2010 (retaliatory termination).

138.    The "Determination Notice" from the South Dakota Department of Labor,

Unemployment Insurance Division (UI Div.) stated:

> "Your request for partial benefits is allowed commencing 01/31/2010...Information
> received indicates you are *currently working reduced hours*...it is determined you have
> not voluntarily quit without good cause....nor have you been discharged for reasons
> constituting misconduct...You are eligible for partial benefits in weeks that you earn less
> than your weekly benefit amount..." (emphasis added)

And a copy of this notice was provided to Mrs. Chute's former attorney, by the Law

Firm, through Ms. Sabers, as an exhibit attached to "Employer/Insurer's Answers to Claimant's

First Set of Interrogatories and Requests for Production of Documents" on May 6, 2010.

139.    During the above said year, neither the Insurer, or the Law Firm, or Ms. Sabers, or her

supervising attorney, monitored Mrs. Chute's post injury weekly earnings, as required by SDCL

§ 62-4-5, or paid Mrs. Chute one penny in the difference between her pre injury and post injury

earnings, in accordance with the earnings rule in SDCL § 62-4-5, based on the rate of

Employment Contract wages of $400.00 per week.

140.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in

"Bad Faith" by failing to investigate and monitor, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial.

141.    The next "Determination Notice" from the UI Div., also provided by Ms. Sabers, as stated above, said: *"Your request for benefits is allowed commencing 03/07/2010....You were discharged for poor performance. Misconduct....has not been substantiated."*

142.    None of the above stated Defendants, investigated or notified, Mrs. Chute of the denial, in whole or in part, to pay the weekly benefits Mrs. Chute was entitled to. This was fraudulent concealment.

143.    About four (4) months after the Employer terminated Mrs. Chute in retaliation for filing this workers compensation claim, and the UI Div.'s last notice; and a year after Insurer hired the Law Firm, their attorney Ms. Sabers wrote in a letter, dated July 14, 2010, addressed to Mrs. Chute's former attorney, Michael Simpson (Mr. Simpson):

> "Since your correspondence requesting the institution of temporary total disability and also requesting vocational assistance, I have had the opportunity to do some additional investigation. The Employer has advised me that Ms. Chute was terminated due to customer complaints. In this situation, I do not believe that additional temporary total disability would be appropriate, as she was terminated from a position within her restrictions, for reasons unrelated to her work injury. This same rationale would apply to your request that Employer and Insurer voluntarily provide some sort of vocational placement assistance."

144.    Ms. Sabers, knowingly and with intent to deceive, presented this statement in support of the denial of a claim for payments and benefits, pursuant to the Insurer's WC Insurance Contract, knowing that the statements contained false, incomplete, and misleading information concerning the facts entitling Mrs. Chute to compensation for partial disability pursuant to SDCL § 62-4-5,

two (2) Declaratory Rulings from the Department, the Employment Contract, and the test for entitlement stated in Hendrix (¶ 62 above). Ms. Saber's statement was a deceit, and a fraudulent insurance act according to SDCL § 58-4A-2(6), made under the direction and supervision of her Defendant Unknown supervising attorney, the Law Firm, and the Insurer, and caused Mrs. Chute damages and death.

145.    In Kelsheimer (¶ 62 above); the Department said "Similar cases from other jurisdictions are persuasive:"

> Danley v. General Motors Corp., 173 Mich. App. 271, 433 N.W.2d 329 (1988). The claimant was awarded workers' compensation benefits up to the claimant's last day of work prior to a layoff. The board found that the claimant would no longer have a continuing disability because the work that he performed, which caused his back condition to be symptomatic, would no longer be required of him. The court determined that this finding could be interpreted to mean that the claimant's entitlement to benefits was terminated due to his layoff and held it was error to find that the claimant's layoff from employment terminated his workers' compensation benefits. What is compensable is the loss of wage-earning capacity rather than actual loss of wages. The claimant's layoff did not affect his wage-earning capacity. The court rationalized that if that were the case, *any employer would be able to terminate a claimant's entitlement to benefits by merely laying off the employee.* (emphasis added)

Here, the Employer and Insurer cannot terminate Mrs. Chute's entitlement to benefits under SDCL § 62-4-5 by simply terminating her employment. Employer and Insurer carefully crafted Mrs. Chute's Employment Contract (*See* ¶113, excerpt subparagraph No. 36 above) to even specifically include such minor benefits as: "Fringe Benefits: Meals @ 50% off list price" in what they termed as this "offer of permanent employment". What the Employer and Insurer carefully and specifically omitted from the "offer of permanent employment," was any sort of a "Termination Clause;" because it isn't needed in a "permanent" Employment Contract.

Mrs. Chute was still under the same work restrictions, as were stated in the employment contract, when she was terminated, and her "wage-earning capacity" had not changed.

146.    Further proof that Insurer acted without a reasonable basis for denial of the claim to pay

Mrs. Chute weekly compensation for partial disability; and the Insurer knew there was not a reasonable basis to deny the claim, is because Insurer never investigated or determined how much Mrs. Chute's pre injury earnings were; Insurer acted in reckless disregard of the lack of a reasonable basis for denial, as shown by the statements made by Ms. Sabers in a letter dated September 27, 2010, more than two (2) years after Mrs. Chute's date of injury:

> It is my understanding from our communication that you intend to move forward with the claim for indemnity/disability benefits in this case.
> For my part, I have requested that the Employer endeavor to accumulate documentation regarding Claimant's earnings in the 52 weeks prior to her date of injury.

147.   Ms. Sabers finally provided "detailed pay records regarding Donna Chute from January 2008 through September 2008" to Mr. Simpson attached to a letter dated October 4, 2010. These were not complete records required to determine the average weekly wage for a year preceding the injury, as four (4) months were missing; September through December of 2007.

148.   Mrs. Chute had an employment contract with Employer for permanent employment.

149.   The Employer breached the terms of the employment contract by reducing the number of hours Mrs. Chute worked, causing damages and lost wages.

150.   The Employer breached the employment contract by terminating Mrs. Chute, causing damages and lost wages.

151.   The Insurer acted criminally, and in "Bad Faith" as described above, causing Mrs. Chute lost workers compensation benefits, damages, and wrongful death.

152.   The Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., Ms. Sabers and her Unknown Defendant supervising attorney, practiced deceit and collusion and felony insurance fraud, as stated and described above, causing Mrs. Chute damages and wrongful death.

DEMAND FOR RELIEF No. 4

Against EMPLOYER, INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ &

LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

DEFENDANT SUPERVISING ATTORNEY

153.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for all weekly benefits due pursuant to SDCL § 62-4-5, at the rate of $400.00 a week as stated in the Employment Contract, from July 23, 2009 through the end of her life (July 13, 2013), to include the yearly COLA increases determined by the Department, plus penalty and interest.

154.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for the statutory penalty of ten thousand dollars for Criminal solicitation described above, plus interest.

155.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

156.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for the crime of Manslaughter in the First Degree, a Class C felony, for the statutory penalty of fifty thousand dollars (SDCL § 22-16-15(1)), plus interest. Insurer is vicariously liable for these damages.

157.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for deceit and collusion, insurance fraud, and wrongful death, of damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars) Insurer is vicariously liable for these damages.

158.    Mrs. Chute (by and thru the Estate) demands punitive damages from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for wrongful death, in the amount of ten (10) times the

amount of compensatory damages, for a total of $1,075,000,000.00, plus interest. (One billion seventy five million dollars) Insurer is vicariously liable for these damages.

159.    Mr. Chute demands payment from the Insurer for weekly workers compensation death benefits under SDCL § 62-4-12, except the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

160.    Mr. Chute demands compensatory damages and punitive damages for the wrongful death of his wife from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., in the same amount as Mrs. Chute's demands above. Insurer is vicariously liable for these damages.

161.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for committing deceit and collusion (defined in SDCL § 16-18-26(1)) with the Law Firm, her supervising attorney, and the Insurer, with the intent to deceive Mrs. Chute, for treble damages pursuant to SDCL § 16-18-28, for all of the following Demands:

1) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for these damages.

2) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for the crime of Manslaughter in the First Degree, a Class C felony, for the statutory penalty of fifty thousand dollars (SDCL § 22-16-15(1)), plus interest; trebled. Insurer is vicariously liable for these damages.

3) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for wrongful death, of damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus

interest; trebled. (Three hundred and twenty two million, five hundred thousand dollars) Insurer is vicariously liable for these damages.

4) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for punitive damages for wrongful death, in the amount of ten (10) times the amount of compensatory damages; trebled, for a total of $3,225,000,000.00, plus interest. (Three billion, two hundred twenty five million dollars) Insurer is vicariously liable for these damages.

5) Mr. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for weekly workers compensation death benefits under SDCL § 62-4-12, except the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled. Insurer is vicariously liable for these damages.

## SPECIAL DAMAGES

6) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for her hospital bills for the last two years of her life totaling $352,284.89; trebled to $1,056,854.60. Insurer is vicariously liable for these damages.

7) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for her power chair of $12,605.60; trebled to $37,816.80. Insurer is vicariously liable for these damages.

8) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for all claims submitted to Medicaid of South Dakota for $7,167.79; trebled to $21,503.37. Insurer is vicariously liable for these damages.

9) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers

for Mrs. Chute's funeral costs of $9,401.10; trebled to $ 28,203.30. Insurer is vicariously liable for these damages.

10) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for Mrs. Chute's headstone of about $5,300.00; trebled to $15,900.00. Insurer is vicariously liable for these damages.

11) Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00; trebled to $690,000.00.

162.    Mr. and Mrs. Chute demand payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed under ¶161, sub paragraphs 1 through 11 above.

STATEMENT OF CLAIM No. 5

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the Unknown

DEFENDANT SUPERVISING ATTORNEY

BAD FAITH, DECEIT, INSURANCE FRAUD, COLLUSION, MURDER

BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

163.    All paragraphs above are incorporated herein by this reference.

164.    After firing her former attorney, Mr. Simpson, and not receiving a penny in weekly compensation from Insurer after her injury, Mrs. Chute filed an Amended Petition for Hearing (Amended Petition) with the Department on January 6, 2011.

165.    Employer/Insurer's Answer (E/I Answer) to Claimant's Amended Petition, filed on March 7, 2011 stated in ¶13:

> With regard to paragraph 14, Employer and Insurer deny that, at the time of the injury itself, any medical provider allegedly took Claimant completely off work from

September 10, 2008 to December 8, 2008. However, a disability insurance form from Central States Health and Life Company, indicating that Claimant was "totally disabled" from October 8, 2008 through November 26, 2008, was first provided with Claimant's Amended Petition. *Employer and Insurer will pay temporary total disability* plus interest from October 8, 2008 through November 26, 2008, based on this recently produced document. (emphasis added)

166.   Insurer knew that Mrs. Chute was totally disabled from October 8, 2008 through November 26, 2008, after being served with the January 6, 2011 Amended Petition and the evidence, probably a few days later; but E/I's Answer, promising to pay, wasn't filed until two months later on March 7, 2011.

167.   Insurer's payment of total disability benefits was not forthcoming as promised. Insurer did not pay those benefits until September 26, 2011, more than eight months after being provided with the evidence; three months after Mrs. Chute was tested by her cancer doctor, and a month after Mrs. Chute was diagnosed as terminal. The Insurer had no intention of ever paying those benefits, as Ms. Sabers and the Insurer promised, a deceit as described in SDCL § 20-10-2(4). Had the Insurer timely paid those benefits within two weeks, as required by statute (*See* SDCL § 62-4-10), and Mrs. Chute could have had the money to pay the $285.00 up front to see her cancer doctor six months earlier, they possibly could have successfully treated her cancer and saved her life. Insurer knew Mrs. Chute had Breast cancer, and solicited, conspired and colluded with the Law Firm and their attorneys, to deny, and delay any payment of benefits as long as possible, to intentionally, and maliciously cause Mrs. Chute's death. In South Dakota, that's called premeditated design to effect the death, and called murder in the first degree.

168.   After receiving the check, Mrs. Chute again demanded payment of all back benefits in a letter to Insurer's counsel, Ms. Sabers, three days later on September 29, 2011. The following is an excerpt:

In regards to the check I received for temporary total disability (TTD) benefits

38

from October 8, 2008 through November 26, 2008, perhaps you can explain this. The date of October 8, 2008 is a Wednesday, and November 26, 2008 was also a Wednesday, so this check was for seven (7) weeks at the rate of $299.00 a week, or $ 2,093.00. Adding the 10% penalty provided for in SDCL 62-4-10.1 of $ 209.30 equals $ 2,302.30, plus 12% interest times three (3) years ($ 276.28 per year times three (3) = $828.84) equals $ 3,131.14, not $ 2,846.48. My calculator says there's a difference owing of $ 284.66, just for those seven weeks.

My injury on September 10, 2008, was also a Wednesday. Just so we're on the same page, First Comp is refusing TTD benefits from Wednesday, September 10, 2008 through Tuesday, October 7, 2008 (4 weeks) and any TTD or permanent partial disability (PPD, See SDCL 62-4-5-compensation for partial disability) after November 26, 2008?

My first day back to work was December 8, 2008; so from Thursday, November 27th through Wednesday, December 3rd, (1 week) First Comp is denying both PPD and TTD?

And from Thursday, December 4th through Wednesday, December 10th (I worked 3 days, or 21.54 hours @ $10.00 per hour totaling $ 215.40), actually this pay period was from 11-27-2008 – 12-10-2008, or two weeks. According to SDCL 62-4-5, I should have received $299.00 per week for those two weeks, minus $215.40, or $ 382.60. Now, $382.60 plus a 10% penalty of $38.26 is $$420.86; times 12% interest of $50.50 per year times 3 years, or $151.50, added to $ 420.86 is $572.36 for those two weeks.

The next two week pay period, 12-11-2008 – 12-24-2008, I only worked 4 days.

The next two week pay period, 12-25-2008 – 1-7-2009, I worked 47.19 hours, or $471.90, and should have been paid (2 times $299.00) $598.00. That's a difference of $126.10, plus the 10% penalty and 12% interest for 3 years.

The next two week pay period, 1-8-2009 – 1-21-2009, I worked 46.05 hours, or $460.50, and should have been paid (2 times $299.00) $598.00. That's a difference of $137.50 plus the 10% penalty and 12% interest for 3 years.

And so on and so on.......up until March 3, 2010 when I was terminated; and then, $299.00 a week since then, until this is settled, that's over 80 additional weeks so far, or $23,920.00, plus penalty and interest (over $37,000.00).

169.   Insurer's counsel, Ms. Sabers, answered Mrs. Chute's demands for weekly compensation

"According to SDCL 62-4-5", one day later, in a letter dated September 30, 2011, saying:

Thank you for your correspondence of September 29, 2011....

The reason we have a dispute in calculation on a period of TTD from October 8, 2008 through November 26, 2008, is that I do not believe a penalty is appropriate. Obviously,

that is a matter that would have to be resolved by the Department. With regard to the remaining periods between September 10, 2008 and December 8, 2008, there is no indication in any medical record that any physician *completely took you off work*. (emphasis added)
I disagree with your assertions as to ongoing benefits after you were released to work. Obviously, this will be an issue for mediation or for trial before the Department.

170.   Ms. Sabers provided no explanation of why she disagreed to Mrs. Chute's entitlement to ongoing benefits after she was released to work (and before she was terminated), in accordance with SDCL § 62-4-5; nor did she say why the Insurer refused to investigate or pay her claim.

171.   In response to Mrs. Chute's claim for weekly workers compensation benefits submitted to Insurer and their counsel, ("*....up until March 3, 2010 when I was terminated; and then, $299.00 a week since then, until this is settled, that's over 80 additional weeks so far, or $23,920.00, plus penalty and interest (over $37,000.00).*"), after she was terminated, still under her doctor's work restrictions, and was unemployed and unable to find work (drawing unemployment benefits); Ms. Sabers and Insurer, both having the duty to disclose the facts of why the Insurer refused to pay her claim, intentionally and knowingly, suppressed those facts. These were acts of deceit as described and defined in SDCL § 20-10-2(3) committed by the Insurer, the Law Firm, the Unknown supervising attorney, and Ms. Sabers, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

172.   Ms. Sabers had a premeditated design to effect the death of Mrs. Chute, by colluding with, and following the direction and/or orders of, her supervising attorney, the Law Firm, and the Insurer, knowingly, deceitfully, and intentionally refusing to pay lawful weekly workers compensation benefits that were due to Mrs. Chute pursuant to SDCL § 62-4-5, immediately after being terminated on March 8, 2010, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute. Insurer is vicariously liable for the actions of the Law Firm, Unknown supervising attorney, and Ms. Sabers.

173.   Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate and monitor the post injury weekly earnings, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial; by requiring Mrs. Chute to wait years, and go through legal proceedings with the Department in order to be paid the lawfully owed weekly workers compensation benefits pursuant to SDCL § 62-4-5; causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

174.   Ms. Sabers knowingly, and with intent to deceive, prepared and made the statements made in her letter dated September 30, 2011, as part of Mrs. Chute's workers compensation claim, in support of denying her claim pursuant to the Insurer's insurance policy, knowing that the statements contained false, incomplete, and misleading information concerning the facts of entitlement to weekly benefits pursuant to SDCL § 62-4-5, material to the claim. This was a fraudulent insurance act as defined in SDCL § 58-4A-2(6), and a deceit, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

175.   Ms. Sabers knowingly assisted and conspired with her Defendant Unknown Supervising attorney, the Law Firm, and Insurer, to prepare and make the statements made in her letter dated September 30, 2011, as part of Mrs. Chute's workers compensation claim, in support of denying her claim pursuant to the Insurer's insurance policy, knowing that the statements contained false, incomplete, and misleading information concerning the facts of entitlement to weekly benefits pursuant to SDCL § 62-4-5, material to the claim. This was a fraudulent insurance act as defined in SDCL § 58-4A-2(7), and a deceit, causing damages, and the unlawful wrongful death, and

murder in the first degree of Mrs. Chute.

DEMAND FOR RELIEF No. 5

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN,

P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

DEFENDANT SUPERVISING ATTORNEY

176.   Mrs. Chute (by and thru the Estate) demands payment from Insurer for willfully committing the crime of deceit (SDCL § 20-10-2(4)) in E/I's Answer, and then delaying payment for over eight months, causing the unlawful wrongful death, and murder of Mrs. Chute for the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

177.   Mrs. Chute (by and thru the Estate) demands payment from Insurer for willfully committing the crime of deceit (SDCL § 20-10-2(3)) in Ms. Sabers letter dated September 30,

2011, and refusing to pay weekly benefits to Mrs. Chute after she was terminated on March 8, 2010, causing the unlawful wrongful death, and/or murder of Mrs. Chute described above, for the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

178.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

179.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for willfully committing the crime of deceit (SDCL § 20-10-2(4)) in E/I's Answer, and then delaying payment for over eight months, causing the unlawful wrongful death, and murder of Mrs. Chute for the following amount of damages authorized by

SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

180.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers in the treble amount of all damages in accordance with SDCL § 16-18-28, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for all damages.

181.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for willfully committing the crime of deceit (SDCL § 20-10-2(4)) in E/I's Answer, and then delaying payment for over eight months, causing the unlawful wrongful death, and murder of Mrs. Chute for the following damages (trebled by SDCL §16-18-28) authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars; trebled, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest; trebled.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars, trebled; and punitive damages in ten times that amount; 200 million dollars; trebled, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled; and punitive damages in ten times that amount; $1,075,000,000.00, plus interest; trebled.

182.    Mrs. Chute demands payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed under ¶179-180, sub paragraphs 1 through 4 above.

STATEMENT OF CLAIM No. 6

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the Unknown

DEFENDANT SUPERVISING ATTORNEY

BAD FAITH, DECEIT, INSURANCE FRAUD, COLLUSION, MURDER

BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

183.    All paragraphs above are incorporated herein by this reference.

184.    Attorney Ms. Sabers made the following statements in a letter dated October 14, 2011;

"....I disagree with your calculation of damages. Unfortunately, I do not think you understand the types of benefits available under workers compensation...I believe the *evidence at hearing* will show that you were *terminated for cause* and thus are not entitled to *additional benefits*. In the alternative, I believe *there will be evidence* to show that your work incident does not prevent you from being employed in the community." (emphasis added)

185.    Ms. Sabers did not explain to Mrs. Chute what evidence she was referring to that would be produced at the hearing to show that Mrs. Chute was terminated for cause. Ms. Sabers had a

duty and obligation to disclose any such information or evidence through the continuing discovery obligation and process. Mrs. Chute was terminated on March 8, 2010, and Ms. Saber's letter was dated nineteen (19) months later on October 14, 2011. Not disclosing any such evidence was fraudulent concealment.

186.   Ms. Sabers had the decisions of the UI Div. that stated "Your request for benefits is allowed commencing 03/07/2010...You were discharged for poor performance. Misconduct...has not been substantiated." (*See* ¶141 above). Employer told the Unemployment Insurance Division, a state agency of South Dakota, that Mrs. Chute was discharged for poor performance. That's not cause as determined by the UI Div. Ms. Sabers was lying to Mrs. Chute, and making false statements for the improper purpose of denying her claim.

187.   Ms. Sabers admission that "...I believe *there will be evidence*..." again, imposed a duty and obligation upon Ms. Sabers and the Insurer, to disclose any such evidence. No such disclosure was made. Ms. Sabers was either making false statements or fraudulently concealed said evidence.

188.   Ms. Sabers, knowingly and with intent to deceive, presented this statement in support of the denial of a claim for payments and benefits, pursuant to the Insurer's WC Insurance Contract, knowing that the statements contained false, incomplete, and misleading information concerning the facts entitling Mrs. Chute to compensation for partial disability pursuant to SDCL § 62-4-5, two (2) Declaratory Rulings from the Department, the Employment Contract, and the test for entitlement stated in Hendrix (¶ 62 above). Ms. Saber's statement was a deceit, and a fraudulent insurance act according to SDCL § 58-4A-2(6), made under the direction and supervision of her Defendant Unknown supervising attorney, the Law Firm, and the Insurer, and caused Mrs. Chute damages.

189.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate and monitor the post injury weekly earnings, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial; by requiring Mrs. Chute to wait years, and go through legal proceedings with the Department in order to be paid the lawfully owed weekly workers compensation benefits pursuant to SDCL § 62-4-5; causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

190.    Insurer's statements were fraudulent insurance acts as defined in SDCL § 58-4A-2(6), constituting criminal activities, and because the amount involved was over $1,000.00, Insurer's fraudulent insurance acts were felonies. (Felony Insurance Fraud), and caused damages to Mrs. Chute.

DEMAND FOR RELIEF No. 6

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN,

P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

DEFENDANT SUPERVISING ATTORNEY

191.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for willfully committing the crime of deceit (SDCL § 20-10-2(3)) in Ms. Sabers letter dated October 14, 2011, and refusing to pay weekly benefits to Mrs. Chute after she was terminated on March 8, 2010, causing the unlawful wrongful death, and/or murder of Mrs. Chute, for the following amount of damages authorized by SDCL § 20-10-1.

1)  For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars,

47

plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

192.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

193.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for willfully committing the crime of deceit (SDCL § 20-10-2(4)) causing the unlawful wrongful death, and murder of Mrs. Chute for the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

194.   Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers in the treble amount of all damages in accordance with SDCL § 16-18-28, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for all damages.

195.   Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for willfully committing the crime of deceit (SDCL § 20-10-2(4)) causing the unlawful wrongful death, and murder of Mrs. Chute for the following damages (trebled by SDCL §16-18-28) authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars; trebled, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest; trebled.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars, trebled; and punitive damages in ten times that amount; 200 million dollars; trebled, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years

wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled; and

punitive damages in ten times that amount; $1,075,000,000.00, plus interest; trebled.

196.   Mrs. Chute demands payment from Ms. Sabers Unknown Defendant Supervising

Attorney for the same amounts listed under ¶194, and ¶195, sub paragraphs 1 through 4 above.

197.   Mr. Chute demands payment from the Insurer for weekly workers compensation death

benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly

benefits at the time of her death, in accordance with her employment contract.

198.   Mr. Chute demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun,

P.C.,  for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will

be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with

her employment contract.

199.   Mr. Chute demands payment from attorney Ms. Sabers for weekly workers compensation

death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's

weekly benefits at the time of her death, in accordance with her employment contract; trebled.

200.   Mr. Chute demands payment from Ms. Sabers Unknown Supervising attorney for weekly

workers compensation death benefits under SDCL § 62-4-12, the amount will be the

continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her

employment contract; trebled.

STATEMENT OF CLAIM No. 7

Against EMPLOYER

201.   All paragraphs above are incorporated herein by this reference.

202.   Mrs. Chute's Amended Petition stated at ¶60: "The reason Claimant was discharged was

50

retaliatory termination for filing a workers compensation claim. SDCL 62-1-16." Mrs. Chute (by and through her Estate) still asserts that fact.

203.    Amazingly and unbelievably, Employer and Insurer successfully convinced the Department's Administrative Law Judge Donald Hageman (ALJ Hageman) (Defendant herein) that SDCL 62-1-16 was not enforceable by the Department in workers compensation cases, and required that the injured employee had to pursue any claim for retaliatory termination through the Circuit Court by filing a civil action. ALJ Hageman was wrong.

DEMAND FOR RELIEF No. 7

Against EMPLOYER

204.    Mrs. Chute (by and thru the Estate) demands payment from Employer, in the amount of treble damages of her Employment Contract, as stated in ¶61 of her Amended Petition.

STATEMENT OF CLAIM No. 8

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN-in his official capacity and individually as a licensed South Dakota attorney

42 U.S.C. § 1983 and SDCL § 16-18-28

205.    All paragraphs above are incorporated herein by this reference.

206.    Donald W. Hageman is a person and a licensed South Dakota attorney, who is, or was employed by the South Dakota Department of Labor and Regulation (Department) as a Workers Compensation Hearing Officer (or Administrative Law Judge-ALJ Hageman) pursuant to SDCL § 62-7-12.1; and is, or was, assigned to Mrs. Chute's workers compensation case.

207.    Mr. Chute, now the Personal Representative of Mrs. Chute's Estate, has intervened on behalf of his wife over the years during her terminal illness when she could not act; and has reached the conclusion that ALJ Hageman has been improperly influenced or bribed in this case,

as his actions and decisions explained herein will either show, or raise considerable suspicion.

208.   Mrs. Chute filed an Amended Petition for Hearing (Amended Petition) with the

Department on January 6, 2011, pursuant to SDCL § 62-7-12.

209.   In her Amended Petition, Mrs. Chute asked the Department to review her disability

payments pursuant to SDCL § 62-7-33, stating in ¶25 of her Amended Petition:

> "The posted work schedule for Parkway started on Monday and ended on Sunday.
> The schedule from Monday, December 1, 2008 through Sunday, December 7, 2008 had
> already been posted, and Employer did not schedule Claimant to return to work until
> Monday, December 8, 2008. Claimant was not paid any weekly disability benefits, from
> the date of her work related injury on September 10, 2008 through December 8, 2008, the
> date her employer agreed to her work restrictions and placed her back on the work
> schedule to return to work. Claimant is entitled to be paid temporary disability benefits
> pursuant to SDCL 62-4-2 and SDCL 62-4-3 at the rate of $299.00 per week (SD state
> minimum) for the twelve (12) weeks of work she missed (September 10, 2008 through
> December 8,2008) totaling $3588.00, plus interest at the Category C rate of 12% for two
> years and one month, ($430.56 per year plus $35.88) equaling $897.00, plus mileage to
> and from all treatments while off work of $62.53, totaling $ 4,547.53, plus any additional
> penalties and interest allowed."

And concluded her Amended Petition by requesting:

> "...that a hearing be had on all claims and that upon such hearing an award of
> worker's compensation benefits be made for any and all benefits to which Claimant is
> entitled under the South Dakota Worker's Compensation Act..."

SDCL § 62-7-33 explains the review of workers compensation payments by the Department:

> "...Any payment, including... disability payments under § 62-4-3 if the earnings
> have substantially changed since the date of injury, made or to be made under this title
> may be reviewed by the Department of Labor and Regulation pursuant to § 62-7-12 at the
> written request of the... employee and on such review payments may be ended,
> diminished, increased, or awarded subject to the maximum or minimum amounts
> provided for in this title, if the department finds that a change in the condition of the
> employee warrants such action."

210.   ALJ Hageman's decision on this issue was listed in the Department's Chronological

Index (CI) as page No. 2151 (showing that this case consisted of over two thousand one hundred

and forty five pages filed with the Department, and that didn't count hundreds of pages of

discovery including medical records and doctors reports) and stated:

> "The Employer and Insurer filed a Motion for Partial Summary Judgment dated November 28, 2011, and a Motion to Dismiss dated December 23, 2013. The Department has reviewed the briefs and submission of the parties related to those motions and concludes that the arguments made in the Employer and Insurer's briefs in support of those motions expresses the correct rational and status of the law. Therefore, it is hereby,
>
> ORDERED that Employer and Insurer's Motion for Partial Summary Judgement is granted. It is further,
>
> ORDERED that Employer and Insurer's Motion to Dismiss is granted. This matter is, therefore, dismissed with prejudice.
>
> Dated this 18th day of June, 2014.

211.    What? Summary Judgment was granted based on arguments?

212.    Employer and Insurer's Motion for Partial Summary Judgment stated:

> "Pursuant to A.R.S.D. 47:03:01:08 and SDCL § 15-6-56(b)..., Employer and Insurer respectfully request an order of partial summary judgment in their favor in this matter. *This Motion is supported by...the Exhibits attached hereto.*" (emphasis added)

213.    Whether or not ALJ Hageman is required by law to follow the State statutes under

Section 6 of Title 15 in workers compensation proceedings, is beyond Mr. Chute's knowledge,

but he does have to follow the Administrative Rules of South Dakota (ARSD) and 47:03:01:08

says in part:

> "...an employer or its insurer may, anytime after expiration of 30 days from the filing of a petition, ***move with supporting affidavits*** for a summary judgment. The division shall grant the summary judgment immediately ***if*** the pleadings, depositions, answers to interrogatories, and admissions on file, ***together with the affidavits,*** if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (emphasis added)

214.    In this case, according to ARSD 47:03:01:08, the Employer and Insurer were not allowed

to move for summary judgment *without* supporting affidavits.

215.    A review of Employer and Insurer's Motion for Partial Summary Judgment, listed in the

Department's Chronological Index (CI) as pages 566-623, shows page 566 as the first page of

said motion, signed by Ms. Sabers on November 28, 2011. The second page, No. 567, is the

Certificate of Service, again signed by Ms. Sabers. The third page, No. 568, is marked in the

lower right hand corner as "Exhibit A"; and the last page is, No. 622, making a total of 54 pages

of exhibits, all submitted by Employer and Insurer, through Ms. Sabers, her supervising attorney,

and the Law Firm, without being attached to any affidavit.

216.    Now, SDCL § 15-6-56(e) describes the form of affidavits to be used and attached:

> Form of affidavits for summary judgment....Supporting...affidavits shall be made on
> personal knowledge, shall set forth such facts as would be admissible in evidence, and
> shall show affirmatively that the affiant is competent to testify to the matters stated
> therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit
> shall be attached thereto or served therewith.

217.    All of the unlawful exhibits, which were not attached to any affidavit, and not served with

any affidavit, were referred to over and over and over again, in the Employer and Insurer's Brief

in Support of Motion for Partial Summary Judgment, thereafter ALJ Hageman opined:

> "The Department has reviewed the briefs and submission of the parties related to those
> motions and concludes that the arguments made in the Employer and Insurer's briefs in
> support of those motions expresses the correct rational and status of the law."

218.    The Employer and Insurer's said motion should have been denied as a matter of law.

219.    Nowhere in his decision did ALJ Hageman reply to Mrs. Chute's written request, under

SDCL § 62-7-33, to review her entitlement to *disability payments under § 62-4-3 if the earnings*

*have substantially changed since the date of injury*, since after her date of injury, her earnings

were zero for the following twelve (12) weeks; and after her date of termination on March 8,

2010, her earnings were also zero until her death on July 17, 2013, more than three years later.

220.    ALJ Hageman refused to review Mrs. Chute's request to review the disability payments

she was entitled to, as required of him by SDCL § 62-7-33.

221.    ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute

due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to review Mrs. Chute's written request for review under SDCL § 62-7-33, and caused Mr. and Mrs. Chute damages.

222.    ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by accepting and reviewing unlawfully submitted evidence attached to Employer and Insurer's Motion for Partial Summary Judgment, without the required affidavit, and caused Mr. and Mrs. Chute damages.

223.    Donald W. Hageman, in his official capacity as ALJ Hageman, and individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney; to knowingly and intentionally deny Mrs. Chute weekly compensation benefits for partial disability in violation of SDCL § 62-4-5, the WC Insurance Contract, two (2) Declaratory Rulings (Re: SDCL 62-4-5 dated August 2, 2001; and Re: SDCL §§ 62-4-2, 62-4-5 dated July 7, 2005) from the Department, the Employment Contract, the test for entitlement as stated in Hendrix, and the requirements of SDCL § 62-7-33; causing damages to Mrs. Chute's Estate and Mr. Chute.

DEMAND FOR RELIEF No. 8

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN-in his official capacity and individually as a licensed South Dakota attorney

224.    Mrs. Chute (by and thru the Estate) demands pursuant to 42 U.S.C. § 1983, that ALJ Hageman's ORDER, dated June 18, 2014 and entered by the Department, be declared void, vacated, or reversed, and/or set aside.

225.    Mrs. Chute (by and thru the Estate) demands, pursuant to 42 U.S.C. § 1983, payment

from ALJ Hageman in the amount of ten million dollars in compensatory damages; and ten times

that amount in punitive damages; one hundred million dollars.

226.    Mrs. Chute (by and thru the Estate) demands payment from attorney Donald W. Hageman

in the amount of ten million dollars in compensatory damages, trebled; and ten times that amount

in punitive damages; one hundred million dollars, trebled, pursuant to SDCL § 16-18-28 for

violations of SDCL § 16-18-26(1).

STATEMENT OF CLAIM No. 9

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN, in his Official Capacity

and Individually as a Licensed South Dakota Attorney, and

MARCIA HULTMAN, in Her Official Capacity as SECRETARY of the

SOUTH DAKOTA DEPARTMENT OF LABOR and REGULATION

SEVENTH JUDICIAL CIRCUIT COURT JUDGE HEIDI LINNGREN

FEDERAL QUESTION, and 42 U.S.C. § 1983

227.    Another excerpt from "Claimant's Brief in Support of Response to the Employer and

Insurer's Motion to Dismiss" shows on pp 11-12:

> Claimant's Amended Petition for Hearing, dated January 6, 2011, explained in ¶28:

> "Sometime in the first part of December of 2008, Claimant discovered that Dr. Weiland's
> [Mrs. Chute's original doctor] Physician's Assistant, Gail Eckert, had disclosed
> Claimant's personal and private medical information concerning her breast cancer, to her
> husband, Mel Eckert. Mel Eckert then came into the Parkway casino while Claimant was
> working one day, and told the Claimant that he knew about her breast cancer, because his
> wife (Gail) had told him so."

Continuing on page 14, it stated:

> The Claimant is not required to prove anything, to anyone, in order to claim the privilege
> stated in SDCL § 19-13-7, which simply states: "*A patient has a privilege...to prevent any
> other person from disclosing* [confidential communications]..." The Claimant claimed
> this privilege, in January of 2009, when she chose to see a new doctor, Dr. Babbitt, in
> order to prevent the unauthorized disclosure of her private and protected medical

information concerning her breast cancer, by Dr. Weiland's office and his employees. Employer's Insurer was then notified by Dr. Babbitt.

Continuing on page 15, it stated:

> There's absolutely no doubt, that the Claimant claimed patient's privilege pursuant to SDCL § 19-13-7, and SDCL § 19-13-8; that in order to prevent Dr. Weiland's nurse Gail, from making unauthorized disclosures of Claimant's private medical information, she changed doctors, from a doctor she had seen for more than 5 years (Dr. Weiland), to a doctor she had never seen before, Dr. Babbitt.

228.    Of course, after that, Insurer refused to pay Dr. Babbitt or pay for any prescriptions from

her, because Dr. Weiland didn't refer Mrs. Chute to Dr. Babbitt. "Employer and Insurer's Reply

in Support Motion to Dismiss and Motion for Partial Summary Judgment" argued:

> IV. S.D.C.L. § 62-4-43 precludes claims of payment for treatment provided by Dr. Nancy Babbitt before January 12, 2011.

> Claimant failed to comply with statutory requirements concerning her decision to initiate treatment outside the chain of referral. S.D.C.L. § 62-4-43 provides in pertinent part:

> If the employee desires to change the employee's choice of medical practitioner or surgeon, the employee shall obtain approval in writing from the employer.

> The statutory language is not permissive. The use of the term "shall" creates a condition that must occur prior to changing medical providers. Claimant did not obtain the required written approval prior to ending the physician patient relationship with Dr. Weiland and initiating treatment with Dr. Babbitt. By statute,

> The employer is not responsible for medical services furnished or ordered by any medical practitioner or surgeon or other person selected by the employee in disregard of this section. S.D.C.L. § 62-4-43.

229.    ALJ Hageman's decision on this issue was:

> "The Department has reviewed the briefs and submission of the parties related to those motions and concludes that the arguments made in the Employer and Insurer's briefs in support of those motions expresses the correct rational and status of the law."

230.    Mr. Chute appealed ALJ Hageman's decision to the Secretary of the Department of

Labor (Secretary), Marcia Hultman, who affirmed his decision on this issue and stated in her

ORDER:

"The above-captioned matter comes before the Secretary of the Department of Labor pursuant to a secretarial level appeal as provided by SDCL 62-7-16. Upon reviewing the file, the evidence submitted by the parties, and the Decision of the Division of Labor and Management, it is hereby,

ORDERED, that the Order entered by the Division of Labor and Management on the 18th day of June, 2014, is hereby, in all respects, affirmed, and that the Division enter Findings of Fact and Conclusions of Law consistent with that Order."

Dated this 30th day of June, 2014.

231.    Mr. Chute appealed the Secretaries decision to the Seventh Judicial Circuit Court, where

he argued:

"Gary L. Chute, Personal Representative on behalf of the Estate of Donna M. Chute, couldn't believe that the ALJ had ruled it permissible for an employee of Mrs. Chute's previous doctor (Dr. Weiland) to make unauthorized disclosures of her breast cancer without her permission, in violation of HIPAA [Health Insurance Portability and Accountability Act of 1996] (45 CFR § 164.502(a)), and then required Mrs. Chute to obtain her Employer's written permission, in order to claim patients privilege pursuant to SDCL § 19-13-7, and SDCL § 19-13-8, according to SDCL § 62-4-43. HIPAA preempts state law (45 CFR § 160.203; General rule and exceptions. A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law.) This was not just arbitrary and capricious; ALJ Hageman had been improperly influenced or bribed; this was corruption. No South Dakota State law preempts HIPAA or SDCL § 19-13-7, and SDCL § 19-13-8, requiring the Claimant to obtain the written permission of their employer, in order to protect against the unauthorized disclosure of Protected Health Information (PHI)..."

232.    The Honorable Judge Heidi Linngren (Judge Linngren) affirmed the Secretaries decision

on this issue.

233.    Mrs. Chute (by and thru her Estate) claimed patient privilege in January of 2009, and has

been denied the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-

8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c) provides that the

personal representative of a deceased patient can also claim the privilege for her) by ALJ

Hageman, Secretary Hultman, and Judge Linngren. HIPAA preempts any South Dakota state law,

specifically SDCL § 62-4-43, that would require a patient to get written permission from anyone

in order to claim patient privilege, and protect themselves against the unauthorized disclosure of their private health information (HIPAA Privacy Rules).

234.    ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c), that preempts SDCL § 62-4-43, and caused Mr. and Mrs. Chute damages.

235.    Secretary Marcia Hultman is a "person", who under color of state law, denied Mr. and Mrs. Chute the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c), that preempts SDCL § 62-4-43,  and caused Mr. and Mrs. Chute damages.

236.    Judge Heidi Linngren is a "person", who under color of state law, denied Mr. and Mrs. Chute the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c), that preempts SDCL § 62-4-43,  and caused Mr. and Mrs. Chute damages.

FEDERAL QUESTION.

237.    Does SDCL § 62-4-43 preempt HIPAA or vise versa?

DEMAND FOR RELIEF No. 9

238.    Mr. Chute asserts that HIPAA preempts SDCL § 62-4-43 and asks this Court, pursuant to 42 U.S.C. § 1983,  to overturn, vacate, or void the decisions by Judge Linngren, the Secretary, Marcia Hultman, and ALJ Hageman on this issue.

239.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for all medical bills and prescriptions by and from Dr. Babbitt for treatment of Mrs. Chute's work related injuries, plus a 10% penalty and 12% interest.

STATEMENT OF CLAIM No. 10

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN, in his Official Capacity

And EMPLOYER, and MARCIA HULTMAN, in Her Official Capacity as SECRETARY of the

SOUTH DAKOTA DEPARTMENT OF LABOR and REGULATION

SEVENTH JUDICIAL CIRCUIT COURT JUDGE HEIDI LINNGREN

ALL FIVE NAMED SOUTH DAKOTA SUPREME COURT JUSTICES and Their

UNKNOWN LAW CLERK/ATTORNEYS

STATE QUESTION - RETALIATORY TERMINATION

240.   Does the South Dakota Department of Labor and Regulation have the jurisdiction and

authority, to hear and decide claims of retaliatory termination in workers compensation cases,

pursuant to SDCL§ 62-1-16, which states:

> Employer civilly liable for retaliatory termination of employee--Burden of proof. An
> employer is civilly liable for wrongful discharge if it terminates an employee in
> retaliation for filing a lawful workers' compensation claim. The burden of proof is on the
> employee to prove the dismissal was in retaliation for filing a workers' compensation
> claim.

241.   Employer terminated Mrs. Chute in retaliation for filing a lawful workers compensation

claim. Mr. Chute asserts that the Department has the jurisdiction and authority to hear and decide

Mrs. Chute's claim of retaliatory termination pursuant to SDCL§ 62-1-16 in her workers

compensation case.

242.   Employer and Insurer assert Mrs. Chute has to file a civil suit in Circuit Court for any

claim of retaliatory termination pursuant to SDCL§ 62-1-16 in her workers compensation case.

243.   ALJ Hageman's Decision on this issue was:

> "The Department has reviewed the briefs and submission of the parties related to those
> motions and concludes that the arguments made in the Employer and Insurer's briefs in
> support of those motions expresses the correct rational and status of the law."

60

244.   ALJ Hageman's Decision was affirmed by the Secretary. The Secretary's Decision was affirmed by Judge Linngren.

245.   Mr. Chute appealed to the South Dakota State Supreme Court, who dismissed his appeal.

246.   Mr. Chute appealed to the U.S. Supreme Court, who denied his Petition for a Writ of Certiorari, and denied his Petition for Rehearing.

247.   ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

248.   Donald W. Hageman, individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, by knowingly and intentionally refusing to hear and decide Mrs. Chute's claim for retaliatory termination benefits pursuant to SDCL§ 62-1-16, causing damages to Mrs. Chute's Estate and Mr. Chute.

249.   Marcia Hultman, Secretary of the Department, is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

250.   Judge Heidi Linngren, is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

251.    Attorney Heidi Linngren is a "person", and practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, by knowingly and intentionally refusing to hear and decide Mrs. Chute's claim for retaliatory termination benefits pursuant to SDCL§ 62-1-16, causing damages to Mrs. Chute's Estate and Mr. Chute.

252.    All five of the named South Dakota State Supreme Court Justices, and their unknown law clerk/attorneys are "persons", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

253.    All five of the named South Dakota State Supreme Court Justices, and their unknown law clerk/attorneys, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, by knowingly and intentionally refusing to hear and decide Mrs. Chute's claim for retaliatory termination benefits pursuant to SDCL§ 62-1-16, causing damages to Mrs. Chute's Estate and Mr. Chute.

DEMAND FOR RELIEF No. 10

254.    Mrs. Chute (by and thru the Estate) demands payment from Employer as stated in her Amended Petition at ¶60, for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013 (approximately $275,200.00), plus 12% interest.

255.    Mrs. Chute (by and thru the Estate) demands payment from ALJ Hageman for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest.

256.    Mrs. Chute (by and thru the Estate) demands payment from attorney Donald W. Hageman

for deceit and collusion the amount of $1,600.00 per week from March 8, 2010 through the end

of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest; trebled.

257.    Mrs. Chute (by and thru the Estate) demands payment from Secretary Marcia Hultman

for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17,

2013, (approximately $275,200.00), plus 12% interest.

258.    Mrs. Chute (by and thru the Estate) demands payment from Judge Heidi Linngren for the

amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013,

(approximately $275,200.00), plus 12% interest.

259.    Mrs. Chute (by and thru the Estate) demands payment from attorney Heidi Linngren for

the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17,

2013, (approximately $275,200.00), plus 12% interest; trebled.

260.    Mrs. Chute (by and thru the Estate) demands payment from all five of the named South

Dakota State Supreme Court Justices, each, and their unknown law clerk/attorneys, each, for the

amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013,

(approximately $275,200.00), plus 12% interest.

261.    Mrs. Chute (by and thru the Estate) demands payment from all five of the named South

Dakota State Supreme Court Justices, as attorneys, each, and their unknown law clerk/attorneys,

as attorneys, each, for the amount of $1,600.00 per week from March 8, 2010 through the end of

her life on July 17, 2013, (approximately $275,200.00), plus 12% interest; each, trebled.

STATEMENT OF CLAIM No. 11

Against DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C.,

DEFENDANT CATHERINE SABERS, Attorney, BARBARA ANDERSON LEWIS, attorney

and the unknown DEFENDANT SUPERVISING ATTORNEY; INSURER,

ALJ DONALD W. HAGEMAN, in his Official Capacity, and as an attorney

and MARCIA HULTMAN, in Her Official Capacity as SECRETARY

JUDGE HEIDI LINNGREN, in her Official Capacity, and as an attorney

262. All paragraphs above are incorporated herein by this reference.

263. Deceit and fraud must be specifically pleaded, so Mr. Chute apologizes to the Court for

the lengthy excerpt, but he doesn't know any other way to do this.

264. As stated above (¶230), the Secretary's Decision stated:

> "The above-captioned matter comes before the Secretary of the Department of Labor pursuant to a secretarial level appeal as provided by SDCL 62-7-16. Upon reviewing the file, the evidence submitted by the parties, and the Decision of the Division of Labor and Management, it is hereby,
>
> ORDERED, that the Order entered by the Division of Labor and Management on the 18th day of June, 2014, is hereby, in all respects, affirmed, and that the Division enter Findings of Fact and Conclusions of Law consistent with that Order."
>
> Dated this 30th day of June, 2014.

265. The following is a continuing excerpt from Mr. Chute's Petition for Rehearing:

> Please note that Secretary Hultman ordered ALJ Hageman to enter "Findings of Fact and Conclusions of Law" (SDCL § 15-6-52(a)) on June 30, 2014 (Appendix C) and then mailed her decision and order to Mr. Chute only, that same day, as is shown in the cover letter and copy of the envelope in Appendix C. Apparently, Secretary Hultman sent her decision, and order to submit "Findings of Fact and Conclusions of Law" pursuant to SDCL § 15-6-52(a), to the Insurer, *ex parte*, electronically, via email to their attorneys, but I just don't know because nothing in her letter to me (Appendix C) says anything about serving the other parties.
>
> The Insurer, through counsel of record Barbara Anderson Lewis (attorney Lewis), pursuant to SDCL § 15-6-52(a), then submitted proposed "Findings of Fact and Conclusions of Law" to ALJ Hageman the very next day on July 1, 2014, as is shown in the cover letter; with the attached certified United States Postal Service (USPS) envelope and USPS tracking report that shows the date of delivery to Mr. Chute as July 3, 2014. See Appendix D.
>
> It should be noted by this Court, that pursuant to SDCL § 15-6-52(a), "Findings of Fact and Conclusions of Law" are unnecessary on decisions of motions under SDCL §

15-6-56 (Summary Judgment), but in this case, the Secretary ORDERED "Findings of Fact and Conclusions of Law" to be entered by ALJ Hageman.

Without waiting the mandated 5 days after service upon Mr. Chute (*"The court may not sign any findings therein prior to the expiration of five days after service of the proposed findings..." See* SDCL § 15-6-52(a)), ALJ Hageman broke the law and signed the "Findings of Fact and Conclusions of Law" the very next day, on July 2, 2014, as is shown in the letter from ALJ Hageman dated July 2, 2014, along with the Department's file stamped copy signed and dated by ALJ Hageman on July 2, 2014 (See Appendix E). These fraudulent documents were mailed to Mr. Chute on July 2, 2014, as shown by a copy of the USPS certified mail envelope, and the attached USPS tracking report that shows delivery to Mr. Chute was made on July 10, 2014.

Mr. Chute tried to appeal ALJ Hageman's unlawful entry of "Findings of Fact and Conclusions of Law" to the Circuit Court, listing under the "Statement of Issues":

1. Whether each and every one of the ALJ's "Findings of Fact and Conclusions of Law" (which were prepared and submitted by the Employer/Insurer's counsel) dated July 2, 2014 are:

(1) In violation of constitutional or statutory provisions, or;
(2) In excess of the statutory authority of the agency, or;
(3) Made upon unlawful procedure, or;
(4) Affected by other error of law, or;
(5) Clearly erroneous in light of the entire evidence in the record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

2.      Whether the substantial rights of the appellant have been prejudiced because the administrative findings and conclusions are one or more of those listed above in SDCL § 1-26-36(1-6)?

And arguing in Appellant's Amended Brief that:

"In the present case, Mr. Chute, Personal Representative of the Estate of Donna M. Chute, was denied any opportunity to submit objections, or his own Proposed Findings of Fact and Conclusions of Law, and certainly never stipulated to a waiver. The Findings of Fact and Conclusions of Law in this case, were not made until more than two weeks after the ALJ's decision, and then only made after the Secretary affirmed his decision and ordered them."

But the Insurer's attorney Lewis argued to the Circuit Court that:

"Further, Gary L. Chute attempts to raise certain issues for the first time on appeal. Generally, when issues are raised for the first time on appeal, those issues are not addressed. (Citation omitted) Chute provided a list of 16 issues he  intended to raise on appeal. For this Court's ready reference, those issues raised for the first time on appeal include Issue Nos. 1, 2, and 14...."

"Findings of Fact and Conclusions of Law are not required in summary judgment
proceedings. The matters before the Department of Labor were presented by
Motions for Summary Judgment. As the South Dakota Supreme Court has recognized,
Findings of Fact and Conclusions of are unnecessary in summary judgment proceedings."
(Citations omitted)
Circuit Court Judge Heidi Linngren (Circuit Judge Linngren) refused to obey the law
(SDCL § 1-26-36), or remand the case for further proceedings pursuant to SDCL § 1-26-
36. Circuit Judge Linngren wrote in her Memorandum Decision:

Standard of Review

South Dakota Codified Law § 1-26-36 gives the reviewing Court the
authority to reverse or modify "a decision of an agency if a party has been prejudiced by
administrative 'findings, inferences, conclusions, or decisions' that are clearly erroneous
as a matter of law, or arbitrary, capricious, or characterized by an abuse of discretion."
When the issue before the Court is a question of law, the actions of the agency are fully
reviewable." (Citations omitted)

"5. This Court is not considering issues raised for the first time by Gary Chute on
appeal.

Gary Chute raises multiple issues on appeal that were never before the
Department. Generally, issues raised for the first time on appeal are not considered.
(Citation omitted) "This rule exists to permit [an administrative agency] an opportunity to
correct claimed error, prior to appeal." *Id.* Since this issue was not raised below, this
Court will not address it now.

Conclusion

For these reasons, the decision of the Department is AFFIRMED."

It shows it was dated by Circuit Judge Linngren on the 5th day of March, 2015, but file
stamped by the Clerk on May 8, 2015. (*See* Appendix F, Petition for Writ of Certiorari,
pp 3, 8-9). This date discrepancy raised some confusion and Mr. Chute asked for
clarification from the Court. In response, the Court issued the following ORDER (*See*
Appendix G, Petition for Writ of Certiorari), dated the 19th of May, 2015. The ORDER
states in part:
"The May 5, 2015 memorandum opinion affirming the decision of the South
Dakota Department of Labor and Regulation is incorporated in this Order. It is hereby

ORDERED, adjudged and decreed that the decision of the Department of Labor is
affirmed, and *the appeal is dismissed.* (emphasis added)

What??? "...*the appeal is dismissed????????* Mr. Chute appealed the unlawful and
fraudulent entry of ALJ Hageman's "Findings of Facts and Conclusions of Law" to the
Circuit Court, and his appeal was dismissed.

Mr. Chute, the disabled non-lawyer Personal Representative of his deceased wife's estate, timely appealed to the South Dakota Supreme Court, who also dismissed the appeal, stating the estate had to be represented by an attorney.

Mr. Chute then timely appealed to this Court who denied his Petition for a Writ of Certiorari without comment.

266.   First of all, Mr. Chute mailed his Petition for Review of ALJ Hageman's Decision to the Department, and was received, as shown in the Department's Chronological Index (CI) pages 2152-2154, on June 25, 2014, a Wednesday. Mr. Chute has no idea what time of day the mail was delivered to the Department on that day.

267.   The Secretary issued her decision, as shown in the CI, page 2157, on June 30, 2014, which was the following Monday.

268.   Secretary Marcia Hultman is not an attorney or a doctor.

269.   Secretary Hultman has asserted as a fact, in her decision, that she did review the file and evidence; "*Upon reviewing the file...* (which contained over 2150 pages including medical records and reports from 14 doctors)...*the evidence submitted by the parties, and the Decision...the Order entered by the Division...is...in all respects, affirmed...* " Given the benefit of the doubt, the Secretary got the Petition for Review by noon on Wednesday and not the next day, plus Thursday and Friday; then took Saturday and Sunday off, and issued her Decision on Monday at 4:58 p.m.; then she had three and a half days, without any interruptions or telephone calls, to review 2150 pages and make her decision. That's about 700 pages a day, with 100% accuracy and total recall of every single fact and law.

270.   The Secretary knows, and is very familiar with, the Declaratory Rulings issued by the Department, including the two rulings pertinent to this case; Re: SDCL § 62-4-5 dated August 2, 2001; and Re: SDCL §§ 62-4-2, 62-4-5 dated July 7, 2005.

271.   The Secretary knows when injured employees are entitled to weekly compensation

benefits under SDCL § 62-4-5.

272.    The Secretary determined that Mrs. Chute was not entitled or owed even one dollar in compensation under SDCL § 62-4-5.

273.    The Secretary knew that the Insurer did not investigate Mrs. Chute's claim.

274.    The Secretary knew that the Insurer did not notify Mrs. Chute, or the Department, in writing, that Insurer was denying the claim in whole or in part.

275.    The Secretary knew that the Insurer did not file the required report within two weeks pursuant to SDCL § 62-6-3, but did not impose the statutory fine:

> A company or employer which fails, refuses, or neglects to comply with the provisions of this section is also subject to an administrative fine of one hundred dollars payable to the Department of Labor and Regulation for each act of noncompliance

276.    The Secretary determined that HIPAA did not preempt state law, and required Mrs. Chute to get her Employers written permission in order to claim patient privilege and change doctors to prevent the unauthorized disclosure of her private health information, pursuant to SDCL § 62-4-43 .

277     The Secretary, and/or ALJ Hageman, had *ex parte* communications with the Insurer's law firm and counsel, ordering them to submit proposed Findings of Fact and Conclusions of Law to ALJ Hageman, without Mr. Chute's knowledge or participation.

278.    ALJ Hageman then signed and entered the Findings of Fact and Conclusions of Law submitted to him by the Insurer and their counsel, within twenty four (24) hours without waiting the required five days after service upon Mr. Chute, as required by South Dakota Codified Law SDCL § 15-6-52(a), without Mr. Chute's knowledge or participation.

279.    The "Findings of Fact" listed 18 Findings and included "Donna M. Chute's cause of death was unrelated to any injuries sustained in the work related accident."

280.    The "Conclusions of Law" had 13 conclusions, and included "No benefits are due pursuant to S.D.C.L. § 62-4-5..."

281.    ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by signing and entering the Findings of Fact and Conclusions of Law within 24 hours, without providing Mr. or Mrs. Chute (by and through her Estate) any knowledge, notice, or opportunity to be involved and caused Mr. and Mrs. Chute damages.

282.    Donald W. Hageman, individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney; to knowingly and intentionally deny Mr. and Mrs. Chute any knowledge, notice, or opportunity to be involved in the determination and entry of the Findings of Fact and Conclusions of Law (suppression of the facts), in violation of SDCL § 15-6-52(a), causing damages to Mrs. Chute's Estate and Mr. Chute.

283.    Secretary Marcia Hultman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by knowingly, intentionally, and deceitfully refusing and failing to review Mrs. Chute's workers compensation case; and making false statements and fraudulent misrepresentations in her Decision, and caused Mr. and Mrs. Chute damages.

284.    Secretary Marcia Hultman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by knowingly and intentionally having *ex parte* communications with Employer and Insurer regarding the Findings of Fact and Conclusions of Law, and caused Mr. and Mrs. Chute damages.

285.    Judge Heidi Linngren is a "person", who under color of state law, denied Mr. and Mrs.

Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to

review on appeal, the unlawful actions of the Department and ALJ Hageman, and caused Mr.

and Mrs. Chute damages.

286.    Heidi Linngren, individually as a licensed South Dakota attorney, practiced deceit (as

defined in SDCL § 20-10-2(3)) and collusion with the Department, ALJ Hageman, Employer,

Insurer, the Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their

Unknown supervising attorney; to knowingly and intentionally deny Mr. and Mrs. Chute due

process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to review on

appeal, the unlawful signing and entry of the Findings of Fact and Conclusions of Law between

the Department, ALJ Hageman, the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara

Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, and caused Mr. and Mrs.

Chute damages.

DEMAND FOR RELIEF No. 11

Against DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C.,

DEFENDANT CATHERINE SABERS, Attorney, BARBARA ANDERSON LEWIS, attorney

and the unknown DEFENDANT SUPERVISING ATTORNEY; INSURER,

Against ALJ DONALD W. HAGEMAN, in his Official Capacity, and as an attorney

And MARCIA HULTMAN, in Her Official Capacity as SECRETARY

and JUDGE HEIDI LINNGREN, in her Official Capacity, and as an attorney

287.    Mrs. Chute (by and thru the Estate) and Mr. Chute, demands, pursuant to

42 U.S.C. § 1983, that ALJ Hageman's Findings of Fact and Conclusions of Law, entered by the

Department, be declared void, vacated, or reversed, and/or set aside.

288.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) by not informing the Circuit Court of the unlawful signing and entry of the Findings of Fact and Conclusions of Law, which they had a duty to disclose; and for making false and misleading statements to the Circuit Court in regards to the Findings of Fact and Conclusions of Law, the entire amount of damages listed in this Complaint, owed by everyone and every claim listed, as authorized by SDCL § 20-10-1.

289.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for all damages authorized by SDCL § 20-10-1 including the following special damages . These are additional damages to any other section of this Complaint.

290.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

291.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for knowingly and  willfully committing the crime of deceit (SDCL § 20-10-2(3)) for the following amount of damages authorized by SDCL § 20-10-1.

  1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

  2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

  3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive

damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

## SPECIAL DAMAGES

292.   Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last two years of her life totaling $352,284.89.

293.   Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

294.   Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

295.   Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

296.   Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

297.   Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

298.   Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers, and attorney Ms. Lewis, each, in the treble amount of all damages in accordance with SDCL § 16-18-28, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for all damages.

299.   Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers, and attorney Ms. Lewis, each, for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for the following damages (trebled by SDCL §16-18-28) authorized by SDCL § 20-

10-1.

5) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars; trebled, plus interest, and all costs.

6) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest; trebled.

7) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars, trebled; and punitive damages in ten times that amount; 200 million dollars; trebled, plus interest.

8) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled; and punitive damages in ten times that amount; $1,075,000,000.00, plus interest; trebled.

300. Mrs. Chute demands payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed above for Ms. Sabers.

301. Mr. Chute demands payment from the Insurer for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

302. Mr. Chute demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

303. Mr. Chute demands payment from attorney Ms. Sabers for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled.

304.    Mr. Chute demands payment from Ms. Sabers Unknown Supervising attorney for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled.

305.    Mr. Chute, demands compensatory damages and punitive damages from Insurer, in the same amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars).

306.    Mr. Chute demands compensatory and punitive damages from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., in the same amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars).

307.    Mr. Chute demands compensatory and punitive damages from Ms. Sabers in treble the amount as Mrs. Chute's demands of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars); trebled for a total of $3,547,500,000.00 (Three billion, five hundred forty seven million five hundred thousand dollars), for committing attorney misconduct as defined in SDCL § 16-18-26(1) and authorized by SDCL § 16-18-28.

308.    Mr. Chute demands payment from attorney Ms. Lewis for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled.

309.    Mr. Chute demands compensatory and punitive damages from Ms. Lewis in treble the amount as Mrs. Chute's demands of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars); trebled for a total of $3,547,500,000.00 (Three billion, five hundred forty seven million five hundred thousand dollars), for committing attorney misconduct as defined in SDCL § 16-18-26(1) and authorized by SDCL § 16-18-28.

310.    Mr. Chute demands compensatory and punitive damages from Ms. Sabers and/or Ms. Lewis's Unknown supervising attorney, in treble the amount as Mrs. Chute's demands of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars); trebled for a total of $3,547,500,000.00 (Three billion, five hundred forty seven million five hundred thousand dollars), for committing attorney misconduct as defined in SDCL § 16-18-26(1) and authorized by SDCL § 16-18-28.

311.    Mrs. Chute, pursuant to 42 U.S.C. § 1983 demands payment from ALJ Hageman for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for the following amount of damages, and special damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

## SPECIAL DAMAGES

312.    Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last

two years of her life totaling $352,284.89.

313.    Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

314.    Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

315.    Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

316.    Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

317.    Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

318.    Mrs. Chute demands payment from attorney Donald W. Hageman, in the treble amount of all those damages listed from ¶293 through ¶299 as authorized by SDCL § 16-18-28.

319.    Mrs. Chute, pursuant to 42 U.S.C. § 1983, demands payment from Secretary, Marcia Hultman, for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(2) and (3)) for the following amount of damages, and special damages authorized by SDCL § 20-10-1.

1)  For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs.

2)  For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3)  For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4)  For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that

amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

## SPECIAL DAMAGES

320.    Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last two years of her life totaling $352,284.89.

321.    Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

322.    Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

323.    Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

324.    Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

325.    Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

## STATEMENT OF CLAIM No. 12

## Against DEFENDANTS

Justice David Gilbertson, in his official capacity, and individually as an attorney

Justice Steven L. Zinter, in his official capacity, and individually as an attorney

Justice Glen A. Severson, in his official capacity, and individually as an attorney

Justice Lori S. Wilbur, in her official capacity, and individually as an attorney

Justice Janine M. Kern, in her official capacity, and individually as an attorney

and Five Unknown South Dakota Supreme Court Law Clerks/Attorneys, in their official capacity and individually as attorneys

326.    The above named Defendants will be referred to as the 5 SDSC Justices and their 5 Law Clerk/attorneys.

327.    All paragraphs above are incorporated herein by this reference.

328.    Again, Mr. Chute apologizes for the following lengthy excerpt from his Petition for a

Writ of Certiorari to the U.S. Supreme Court:

> Mr. Chute then timely filed a Notice of Appeal, dated May 26, 2015 (AI 286) to
> the South Dakota Supreme Court (S.D. Sup. Ct.), and attached his Motion to Waive
> Filing Fees and Costs, and, Affidavit of Indigency (AI 310).

> The Seventh Judicial Circuit Court issued it's "Oder Waiving Filing Fees, Costs,
> and Bond" on June 1, 2015 (AI 316).

> The S.D. Sup. Ct. issued it's "Order to Show Cause" (Case #27466), dated June
> 15, 2015, stating in part:

> "Gary L. Chute, acting as personal representative of the Estate of Donna M.
> Chute, filed, *pro se*, a notice of appeal in the above-entitled matter. The name Gary L.
> Chute does not appear on the roll of persons admitted to practice law maintained by the
> Clerk of this Court. *See* SDCL 16-16-20. In *Smith v. Rustic Home Builders, LLC*, 2013
> S.D. 9, 826 N.W. 2d 357, this Court dismissed an appeal filed by the non-lawyer manager
> of a limited liability corporation because the limited liability corporation had to be
> represented by a licensed attorney. Other courts have reached similar holdings regarding
> pro se representation of an Estate by a non-lawyer. *See, e. g. Davenport v. Lee*, 72
> S.W.3d 85 (Ark. 2002) (holding that filing of pro se complaint by administrators of estate
> constituted the unauthorized practice of law and dismissing action as a nullity).
> Therefore, it is:
> ORDERED that appellant show cause on or before June 29, 2015, why the appeal
> should not be dismissed on the ground that the Estate is not represented by a licensed
> attorney...."

> Mr. Chute filed his "Appellant's Showing of Cause" on June 24, 2015. Thereafter,
> the S.D. Sup. Ct. issued its "Order Directing Appearance by Counsel" dated August 7,
> 2015, stating in part:

> "...the Court having considered the showing and response and being fully advised
> in the premises, now, therefore, it is
> ORDERED that a notice of appearance shall be filed by counsel in the above
> referenced appeal no later than August 27, 2015, or the appeal shall be dismissed

> Mr. Chute filed his "Appellant's Motion for Clarification, and Petition for
> Rehearing dated August 17, 2015, citing his Affidavit of Indigency and explaining that it
> stated in part:

> "2. Attached hereto is a copy of the Estate's bank account balance of $48.39, that
> reflects an additional $20.00 deposit made by myself, after the bank contacted me and

78

informed me that the account had gone dormant after one year of inactivity, and that I needed to make a small additional deposit to keep the account open.

"5. **I was also Donna's sole beneficiary.** Her estate amounted to little of nothing. We lived in a mobile home that we paid $5,000.00 for, and had homesteaded (where I still reside), and had a 2000 Chevy S-10 Blazer, and a 1982 Ford 26 ft. motorhome. Donna was diagnosed with metastatic (stage 4-terminal) breast cancer in June of 2011 and given two years to live. She didn't own much, but gave away her personal belongings to her daughter and sister during those two years. There was nothing left to inventory when she died July 17, 2013. She left nothing behind in cash, stocks, bonds, or anything of value.

7.....Gary Chute...now receives $1,643.90 a month in Social Security Disability Benefits, before they deduct $104.90 for Medicare. I have no other income, and am still disabled."

Mr. Chute asked the S.D. Sup. Ct. two very important questions in his Appellant's Motion for Clarification:

"Or surely, the South Dakota Supreme Court doesn't actually think that Gary can hire an attorney for the $28.39 in the Estate's bank account?

And surely, the South Dakota Supreme Court has not just ordered (SC Order) the Social Security Disability Benefits of Gary Chute, to somehow be subjected to execution, levy, attachment, garnishment, or other legal process to pay for an attorney; in violation of 42 U.S.C. § 407 (Assignment of benefits--(a) In general--The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.)?"

The S.D. Sup. Ct. refused to answer those questions, or respond at all, and issued it's "Order Denying Appellant's Motion for Clarification and Petition for Rehearing" dated September 11, 2015, along with its "Order Dismissing Appeal", dated September 11, 2015.

329.    Mr. Chute doesn't like to be taken advantage of because he is disabled, almost 65 years old, only has a 10th grade education, dropped out of high school in 1967, and has no GED. Nobody has to tell me that I don't know what I'm doing, or how bad I am at it. And I don't expect to be treated fairly, but I do expect to be treated with honesty, by attorneys and judges.

330.    All of the 5 SDSC Justices and their 5 Law Clerk/attorneys have practiced deceit and collusion against Mr. Chute; have made fraudulent misrepresentations; they have discriminated

against Mr. Chute because he is disabled, denying him access to the Courts, in violation of the

American with Disabilities Act (ADA); and conspired and colluded to unlawfully subject

Mr. Chute's Social Security Disability Insurance (SSDI) benefits to "other legal process."

331.    Unlike Mr. Chute, all of the 5 SDSC Justices and their 5 Law Clerk/attorneys finished

high school, college, and law school; where Mr. Chute believes every one of them probably had

to take a class on "Basic Legal Research", such as "Fundamental Legal Skills" at the University

of South Dakota (Listed as LAW 707 in the course catalog), where, as Mr. Chute just read, four

of the 5 SDSC Justices went to school. It is described as:

> Description: Students develop fundamental writing, researching, and analytical skills
> during the first semester. Students learn to research and synthesize legal authorities;
> organize research; analyze statutory, common-law, and other authorities; predict
> outcomes on various legal issues through a series of written assignments; and
> communicate those outcomes to legal and non-legal audiences. The first semester
> assignments will include multiple drafts of office memoranda and client correspondence.
> *Research instruction includes* print and *computerized resources*. (emphasis added)

332.    The SD Sup. Ct. fraudulently concealed and misrepresented the facts in its "Order to

Show Cause" by stating that:

> Other courts have reached similar holdings regarding pro se representation of an Estate
> by a non-lawyer. *See, e. g. Davenport v. Lee*, 72 S.W.3d 85 (Ark. 2002) (holding that
> filing of pro se complaint by administrators of estate constituted the unauthorized practice
> of law and dismissing action as a nullity).

333.    None, not one, of the 5 SDSC Justices or one of their 5 Law Clerk/attorneys, who

researched "pro se representation of an Estate" in South Dakota, or the 8th Circuit Court of

Appeals, on LexisNexis (our State provided legal research system) came up with the same

similar holdings that Mr. Chute came up with; Jones v. Correctional Medical Services, Inc., 401

F.3d 950 (8th Cir. 2005) which explained at length, that the Personal Representative of an Estate,

who was the sole beneficiary (as Mr. Chute is) with no creditors, could represent the Estate, and

even cited Davenport :

The district court dismissed, applying Arkansas law on survival actions, which prohibits "a person who is not a licensed attorney and who is acting as an administrator, executor or guardian [from] practic[ing] law in matters relating to his trusteeship on the theory that he is practicing for himself." Davenport v. Lee, 72 S.W.3d 85, 90 (Ark. 2002), quoting Arkansas Bar Ass'n v. Union Nat'l Bank of Little Rock, 273 S.W.2d 408, 410 (Ark. 1954)

28 U.S.C. § 1654 protects a party's right to "plead and conduct their own cases personally or by counsel," but subjects the pleading and conduct to the rules of federal courts. See Carr Enters., Inc. v. United States, 698 F.2d 952, 953 (8th Cir. 1983). A federal court has "inherent power to oversee attorneys" who appear before it. McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1215 (8th Cir. 1984), overruled on other grounds by Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 167 n.1 (1989)

In this case, Adrian Jones is not the only beneficiary/creditor of Dennis Jones's estate. Thus, as a non-attorney, Adrian Jones may not engage in the practice of law on behalf of others. See Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir. 1996); Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994); United States v. Van Stelton, 988 F.2d 70, 70 (8th Cir. 1993).

....Where a party not licensed to practice law in this state attempts to represent the interests of others by submitting himself or herself to jurisdiction of a court, those actions such as the filing of pleadings, are rendered a nullity.... Davenport, 72 S.W.3d at 94.

334. The 5 SDSC Justices and their 5 Law Clerk/attorneys knew about Jones, and that other courts have ruled the same as the 8th Circuit; in Bass v. Leatherwood, 788 F.3d 228, 230 (6th Cir. 2015) (holding that "the sole beneficiary of an estate without creditors may represent the estate pro se"); and in Guest v. Hansen, 603 F.3d 15, 17 (2d Cir. 2010) ("[A]n administrator can proceed pro se where an estate has neither creditors nor beneficiaries other than the administrator.").

335. Even Jones reiterated that 28 U.S.C. § 1654 protects a party's right to "plead and conduct their own cases personally or by counsel,"

336. The SD Sup. Ct. knew that Mr. Chute was representing himself and failed to state or explain in their Decisions, the names of any other persons who rights were being squandered by Mr. Chute representing them, because there wasn't anybody else.

337.    The South Dakota Supreme Court must obey 28 U.S.C. § 1654 and allow Mr. Chute due process under the14th amendment, (U.S. Const. amend. XIV, § 1), to represent himself, as he is the sole beneficiary of Mrs. Chute's Estate that has no creditors.

338.    The Decision in <u>Jones</u>, was issued by the United States Court of Appeals for the Eighth Circuit, and must be followed by the SD Sup. Ct. pursuant to South Dakota law, SDCL§ 1-1A-1; that declares the SD Sup. Ct.'s violations, and it's Order of Dismissal, as void.

339.    And the SD Sup. Ct. cannot enforce "any statute, rule, regulation, executive order, or office policy that is in violation of SDCL § 1-1A-1. (Enforcement of unconstitutional policies prohibited)" SDCL § 1-1A-2.

340.    The SD Sup. Ct. was required to protect Mr. Chute's rights to Due Process under the 14th Amendment by SDCL § 1-1A-3, which states:

> State officers to protect constitutional rights. Every state officer is directed to utilize the full force and authority of his office to resist the intrusion of such unlawful provisions and to protect the constitutional rights of the State of South Dakota and its individual citizens from the encroachments of such provisions.

341.    All 5 SDSC Justices willfully and intentionally failed to perform their official duty and protect the constitutional right of Mr. Chute to Due Process under the 14th Amendment. (U.S. Const. amend. XIV, § 1), and protect his right to represent himself pursuant to 28 U.S.C. § 1654 as described in SDCL § 3-16-1, thereby committing Class 2 misdemeanors.

342.    Mr. Chute timely filed a Notice of Appeal, dated May 26, 2015 to the South Dakota Supreme Court (S.D. Sup. Ct.), and attached his Motion to Waive Filing Fees and Costs, and, Affidavit of Indigency. The Seventh Judicial Circuit Court issued it's "Oder Waiving Filing Fees, Costs, and Bond" on June 1, 2015.

343.    Mr. Chute explained in his "Affidavit of Indigency" that: "Gary Chute...now receives $1,643.90 a month in Social Security Disability Benefits (SSDI), before they deduct $104.90 for

Medicare. I have no other income, and am still disabled."

344.    The SD Sup. Ct. ordered Mr. Chute, a disabled person, to hire an attorney to represent the

Estate of Mrs. Chute before the SD Sup. Ct., using his sole source of income, his Social Security

Disability Insurance (SSDI) benefits.

345.    The SD Sup. Ct. threaten to dismiss Mr. Chute's appeal if he did not hire an attorney.

346.    Mr. Chute refused to surrender control over, or to use, his SSDI benefits, to hire an

attorney.

347.    The SD Sup. Ct, carried out its threat and dismissed Mr. Chute's appeal.

348.    The following is an excerpt from Mr. Chute's Petition for a Writ of Certiorari to the U.S.

Supreme Court:

> "....almost 60 million Americans received Social Security Benefits in 2015. Those
> benefits are protected by 42 U.S.C. 407(a) that acts as an anti-attachment statute and
> provides that:
>
> The right of any person to any future payment under this subchapter shall not be
> transferable or assignable, at law or in equity, and none of the moneys paid or payable or
> rights existing under this subchapter shall be subject to execution, levy, attachment,
> garnishment, or other legal process, or to the operation of any bankruptcy or insolvency
> law.
>
> ...and the recipients right "to choose how to use the payments" as stated in the Social
> Security Administrator's Program Operations Manual System (POMS). POMS GN
> 02410.001(A) (entitled "Assignment of Benefits") (2014). "A beneficiary or recipient can
> use Sec. 207 or 1631(d)(1) of the Act as a personal defense if ordered to pay his or her
> payments to someone else, or if his or her payments are ordered to be taken by legal
> process." Id.
>
> This Court has already ruled that "When a state court order attaches to social security
> benefits in contravention of 42 U.S.C. 407(a), the attachment amounts to a conflict with
> federal law, and such a conflict is one "that the [s]tate cannot win." In re Lampart, 306
> Mich. App. 226, 229-251, 856 NW 2d 192 (Mich. 2014), citing Bennett v Arkansas, 485
> US 395, 397; 108 S Ct 1204; 99 L Ed 2d 455 (1988). The S.D. Sup. Ct. has not followed
> this Court's decision.

349.    The SD Sup. Ct. violated 42 U.S.C. 407(a) by ordering Mr. Chute to hire an attorney

using his SSDI benefits.

350.    All 5 SDSC Justices willfully and intentionally failed to perform their official duty and protect the constitutional right of Mr. Chute to Due Process under the 14th Amendment. (U.S. Const. amend. XIV, § 1), and equal protection of his rights under 42 U.S.C. 407(a), as described in SDCL § 3-16-1, thereby committing Class 2 misdemeanors.

351.    Justice David Gilbertson is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

352.    Justice Steven L. Zinter is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

353.    Justice Glen A. Severson is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend.

84

XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

354.    Justice Lori S. Wilbur is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

355.    Justice Janine M. Kern is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

356.    The 5 SDSC Justices and their 5 Law Clerk/attorneys conspired and colluded with each

other, as defined in 42 U.S.C. § 1985,  to discriminate against Mr. Chute, a disabled person, and

deny him access to the Court in violation of the 42 U.S.C. § 1983, § 1985, the ADA, the

Americans with Disabilities Act of 1990 (ADA), and SDCL § 20-13-24.

DEMAND FOR RELIEF No. 12

357.    The damages allowed to be recovered under 42 U.S.C. § 1983, § 1985, and § 1986 in this

case are *all damages,* from all defendants named in this section (The 5 SDSC Justices and their

(unknown) 5 Law Clerk/attorneys).

358.    Mr. Chute demands payment from each of the named Defendant South Dakota Supreme

Court Justices, in their official capacity, in this section, of all damages listed in this Complaint.

359.    Mr. Chute demands payment from each of the named Defendants, the 5 SDSC Justices

and their (unknown) 5 Law Clerk/attorneys, in their personal capacity as attorneys, liable under

SDCL § 16-18-28, all of the damages listed in this Complaint, in treble amount.

STATEMENT OF CLAIM No. 13

Against DEFENDANTS

Honorable John G. Roberts, Jr., Chief Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Anthony M. Kennedy, Associate Justice of the United States Supreme Court in

his official capacity, and individually as an attorney

Honorable Clarence Thomas, Associate Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Ruth Bader Ginsburg, Associate Justice of the United States Supreme Court, in

her official capacity, and individually as an attorney

Honorable Stephen G. Breyer, Associate Justice of the United States Supreme Court, in

86

his official capacity, and individually as an attorney

Honorable Samuel Anthony Alito, Jr., Associate Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Sonia Sotomayor, Associate Justice of the United States Supreme Court, in

her official capacity, and individually as an attorney

Honorable Elena Kagan, Associate Justice of the United States Supreme Court, in

her official capacity, and individually as an attorney

And at least Eight Unknown United States Supreme Court Law Clerks/Attorneys, in

their official capacity and individually as attorneys

360.    All paragraphs above are incorporated herein by this reference.

361.    After the above stated actions and violations of State and Federal law were made by the

SD Sup. Ct. Justices and their unknown law clerks/attorneys, Mr. Chute filed a Petition for a Writ

of Certiorari (PWC) with the U.S. Supreme Court (U.S. Sup. Ct.) as stated in ¶22 above:

> Mr. Chute then filed a Petition for a Writ of Certiorari in the United States Supreme Court
> along with a Motion for Leave to Proceed in *Forma Pauperis* on December 4, 2015,
> which was placed on the Court's Docket on December 9, 2015 as No. 15-7302. On
> February 29, 2016, the Petition was denied. Mr. Chute filed a Petition for Rehearing on
> March 21, 2016. On April 18, 2016, the Rehearing was denied.

362.    The eight unknown U.S. Sup. Ct. law clerk/attorneys; after having read Mr. Chute's

PWC, and having knowledge of the SD Sup. Ct.'s discrimination against Mr. Chute for being

disabled, and threats against Mr. Chute to dismiss his appeal if he didn't surrender and give up

his rights to entitlement to his SSDI benefits by having to hire and pay for an attorney with those

benefits as ordered by the SD Sup. Ct., and the fact that the Court carried out that threat, and the

SD Sup. Ct.'s denial of Mr. Chute's right of access to the Court, and the SD Sup. Ct.'s denial of

due process; each, conspired, as defined in 42 USC § 1985, and colluded with the SD Sup. Ct.

and their 5 law clerk/attorneys, and submitted verbally, or in written documents, recommendations to their prospective Justices, that the Court deny Mr. Chute's PWC.

363.   All eight of the named Defendant U.S. Sup. Ct. Justices, individually conspired, as defined in 42 USC § 1985, and colluded with each of their prospective unknown Defendant law clerk/attorneys, and with the 5 SD Sup. Ct. Justices and their 5 law clerk/attorneys; to discriminate against Mr. Chute because he is disabled, and deny his right to Due Process and of access to the Courts; and to subject his SSDI benefits to the power and control of the Courts in violation of 42 USC § 407(a); as stated in 42 USC § 1985 and §1986, by denying Mr. Chute's PWC and his Petition for Rehearing.

364.   Each one of the eight named Defendant U.S. Sup. Ct. Justices (conspirators) actions were motivated by an intent to deprive Mr. Chute, a disabled person, of the equal protection of the laws. (42 USC § 1985)

365.   Each one of the eight named Defendant U.S. Sup. Ct. Justices, had knowledge of the wrongs conspired to be committed and done by the SD Sup. Ct., and had the power and authority to prevent or aid in the preventing the commission of the same; but neglected and/or refused to do so, and those wrongs were thereafter committed by the SD Sup. Ct., thus injuring the Estate of Mrs. Chute and Mr. Chute. (42 U.S.C.A. § 1986)

366.   Each of the eight unknown U.S. Sup. Ct. law clerk/attorneys are liable to Mrs. Chute's Estate, and Mr. Chute for their injuries, for all damages caused by such wrongful acts, including treble damages for deceit under SDCL § 16-18-28, which such persons by reasonable diligence could have prevented. (42 U.S.C.A. § 1986)

367.   Each of the eight named Defendant U.S. Sup. Ct. Justices are liable to Mrs. Chute's Estate, and Mr. Chute for their injuries, for all damages caused by such wrongful acts, including

treble damages for deceit under SDCL § 16-18-28, which such persons (each one of the eight named Defendant U.S. Sup. Ct. Justices) by reasonable diligence could have prevented. (42 USC § 1986)

### DEMAND FOR RELIEF No. 13

368.   Mrs. Chute (by and thru the Estate) demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

369.   Mrs. Chute (by and thru the Estate) demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

370.   Mrs. Chute (by and thru the Estate) demands payment from each of the eight named Defendant U.S. Sup. Ct. Justices, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

371.   Mrs. Chute (by and thru the Estate) demands payment from each of the eight named Defendant U.S. Sup. Ct. Justices, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

372.   Mr. Chute demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

373.   Mr. Chute demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

374.   Mr. Chute demands payment from each of the eight named Defendant U.S. Sup. Ct.

Justices, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

375.   Mr. Chute demands payment from each of the eight named Defendant U.S. Sup. Ct.

Justices, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint;

trebled.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 15th day of July, 2016.

Gary L. Chute – *pro se*
1550 Seger Dr. Lot #116
Rapid City, SD 57701
(605) 484-8584