UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION



**FILED**

AUG 3 1 2016

CLERK

| | |
|---|---|
| Gary L. Chute, individually and personally, and as the Personal Representative of the Estate of Donna M. Chute | ) ) ) ) |
| Plaintiff | ) ) |
| vs. | ) ) |
| Nifty-Fifties, Inc. | ) ) |
| Markel Service, Incorporated | ) ) |
| Lynn, Jackson, Shultz & Lebrun, P.C. and an Unknown Supervising Attorney | ) ) ) |
| Catherine Sabers, Attorney | ) ) |
| Barbara Anderson Lewis, Attorney | ) ) |
| Marcia Hultman, South Dakota Secretary of Labor and Regulation, in her official capacity, and individually | ) ) ) ) |
| Donald W. Hageman, Administrative Law Judge for the South Dakota Department of Labor and Regulation, in his official capacity, and individually as an attorney | ) ) ) ) ) |
| Honorable Heidi L. Linngren, Seventh Judicial Circuit Court Judge, in her official capacity, and individually as an attorney | ) ) ) ) |
| Honorable David Gilbertson, South Dakota Supreme Court Chief Justice, in his official capacity and  individually as an attorney | ) ) ) ) |
| Honorable Steven L. Zinter, South Dakota Supreme Court Justice, in his official capacity, and individually as an attorney | ) ) ) ) |

CIV. 16-5064-JLV

FIRST AMENDED
COMPLAINT

1

Honorable Glen A. Severson, South Dakota
Supreme Court Justice, in his official capacity, and
individually as an attorney

Honorable Lori S. Wilbur, South Dakota Supreme
Court Justice, in her official capacity, and
individually as an attorney

Honorable Janine M. Kern, South Dakota Supreme
Court Justice, in her official capacity, and
individually as an attorney

and Five Unknown South Dakota Supreme Court
Law Clerks/Attorneys, in their official capacity and
individually as attorneys

Honorable John G. Roberts, Jr., Chief Justice of
the United States Supreme Court, in his official
capacity, and individually as an attorney

Honorable Anthony M. Kennedy, Associate Justice
of the United States Supreme Court, in his official
capacity, and individually as an attorney

Honorable Clarence Thomas, Associate Justice
of the United States Supreme Court, in his official
capacity, and individually as an attorney

Honorable Ruth Bader Ginsburg, Associate Justice
of the United States Supreme Court, in her official
capacity, and individually as an attorney

Honorable Stephen G. Breyer, Associate Justice
of the United States Supreme Court, in his official
capacity, and individually as an attorney

Honorable Samuel Anthony Alito, Jr., Associate
Justice of the United States Supreme Court, in his
official capacity, and individually as an attorney

Honorable Sonia Sotomayor, Associate Justice
of the United States Supreme Court, in her official
capacity, and individually as an attorney

Honorable Elena Kagan, Associate Justice of the

2

United States Supreme Court, in her official )
capacity, and individually as an attorney )
)
And at least Eight Unknown United States Supreme )
Court Law Clerks/Attorneys, in their official )
capacity and individually as attorneys )
)
U.S. District Court Chief Judge Jeffrey L. Viken, )
in his official capacity, and individually as )
an attorney )
)
                    Defendants )

---

## JURISDICTION

## and PRELIMINARY STATEMENT

1.      The amount in controversy exceeds $75,000, exclusive of interest and costs.

2.      The Plaintiff, Gary L. Chute (Mr. Chute), is a natural born citizen of the United States,

and a resident of Rapid City, in Pennington County, South Dakota, and represents himself

personally and individually, *pro se.*

3.      Mr. Chute, who is not an attorney, also represents (*pro se*) the Estate of his late wife,

Donna M. Chute (Mrs. Chute), as he is the sole beneficiary of the Estate that has no creditors.

*See* Jones ex rel Jones v. Correctional Medical Services, Inc., 401 F.3d 950 (8th Cir. 2005),

Guest v. Hansen, 603 F.3d 15, 19-21 (2d Cir. 2010), and Bass v. Leatherwood, 788 F.3d 228,

230–31 (6th Cir. 2015).

4.      Mrs. Chute fell at work on September 10, 2008, and sustained compensable injuries

under South Dakota Worker's Compensation laws. Mrs. Chute's Employer and place of

employment at that time, was Defendant Nifty-Fifties Inc. (Employer), a South Dakota

corporation located at 312 East Blvd. N., Rapid City, SD 57701; commonly known as Parkway

Restaurant and Casino.

3

5.      At the time of her injury, Employer carried worker's compensation insurance issued by First Comp Insurance Company, located in a different State, at Central Park Plaza South, 222 South 15th St. STE 1200, Omaha, NE 68102. On November 23, 2013, First Comp Insurance Company was merged into Defendant Markel Service, Incorporated (CA d/b/a Markel Insurance Services)" (Insurer), whose primary place of business and corporate headquarters is also located in a different State at: 4521 Highwoods Parkway, Glen Allen, VA 23060.

6.      This Court has jurisdiction over the Plaintiff and Insurer pursuant to 28 U.S.C. § 1332, and supplemental jurisdiction over the Employer pursuant to 28 U.S.C. § 1367.

7.      First Comp Insurance Company, on an unknown date, hired Defendant law firm; Lynn, Jackson, Shultz, & Lebrun, P.C., to represent them, and who have offices located at 909 St. Joseph Street, Rapid City, SD, and 141 N. Main Avenue, Sioux Falls, SD.

8.      Defendant attorney Catherine Sabers (attorney Ms. Sabers) of said law firm, who has an unknown supervising attorney (Unknown Defendant) filed a Notice of Appearance with the South Dakota Department of Labor and Regulation (Department) on July 22, 2009, representing the Insurer.

9.      Defendant attorney Barbara Anderson Lewis (attorney Ms. Lewis) of said law firm, who also has an unknown supervising attorney (Unknown Defendant), later filed a Notice of Appearance with the Department, also representing the Insurer.

10.     Plaintiff, Mr. Chute has numerous State causes of action against said law firm and attorneys, individually and personally, and acting as agents of the Insurer (Defendant Markel), making Defendant Markel vicariously liable, including claims for Deceit and Collusion pursuant to SDCL § 16-18-28; Wrongful Death pursuant to SDCL § 21-5-5; Fraud and Fraudulent Insurance Acts pursuant to SDCL § 58-4A-2; an action for personal injury pursuant to SDCL §

4

15-2-14, crimes and others. This Court has supplemental jurisdiction over Defendant law firm and attorneys pursuant to 28 U.S.C. § 1367.

11.     Approximately two months after Mrs. Chute fell at work in 2008, Mr. Chute filed for Social Security disability insurance benefits on November 8, 2008, and was denied for years.

12.     In a distant, but related Social Security Disability case (CIV. 11-5062-JLV) before this Court and the Honorable Chief Judge Jeffrey L. Viken, the Plaintiff, Mr. Chute prevailed and was found to be disabled in two separate Social Security Administrative Hearings (first on January 14, 2013, and secondly on September 9, 2014 (Docket 116-1)) after two separate Remands were issued by this Court.

13.     Mrs. Chute died on July 17, 2013, and her ongoing workers compensation case survived.

14.     On April 14, 2014, Mr. Chute was duly appointed as the Personal Representative of his wife's Estate in the Seventh Judicial Circuit Court (PRO: 14-13), Pennington County, Rapid City, SD, and issued Letters. The worker's compensation case (cause of action for "Bad Faith") survived Mrs. Chute's death and is brought by the personal representative (Mr. Chute) pursuant to SDCL § 15-4-1. Mr. Chute has standing to sue and be sued pursuant to SDCL § 29A-3-703(c); and is authorized to prosecute and defend all claims pursuant to SDCL § 29A-3-715(22).

15.     As the Personal Representative of Mrs. Chute's Estate, Mr. Chute was substituted as the "Party" in Mrs. Chute's workers compensation case, and responded (as ordered) to the Insurer's Motion for Partial Summary Judgment and Motion to Dismiss before the Department, but he lost. Mr. Chute then appealed to the Secretary of the Department, but lost again.

16.     Mr. Chute was denied due process by Defendant Administrative Law Judge (ALJ) Donald W. Hageman (ALJ Hageman), and Defendant the Secretary of the Department, Marcia Hultman (Secretary), pursuant to SDCL § 15-6-52(a). Under the Supremacy Clause of Art. VI,

5

State courts must follow federal law, and Federal trial judges have authority to review decisions of local governmental agencies when issues of federal or constitutional law are raised. (City of Chicago v. Int'l Coll. Of Surgeons, 91 F. 3d 981, reversed and remanded). Mr. Chute was denied due process under the 14th Amendment of the Constitution and brings this action against ALJ Hageman and Secretary Hultman pursuant to 42 U.S.C. § 1983, and SDCL § 1-26-26; also against ALJ Hageman for State violations pursuant to SDCL § 16-18-28 and others. This Court has jurisdiction and supplemental jurisdiction over these Defendants.

17.     Mr. Chute appealed the Department's decision to Seventh Judicial Circuit Court in Pennington County, Rapid City, SD, where the Honorable Judge Heidi Linngren (Judge Linngren) conspired and colluded with the Department, ALJ Hageman, the law firm, and attorneys, to deceive and deny Mr. Chute and the Estate due process under the 14th Amendment. Mr. Chute brings this action against Defendant Judge Linngren pursuant to 42 U.S.C. § 1983, and for State violations pursuant to SDCL § 16-18-28. This Court has jurisdiction.

18.     Mr. Chute then filed an appeal to the South Dakota Supreme Court (May 26, 2015), along with an Affidavit of Indigency (which was granted without any objections), explaining that he was disabled and that his sole source of income was his Social Security Disability Insurance (SSDI) benefits.

19.     The South Dakota Supreme Court ordered Mr. Chute to hire an attorney to represent the Estate, using his SSDI benefits to pay the attorney, or they threatened to dismiss the appeal if he did not.

20.     Mr. Chute refused to surrender control over his SSDI benefits and hire an attorney using those protected benefits. The South Dakota Supreme Court then carried out its threat and dismissed Mr. Chute's appeal.

6

21.     The named five South Dakota Supreme Court Justices (Defendants) and their attorney

law clerks (Unknown Defendants), conspired and colluded to deceive and discriminate against

Mr. Chute, a disabled person, denying him due process, access to the courts pursuant to the

Americans with Disabilities Act (ADA), and unlawfully subjecting his SSDI benefits to "other

legal process". Mr. Chute brings this action against Defendants, the five named South Dakota

Supreme Court Justices and their unknown attorney/law clerks (Defendants) pursuant to 42

U.S.C. § 1983, § 1985, § 1986, 42 U.S.C. § 12132,  42 U.S.C. § 12203(b), 42 U.S.C. 407 and

state law claims pursuant to SDCL § 16-18-28, SDCL § 20-13-24, SDCL § 20-13-26, SDCL § 1-

1A-1, § 1-1A-2, and § 1-1A-3, SDCL § 3-16-1, and others. This Court has jurisdiction and

supplemental jurisdiction over the Plaintiff these Defendants.

22.     Mr. Chute then filed a Petition for a Writ of Certiorari in the United States Supreme

Court along with a Motion for Leave to Proceed in *Forma Pauperis* on December 4, 2015, which

was placed on the Court's Docket on December 9, 2015 as No. 15-7302. On February 29, 2016,

the Petition was denied. Mr. Chute filed a Petition for Rehearing on March 21, 2016. On

April 18, 2016, the Rehearing was denied.

23.     All eight of the named Defendants, U.S. Supreme Court Justices, who are residents of a

different state, conspired and colluded with their attorney/law clerks (Unknown Defendants, who

are also residents of a different state) and the South Dakota Supreme Court Justices and their

attorney/law clerks (Unknown Defendants), to deprive Mr. Chute of his civil rights to due

process, access to the courts in violation of the ADA laws, and protection of his SSDI benefits

from other legal process. Mr. Chute brings this action against these Defendants pursuant to 42

U.S.C. § 1985, § 1986, § 1988, 42 U.S.C. § 12132 and state law claims pursuant to SDCL § 16-

18-28 and others. This Court has jurisdiction and supplemental jurisdiction over these
Defendants.

24.     Mr. Chute has exhausted all administrative procedures and remedies as of April 18, 2016.

## JURY TRIAL DEMAND

25.     Plaintiff hereby demands a jury trial on all issues.

## FACTS

26.     Nifty-Fifties Inc. (Employer-a Mom and Pop corporation owned and operated by husband
and wife, Burton and Carol Long (Mr. or Mrs. Long)) hired Mrs. Chute in August of 2001 to
work in their casino located at 312 East Blvd. N., Rapid City, SD. Mrs. Chute worked for
Employer until she was terminated in March of 2010.

27.     Mrs. Chute's job duties included: bending, lifting, squatting, reaching, walking, standing,
cleaning, vacuuming, and carrying bus tubs full of dishes weighing around 25-40 lbs. from the
casino, through the restaurant, into the kitchen. Mrs. Chute made change, paid winning lottery
tickets, served drinks, including coffee, tea, beer and wine coolers, and would get a waitress from
the restaurant to take orders from customers who sat at the counter in the casino to eat.

28.     Mrs. Chute was also given a key to the business, the alarm code, and the combination to
the safe on the premises where all the money was kept, and the occasional responsibility of
opening and/or closing the business as the owners requested.

29.     In June of 2007, Mrs. Chute was diagnosed with Breast cancer. She underwent treatment
including a left sided mastectomy.

30.     On September 10, 2008, around 7 pm in the evening, during her shift at work for
Employer, Mrs. Chute, then 62 years old, slipped and fell on a wet kitchen floor while carrying a
bus tub full of dishes, injuring, mainly, her back.

8

31.  Mrs. Chute's injuries arose out of and in the course of her employment.

32.  Mrs. Chute's Employer (Burton Long) had immediate knowledge of her work injury, as he was standing next to her when Mr. Chute informed him that he was taking Mrs. Chute to the emergency room of the hospital, immediately, to be checked out and treated.

33.  Mrs. Chute was given work restrictions by her family doctor, Dr. Weiland, on September 12, 2008, not to bend, lift, or squat, and was off work for approximately twelve weeks after her injury.

34.  Insurer paid some of Mrs. Chute's medical claims, but refused to pay others.

35.  Insurer never paid Mrs. Chute any weekly compensation for partial disability (SDCL § 62-4-5) while she was off work under work restrictions.

36.  As a direct result of Mrs. Chute being off work after her compensable work injury, and the Insurer refusing to pay the weekly workers compensation benefits due to her pursuant to SDCL § 62-4-5, Mr. and Mrs. Chute were forced to file a Chapter 7 Bankruptcy.

37.  After receiving notice of their bankruptcy filing, Mr. and Mrs. Chute were notified by Rapid City Medical Center (RCMC), in a letter dated September 30, 2008, (where Mrs. Chute's cancer doctor practiced), that from now on they would be on a "cash basis" and have to pay in full before any further treatments.

38.  Without payment by the Insurer of the workers compensation benefits she was entitled to, Mrs. Chute did not have the $285.00 up front to go back to her cancer doctor for treatment.

39.  In June of 2011, Mrs. Chute turned 65 years old and got Medicare.

40.  With Medicare insurance, Mrs. Chute returned to her cancer doctor, Dr. Godbe at RCMC. Dr. Godbe's medical notes dated June 9, 2011 states in part:

9

"The patient is here for a followup. I last saw her 4 years ago when I did her breast cancer treatment. She has not followed up with me at all in that interim. She told me that she was supposed to follow up with me in 3 months and then she made it back 4 years later."

After testing, Dr. Godbe referred Mrs. Chute to Dr. Tenglin, an oncologist, at Regional

Cancer Care Institute.

41.     Dr. Tenglin sent Mr. and Mrs. Chute a letter, dated August 15, 2011, describing

Mrs. Chute's condition, stating in part:

"Donna Chute is currently a patient of mine...with a diagnosis of metastatic [stage 4] Breast cancer. Her disease is considered terminal. Patients with metastatic Breast cancer have an average survival of two years."

42.     Mrs. Chute died two years later on July 17, 2013, from the prolonged need for treatment

of her pre-existing condition (Breast cancer), that combined with her work injury

(SDCL § 62-1-1(7)(b)), caused by the direct result of the Insurer's "bad faith" refusal to pay

compensation for partial disability according to South Dakota worker's compensation laws and

the terms of the Insurance Policy.

43.     While she was still alive, Mrs. Chute filed an Amended Petition for Hearing (Amended

Petition) with the South Dakota Department of Labor (Department), on January 7, 2011 and

represented herself in her worker's compensation case (HF No. 16, 2009/10).

STATEMENT OF CLAIM AGAINST INSURER: No. 1

44.     All paragraphs above are incorporated herein by this reference.

45.     Defendant Employer secured payment of workers compensation benefits to its employees

in accordance with SDCL § 62-5-2, by insuring that compensation through Insurer, Defendant

Markel (previously FirstComp), who issued a Worker's Compensation Insurance Contract (WC

Insurance Contract), Number: WC0077648-01.

10

46. SDCL § 58-1-2(10) defines an "Insurer" as "every person engaged as indemnitor, surety,

or contractor in the business of entering into *contracts* of insurance". (emphasis added)

Defendant Markel is an "Insurer".

47. SDCL § 58-1-2(8) defines "Insurance" as a *contract*. (emphasis added)

48. The WC Insurance Contract states in Part One, section B, on page 5: "We will pay

promptly when due the benefits required of you [Employer] by the workers compensation law."

49. The WC Insurance Contract also states in Part One, section H, at number 3, on page 6:

"We are directly and primarily liable to any person entitled to the benefits payable by this
insurance. Those persons may enforce our duties; so may an agency authorized by law.
Enforcement may be against us or against you and us."

50. Insurer owed the injured employee, Mrs. Chute, a duty of "Good Faith and Fair Dealing"

in investigating and promptly paying claims, for compensable injuries, for benefits that were due

to her under the WC Insurance Contract. See *Duty of Good Faith and Fair Dealing*

(Restatement, Second, Contracts § 205).

51. South Dakota Workers Compensation law mandates that the Insurer, after filing the "First

Report of Injury" with the Department, investigate Mrs. Chute's claim.

"The insurer....shall make an investigation of the claim and shall notify the injured
employee and the department, in writing, within twenty days from its receipt of the
report [first report of injury], if it denies coverage in whole or in part."

*See* SDCL § 62-6-3.

52. The Insurer did not notify Mrs. Chute, or the Department, in writing, that the Insurer was

denying coverage in whole or in part, as required by SDCL § 62-6-3, or that Insurer was refusing

to pay compensation for partial disability pursuant to SDCL § 62-4-5. Refusing to investigate

and concealing this written notification was fraud, fraudulent concealment, and deceit, and

induced Mr. and Mrs. Chute to file bankruptcy to their detriment.

11

53. Insurer was obligated to investigate and notify Mrs. Chute in writing of their denial of her claim in part, or in full, pursuant to SDCL § 62-6-3. Insurer breached that noncontractual obligation, and fraudulently concealed it, causing Mr. and Mrs. Chute damages, including bankruptcy and wrongful death. (*See* SDCL § 21-3-1)

54. Mrs. Chute never discovered Insurer's fraudulent concealment.

55. Mr. Chute has just discovered the Insurer's fraudulent concealment on July 7, 2016.

56. All statute of limitations will be tolled as of today's date, July 7, 2016 as a result of Insurer's fraudulent concealment. *See* SDCL § 15-2-3.

57. The South Dakota Supreme Court has repeated the principle that insurance companies act in bad faith when they fail to fairly and adequately investigate insurance claims. In Walz v. Fireman's Fund Ins. Co., 1996 SD 135, the Court held that an insurer had a duty to review *current case law* as well as facts. (emphasis added)

58. Under SDCL § 62-4-5; Compensation for partial disability states in part;

"If, after an injury has been sustained, the employee as a result thereof becomes *partially incapacitated* from pursuing the employee's usual and customary line of employment...the employee shall receive compensation." (emphasis added)

59. The term "partially incapacitated" in SDCL § 62-4-5 was addressed in the Departments Declaratory Rulings; Re: SDCL 62-4-5 dated August 2, 2001, which stated in part:

"In the hypothetical situation, as there was a difference between the employee's pre-injury and post-injury average earnings, temporary partial disability benefits would be owed."; and in

Re: SDCL §§ 62-4-2, 62-4-5 dated July 7, 2005, it declared:

"It is therefore the ruling of the Department of Labor that Worker would meet the waiting period in SDCL § 62-4-2 when she is on medical restrictions and is not earning her pre-injury wages for seven consecutive days."

60. The Departments own website states:

12

"If the employer is unable to accommodate an employee's light-duty restrictions and does not offer work to the employee, he or she will still receive temporary partial disability benefits, but at a rate equal to the amount received for temporary total disability." See http://dlr.sd.gov/workerscomp/returningtowork.aspx

61. The Departments website also again notes the earnings rule:

"If the employee is released to part-time or modified work and is earning less than what he or she was earning at the time of the injury, the employee may be entitled to temporary partial disability benefits. Temporary partial disability benefits are calculated as half the difference between the average amount the employee was earning before the injury and the average amount the employee is earning or is able to earn in some suitable employment after the injury." Id.

62. The Insurer did not review the current case law available as required, as in Kelsheimer v.

Gateway and St. Paul Companies, South Dakota Department of Labor and Regulation, HF 103,

2003/04, August 1, 2006, where the Department cited that Hendrix v. Graham Tire Co., 94 SD

654, 520 NW2d 876 provided a test for entitlement to temporary partial disability benefits under

SDCL § 62-4-5:

"Under this statute, to receive temporary partial benefits, an employee must establish:

1. That he is partially incapacitated from pursuing his usual and customary line of employment due to his work related injury; or

2. That he has been released by his physician from temporary total disability and has not yet been given a permanent partial disability; and

3. That his present average earned income or that amount he is capable of earning at some suitable employment or business is less than what his average earned income was prior to his disability."

63. Part 3. of the test in Hendrix, along with the statements on the Departments website, two

Declaratory Rulings from the Department, and SDCL § 62-4-5, all require that in order to

determine whether or not the injured employee is entitled to compensation for partial disability

under SDCL § 62-4-5 based on her wages, the Insurer is required to monitor the injured

employees weekly wages, after the injury, to see if the injured employee is earning less than she

13

did before the injury. Not just to monitor for one or two weeks, but to continuously monitor until the claim is settled, as compensation for partial disability under SDCL § 62-4-5 is a weekly benefit.

64.     Insurer's case file notes, dated 03/14/2009, more than six (6) months after Mrs. Chute's work injury states in part:

> "In the next 45 days,
>
> 1. Follow up with Insured for a wage chart for the 52 weeks prior to this event, as well as *all gross wages from the date of event until 02/24/09....* (emphasis added)
>
> 3. When we get the wage information, address reserves and see if we owe TTD. [Temporary Total Disability]

65.     Insurer's case file notes, dated 03/18/2009, more than six (6) months after Mrs. Chute's work injury state: "From Insured, request 52 week gross wages PRIOR to 09/10/2008. Also request a wage statement of all GROSS wages from 09/11/2008 thru 02/23/2009."

66.     The "wage chart" is actually a "Statement of Weekly Earnings" form to be downloaded from the Department at https://dlr.sd.gov/workerscomp/forms/statementofweeklyearnings.pdf.

67.     Insurer's case file notes also show, in the entry dated 03/14/2009; that the Insurer knew that Mrs. Chute was under work restrictions resulting from her work injury; that the Employer did not offer Mrs. Chute any work within those restrictions until February 24, 2009; and, that Insurer had no idea what Mrs. Chute's pre-injury and post injury weekly earnings were:

> "....but, *Insured* [Employer] *did not make a job offer within restrictions until 02/24/09. We do not have 52 week wage chart nor work payment since date of event.* Insured advises IW [injured worker] is paid $10.00 per hour on a normally 40 hour a week work schedule. Until documentation verifys AWW [average weekly wage] we are going with $400.00 a week. 2/3 of this is $266.66, however the State minimum TTD [temporary total disability] rate in effect at the time of this event was $299.00. (emphasis added)

14

68.    Insurer's case file notes, dated 03/30/2009, almost seven (7) months after Mrs. Chute's

work injury, shows Insurer's employee, Carol Von Eschen, sending a fax to the Employer that

stated in part:

"....in order to calculate any possible disability benefits that may be due, FirstComp will
need a listing of Ms. Chute's GROSS wages for the 52 weeks prior to her 09/10/08, date
of injury....please fax Ms. Chute's gross wages for the 52 week period of 09/10/07 thru
09/09/08 to me."

69.    "All compensation provided for in §§ 62-4-3 to 62-4-7, inclusive, shall be paid in

installments at the same intervals at which the wages or earnings of the employee were paid at

the time of the injury." SDCL § 62-4-10. Mrs. Chute was paid every two weeks.

70.    "Failure to make any payment of workers' compensation benefits pursuant to § 62-4-10

within ten days of the date on which the payment is due shall result in an automatic penalty equal

to ten percent of the unpaid amount. Nothing herein precludes any other remedy available to the

claimant." SDCL § 62-4-10.1.

71.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in

"Bad Faith" by failing to investigate, and denying to pay workers compensation benefits due to

Mrs. Chute in accordance with the WC Insurance Contract and SDCL § 62-4-5, without a

reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to

deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial.

72.    As a result, Mr. and Mrs. Chute both suffered damages and special damages, for injuries,

including out-of-pocket costs in the workers compensation action, non-payment of benefits under

SDCL § 62-4-5, pain and suffering, emotional distress, medical and health care costs from

doctors, hospitals, state and federal agencies, and pharmacies, all bankruptcy creditors' claims

and bills, and costs including lost property of Mrs. Chute, wrongful death, funeral, burial, and

headstone costs.

15

73.     Both, Mr. and Mrs. Chute claim, and are also entitled to, punitive damages, pursuant to
SDCL § 21-3-2, as the breach of Insurer's obligations arose from those obligations stated in
South Dakota Workers Compensation Laws (Title 62).

## DEMAND FOR RELIEF AGAINST INSURER, No. 1

### DAMAGES

74.     Mrs. Chute (by and thru the Estate) claims that Insurer owes, and demands payment of,
all workers compensation benefits due under SDCL § 62-4-5, at the rate of $299.00 (the agreed
upon state minimum) per week from September 10, 2008 thru February 24, 2009 (minus a
previously paid amount of $2,846.48) plus the 10% penalty and 12% interest per state statute.

75.     Mrs. Chute, who was 62 years old on the date of her injury and had a normal life
expectancy of 21.5 years more, according to the Workers Compensation Life Expectancy Table,
demands payment from Insurer for causing wrongful death, of damages in the amount of five (5)
million dollars for each of the 21.5 years wrongfully taken from her by the Insurer, for a total of
$107,500,000.00. (One hundred and seven million, five hundred thousand dollars)

76.     Mrs. Chute (by and thru the Estate) demands punitive damages from the Insurer for
causing wrongful death, in the amount of ten (10) times the amount of compensatory damages,
for a total of $1,075,000,000.00. (One billion seventy five million dollars)

77.     Mr. Chute, who was 57 years old on the date of Mrs. Chute's injury, and had a normal
life expectancy of 21.7 years more at that time (a difference of only .2), demands compensatory
damages and punitive damages for the wrongful death of his wife from Insurer, in the same
amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty
two million, five hundred thousand dollars).

### SPECIAL DAMAGES

16

78.     Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last
two years of her life totaling $352,284.89.

79.     Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

80.     Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to
Medicaid of South Dakota for $7,167.79.

81.     Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

82.     Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

83.     Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and

Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

## STATEMENT OF CLAIM AGAINST INSURER: No. 2

## WRONGFUL DEATH, DECEIT, FRAUD, FRAULENT CONCEALMENT

### and INSURANCE FRAUD

84.     All paragraphs above are incorporated herein by this reference.

85.     Insurer's case file notes, sixteen (16) days after Mrs. Chute's date of injury, shows

statements made by Insurer's employee, Nicole Hinsley, to Mrs. Chute on September 26, 2008:

> 09/26/2008     Initial Contact: Clmt [Claimant] at home.
> Clmt did notify Burt...The ER [Emergency Room] did not take her off
> work.
>
> Clmt went to Rapid City Medical Center. Dr. Wieland, family MD....*He
> did not give her an off work note. I explained that we and her employer
> both will need those in order to have a compensable injury.* (emphasis
> added)
>
> Clmt has had breast Cancer in 2007 that she is in remission for.

And further statements made by Insurer's employee, Nicole Hinsley, to Mrs. Chute on

November 6, 2008, almost two months after her injury, shows:

17

11/06/2008   *I advised her again that since the Dr is not taking her off work that we*
*cannot pay her, she understands* (emphasis added) [referencing no weekly
payments of compensation for partial disability pursuant to SDCL § 62-4-
5; and Mrs. Chute being deceived into changing her position to her
detriment, from demanding payment of weekly benefits, to giving up on
them.]

86.   Whether or not an "injury" is compensable under South Dakota's Workers Compensation

Laws has been described and defined by numerous *current case laws* (*See* Collins v. Avera

McKennan Hospital, August 2014, HF NO. 152, 2011/12, South Dakota Department of Labor,

Workers Compensation). In Collins the court stated at length: "The causation statute, SDCL §62-

1-1(7), defines injury...." and "the South Dakota Supreme Court has interpreted this statute on

numerous occasions. Recently, the Supreme Court wrote:

> In a workers' compensation dispute, a claimant must prove the causation elements of
> SDCL 62-1-1(7) by a preponderance of the evidence. Grauel v. S.D. Sch. of Mines &
> Tech., 2000 S.D. 145, ¶11, 619 N.W.2d 260, 263. The first element requires proof that
> the employee sustained an "injury" *arising out of and in the course of the employment*.
> SDCL 62-1-1(7); Bender v. Dakota Resorts Mgmt. Group, Inc., 2005 S.D. 81, ¶7, 700
> Page 6 of 8 N.W.2d 739, 742. The proof necessary for the second element ("condition")
> is dependent on whether the worker also suffered from a preexisting condition.... See
> SDCL 62-1-1(7).... In cases involving a preexisting disease or condition, the claimant
> must prove that the employment or employment related injury is and remains a "major
> contributing cause of the disability, impairment, or *need for treatment*." SDCL 62-1-
> 1(7)(b); see also Grauel, 2000 S.D. 145, ¶9, 619 N.W.2d at 263 (citing SDCL 62-1-
> 1(7)(a)-(b))." (emphasis added)

87.   With full knowledge of Mrs. Chute's preexisting Breast Cancer (disease), the statements

made by Insurer to Mrs. Chute, that without an "off work note" from her doctor, her injury

would not be compensable; and she could not be paid weekly compensation for partial disability

pursuant to SDCL § 62-4-5, was deceit, as defined in SDCL § 20-10-2(2). (*The assertion, as a*

*fact, of that which is not true, by one who has no reasonable ground for believing it to be true*).

88.   Insurer knowingly and with intent to deceive, presented the above statements to

18

Mrs. Chute in telephone calls, on the above referenced dates, knowing that the statements contained false, incomplete and misleading information concerning the facts required to be proven to have a compensable injury, or be entitled to payment of compensation for partial disability pursuant to SDCL § 62-4-5.

89.    Insurer's statements were fraudulent insurance acts as defined in SDCL § 58-4A-2(6), constituting criminal activities, and because the amount involved was over $1,000.00, Insurer's fraudulent insurance acts were felonies. (Felony Insurance Fraud), and caused damages to Mr. and Mrs. Chute.

90.    Mr. and Mrs. Chute are both victims of the Insurer's criminal activities and are owed and entitled to, pecuniary damages from the Insurer.

91.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract and SDCL § 62-4-5, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial.

92.    Shown on the Department's website are the "Insurer Requirements", stating in part:

> "All workers' compensation insurers (including self-insured employers) in South Dakota are required to provide case management services in their policies. Therefore, workers' compensation insurance companies are required to contract with one or more case management plans." (*See* http://www.sdjobs.org/workerscomp/casemanagement.aspx)

93.    Insurer's WC Insurance Contract carries a South Dakota Managed Care Endorsement on page 21, which states in part:

> "This endorsement provides for the payment of benefits under the workers compensation law of South Dakota *to provide medical services and health care to injured workers for compensable injuries and diseases by means of a managed care program* which meets the requirements established by the Department of Labor." (emphasis added)

94.     The requirements of Case Management Plans for Workers Compensation established by

the Department, are listed in Chapter 47:03:04 of the Administrative Rules of South Dakota

(ARSD). And ARSD 47:03:04:04(2) requires that:

> "The employer must notify the case management plan of any compensable injury or
> disability that requires medical treatment other than minor first aid within *24 hours after*
> *obtaining knowledge of the injury* or disability." (emphasis added)

95.     And Insurer's WC Insurance Contract states in Part One, section H, at number 1, page 6:

"As between an injured worker and us, we have notice of the injury when you have notice."

96.     Then, Insurer had notice of Mrs. Chute's work injury immediately on September 10,

2008, and was then required to notify their Case Management Plan within 24 hours.

97.     Insurer intentionally, maliciously, fraudulently, and without a reasonable basis, refused

and failed to notify their Case Management Plan within 24 hours of Mrs. Chute's injury

98.     On December 2, 2008, (almost 90 days after Mrs. Chute's work injury occurred) in a four

(4) page "Initial Report" to the Insurer, Karen Bielmaier, Case Manager (CM) for Insurer's Case

Management Plan, administered by Alaris (ARSD 47:03:04), reported under "Case Notes" that

the Case Management Plan wasn't notified of Mrs. Chute's work injury, by the Insurer, until

November 10, 2008; which was 60 days after Mrs. Chute's injury. The report states in part:

| 11/10/2008 | E-Mails & Faxes: Insurer<br>Receipt of case management referral; confirmed initial CM plan. |
| --- | --- |
| 11/10/2008 | File Setup.<br>Obtained, reviewed medical records as received |
| 11/11/2008 | Phone Call: Client<br>Initial call to client; explained CM role....Plan to contact client again to<br>arrange meeting to perform complete initial interview. |
| 11/17/2008 | Phone Call: Client<br>Call from Client; very upset that no one has contacted her to let her know<br>what is going on. Stated she has a Rx for pain meds which she cannot<br>afford to pay for, $46.00, and is in significant pain, "getting worse". |

20

11/17/2008     Phone Call: Client
Returned call to client; advised that CM left a message for insurer
regarding Rx coverage....recommended calling Dr. Wisniewski's office for
possible samples of Darvocet.

11/20/2008     Phone Call: Client
Call to client...Confirmed plan to meet....to perform initial interview,
obtain further treatment and RTW [Return To Work] plan....

12/1/2008     Phone call: Employers

Spoke with Burt Long, employer, Carol his wife was not available.
Discussed possible work accommodations with the current limitations as
per Dr. Wisniewski. Main concern is not the 10# lifting capability rather
the bending. The client's *normal duties* is as casino cashier, cashing out
video lottery winnings but also serving beverages to customers, bending
into a chest type cooler. Burt stated that *if the client cannot do her usual
duties, she may not be able to come to work right now.* Before he made
any decisions, Burt will discuss with his wife Carol tomorrow what other
possible accommodations can be made for this client within the current
capabilities. Burt requested a copy of the current work release which CM
will forward. Plan to communicate again with ER [employer] tomorrow.
(emphasis added)

99.     Additionally, on November 10, 2008, Insurer's employee, Julie Beckner stated:

11/10/2008     Rec call from Lisa at....w/Dr's office. Claimant is in today for MRI. Adv
that we are waiting for info from physician and w/o that we are *not
guaranteeing payment on anything*. Not denying her need for care – just
not guaranteeing payment...(emphasis added)

100.     Even the Insurer's own expert witness, Thomas G. Gratzer, M.D., noted in his report,

almost eleven (11) months after Mrs. Chute's injury, dated 10/08/2009, that:

"Unfortunately, it appeared that there had been a delay in thorough evaluation, and not
until December 2008 did she [Mrs. Chute] have x-rays and an MRI, leading to an
effective procedure. This allowed for pain relief so that she could return to work and have
an income."

101.     Not only did Insurer refuse "to provide medical services and health care to injured

workers for compensable injuries and diseases *by means of a managed care program*" (See ¶89

above), according to the South Dakota Managed Care Endorsement, shown on page 21 of their

21

own WC Insurance Contract; the Insurer was not "*guaranteeing payment on anything.*" (See ¶89 above).

102. Insurer's fraudulent concealment of intentionally refusing, or failure, to notify the Case Management Plan (CMP) within 24 hours of the notice of injury, denied Mrs. Chute any knowledge of, or rights under the CMP, to immediately receive proper medical care, diagnosis and treatment, and caused her damages.

103. Insurer's fraudulent concealment of Mrs. Chute's injury to the CMP denied proper medical care, diagnosis, and discovery that her Breast cancer has metastasized into her bones, including her pelvis and spine, combining with her work injury, to cause disability and prolong the need for treatment, until it was too late to be treated, and caused her death.

104. Mrs. Chute never discovered Insurer's fraudulent concealment to its CMP.

105. Mr. Chute has just discovered the Insurer's fraudulent concealment of Mrs. Chute's injuries from the CMP. Today's date is July 7, 2016.

106. All statute of limitations will be tolled as of today's date, July 7, 2016 as a result of Insurer's fraudulent concealment. *See* SDCL § 15-2-3.

## DEMAND FOR RELIEF AGAINST INSURER, No. 2

### DAMAGES

107. Because the Insurer's statements (¶ 85 above) were fraudulent insurance acts constituting criminal activities, and because the amount involved was over $1,000.00, Insurer's fraudulent insurance acts were Class 4 felonies; Mrs. Chute (by and thru the Estate) claims that Insurer owes, and demands payment of, the statutory fines for Class 4 felonies of twenty thousand dollars each, or $40,000.00.

108. Mr. and Mrs. Chute are both victims of the Insurer's fraudulent insurance acts

22

constituting criminal activities and are owed and entitled to, pecuniary damages from the Insurer for wrongful death.

109.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for all claims stated after No. 2, causing wrongful death, of additional damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her by the Insurer, for a total of $107,500,000.00. (One hundred and seven million, five hundred thousand dollars)

110.    Mrs. Chute (by and thru the Estate) demands additional punitive damages from the Insurer, for all claims stated after No. 2, for causing wrongful death, in the amount of ten (10) times the amount of compensatory damages, for a total of $1,075,000,000.00. (One billion seventy five million dollars)

111.    Mr. Chute demands additional compensatory damages and punitive damages for all claims stated after No. 2, for the wrongful death of his wife from Insurer, in the same additional amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars).

## STATEMENT OF CLAIM No. 3

### Against EMPLOYER and INSURER,

### BAD FAITH, BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

112.    All paragraphs above are incorporated herein by this reference.

113.    ¶67 above shows "....but, *Insured* [Employer] *did not make a job offer within restrictions until 02/24/09.*" The following is an excerpt (¶¶ 34-36) from Mrs. Chute's Amended Petition for Hearing filed with the Department on January 7, 2011:

34.    On February 24, 2009, Claimant saw Dr. Brett Lawlor again and he opined;

"I do think she may need injections in the future...I have written out work restrictions for her. She is at a maximum lift of 10 pounds. She needs to limit bending and

23

twisting at the waist to occasional. She should change position from sitting to standing to walking every 45 minutes as necessary."

35.    On February 24, 2009, Insurer (First Comp) sent Employer a fax that stated in

part:

"As advised I am providing a sample offer of permanent modified work, with a copy of your 12/03/08, Job Questionnaire and Dr. Lawlor's work restrictions. ***Please make a separate Job Description, with the information from the enclosed Job Questionnaire and the Dr. Lawlor's enclosed work restrictions. I understand you are going to hand deliver this to Ms. Chute...*Once the enclosed is signed, please fax it back to me, along with the new job description and Dr. Lawlor's work restrictions...* " (emphasis added)

Employer then typed an offer of employment and faxed it back to Insurer. Then

Insurer made changes to the employment contract and sent it back to Employer.

36.    On February 25, 2009, Employer/Insurer, jointly, or Employer alone, made a

written job offer to Claimant that stated:

"Dear Donna Chute:

As your employer for the captioned worker's compensation claim, I am in receipt of the enclosed copy of Dr. Brett Lawlor's February 24, 2009, notification of work restrictions. It is your employer's understanding the enclosed work restrictions from Dr. Lawlor may or may not be permanent.

As the owner of Nifty Fifties, Inc. I am offering, on an immediate basis, the following permanent modified duty position, pursuant to Dr. Lawlor's enclosed February 24, 2009 work restrictions.

| | |
|---|---|
| Position: | Casino Hostess |
| Job Location: | Nifty Fifties/Parkway Restaurant, 312 East Blvd North, Rapid City, SD 57701 |
| Wage: | $10.00 per hour on approximately a 40 hour work week, 1.5 for any work over 40 hours |
| Fringe Benefits: | Meals @ 50% off list price |
| Work Schedule | Monday through Sunday approximately a 40 hour work week |

| | |
|---|---|
| Assigned Work Duties: | See enclosed job description |
| Physical Requirements: | Max lift 10#. Limit bending and twisting to occasional (1-33% of an 8 hour work day), change from sitting to walking every 45 minutes as necessary. Also see |

24

enclosed job description.

> Please be advised Ms. Donna Chute, you have seven (7) days from the date of this correspondence to accept or reject this offer of permanent employment. Please sign below, in the presence of a witness, to indicate whether or not you accept the above offer."

Claimant agreed to, signed, and accepted Employer/Insurer's joint offer, or Employer's

offer, of permanent employment on February 25, 2009. [End of excerpt]

114. The accepted written offer of employment referred to above, was/is an enforceable employment contract.

115. The "enclosed job description" shown after "Assigned Work Duties" above, that was

attached to the Employment Contract states in handwriting after "List the specific job duties:"

"Cashing Out Lottery tickets, Serving Coffee, Sodas and Beer. The Beer is in Cooler and is All

Bottled Beer – some Bending & Reaching."

116. The amount of weekly compensation benefits for partial disability under SDCL § 62-4-5

changed, after the Insurer and/or Employer entered into an employment contract with

Mrs. Chute. The weekly benefit amount (previously agreed upon by the Insurer and Mrs. Chute)

under SDCL § 62-4-3 was the state minimum of $299.00 per week. After entering into the

employment contract, the weekly workers compensation benefit amount would have to be the

$400.00 as stated in the employment contract. SDCL § 62-4-5 explains:

> If, after an injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing the employee's usual and customary line of employment.... the employee shall receive compensation, subject to the limitations as to maximum amounts fixed in § 62-4-3, *equal to one-half of the difference between the average amount which the employee earned before the accident, and the average amount which the employee is earning or is able to earn in some suitable employment or business after the accident.*

117. This is the earnings rule again, and it explains that the Insurer is required to monitor the

pre injury and post injury weekly earnings of the injured worker, especially in this case, where

25

the Employer and Insurer had worked together to offer Mrs. Chute an employment contract, the Insurer was required to monitor Mrs. Chute's wages, on a weekly basis, after the employment contract was entered into, to determine any difference between (1) *"the average amount which the employee is earning... after the accident"* or (2) *"the average amount which the employee is...able to earn in some suitable employment or business after the accident,"* and what her earnings were before the injury.

118.    It was the Insurer's duty and obligation to monitor Mrs. Chute's post injury weekly earnings, especially after the Insurer requested: "Once the enclosed [Employment Contract] is signed, please fax it back to me, along with the new job description and Dr. Lawlor's work restrictions..." (*See* ¶ 109, excerpt subparagraph No. 35 above)

119.    SDCL § 62-4-5 required the payment of weekly compensation to Mrs. Chute to make up any difference in the amount of her weekly employment contract wages of $400.00, for every week her earnings fell below the $400.00 compensation rate, after February 25, 2009, the date of her employment contract.

120.    Employer breached the employment contract almost immediately. Mrs. Chute's pay check stub for pay period 03/05/2009 – 03/18/2009 shows 73.95 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $739.50, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $60.50 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $125.00 today)

121.    Mrs. Chute's pay check stub for pay period 03/19/2009 – 04/01/2009 shows 65.98 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $659.80, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial

disability pursuant to SDCL § 62-4-5, the difference of $140.20 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $283.76 today)

122.    Mrs. Chute's pay check stub for pay period 04/30/2009 – 05/13/2009 shows 50.48 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $504.80, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $295.20 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $597.48 today)

123.    Mrs. Chute's pay check stub for pay period 05/14/2009 – 05/27/2009 shows 38.68 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $386.80, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $413.20 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $836.32 today)

124.    Mrs. Chute's pay check stub for pay period 06/11/2009 – 06/24/2009 shows 47.90 regular hours worked and 1.88 overtime hours, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $507.20, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $292.80 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $592.63 today)

125.    Mrs. Chute's pay check stub for pay period 06/25/2009 – 07/08/2009 shows 46.50 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $465.00, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $335 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $678.04 today)

27

126.    Mrs. Chute's pay check stub for pay period 07/09/2009 – 07/22/2009 shows 56.95 hours worked, instead of 80 hours per the employment contract. At $10.00 per hour, Mrs. Chute was paid only $569.50, instead of $800.00. Insurer owes Mrs. Chute, compensation for partial disability pursuant to SDCL § 62-4-5, the difference of $230.50 plus a 10% penalty (SDCL § 62-4-10.1) and 12% interest since then until paid. (roughly $466.53 today)

127.    Dated July 20, 2009, attorney Catherine Sabers of the law firm of Lynn, Jackson, Shultz & Lebrun, P.C. (Law Firm) filed a Notice of Appearance with the Department.

128.    From the date of Mrs. Chute's injury on September 10, 2008, until the Insurer hired the Law Firm sometime in July of 2009; the Insurer was responsible, and had a duty and an obligation, to monitor Mrs. Chute's weekly earnings and determine whether or not compensation for partial disability, pursuant to SDCL § 62-4-5, was owed to Mrs. Chute during any of her two week pay periods; and to timely pay her the compensation due and owed as shown above, according to SDCL § 62-4-5, the current case law including two Declaratory Rulings by the Department, the terms of the WC Insurance Contract, and the terms of the Employment Contract.

129.    ¶ 64 above shows the Insurer had no intention of monitoring Mrs. Chute's earnings after the Employer and Insurer offered her the Employment Contract and she accepted it. Insurer's case file notes, dated March 14, 2009, (more than 2 weeks later) specifically requested only "...*all gross wages from the date of event until 02/24/09.*"

130.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate and monitor, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of

28

the lack of a reasonable basis for denial.

131.    Mrs. Chute suffered damages, including lost income and wrongful death, as a direct result
of the Insurer's "Bad Faith" actions stated above.

### DEMAND FOR RELIEF AGAINST EMPLOYER and INSURER, No. 3

### DAMAGES

132.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for all weekly
benefits due pursuant to SDCL § 62-4-5, at the rate of $400.00 a week as stated in the
Employment Contract, from February 25, 2009 thru July 22, 2009, as stated approximately
above.

133.    Mrs. Chute (by and thru the Estate) demands payment from Employer and Insurer, for
Breach of Employment Contract, for the amount of $400.00 per week, from February 25, 2009
through March 8, 2010, (when Employer terminated Mrs. Chute) minus weekly wages earned
and already paid. From March 9, 2010 through the date of Mrs. Chute's death on July 17, 2013,
Mrs. Chute (by and thru the Estate) demands payment of $400.00 per week, plus yearly COLA
increases determined by the Department, a 10% penalty, and 12% interest.

### STATEMENT OF CLAIM No. 4

Against EMPLOYER, INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ &

LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

### DEFENDANT SUPERVISING ATTORNEY

### BAD FAITH, DECEIT, INSURANCE FRAUD, COLLUSION, MANSLAUGHTER

### BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

134.    All paragraphs above are incorporated herein by this reference.

135.    Insurer solicited, hired, conspired and colluded with, and ordered, the Defendant Law

29

Firm and Defendant attorneys Catherine Sabers (Ms. Sabers) and her unknown Defendant

Supervising Attorney, sometime between April 22, 2009 and July of 2009, to commit insurance

fraud by unlawfully denying all payments of weekly workers compensation benefits to

Mrs. Chute, pursuant to SDCL § 62-4-5, the terms of the WC Insurance Contract, and the

Employment Contract, which they agreed to do, and did, making Insurer vicariously liable for

said Defendant's actions.

136.    Insurer committed a class 5 felony of criminal solicitation by soliciting, hiring, request-

ing, and commanding; with the intent to promote or facilitate the commission of the crime of

insurance fraud; the Defendant Law Firm, Defendant attorneys Ms. Sabers, Ms. Lewis, and their

Defendant Unknown Supervising attorney, to engage in specific conduct which would constitute

the commission of such offense or an attempt to commit such offense, (See SDCL § 22-4A-1),

which they did,  making Insurer vicariously liable for said Defendant's actions.

137.    After Mrs. Chute accepted the Employment Contract in February of 2009, the Employer

breached it, and started to cut down Mrs. Chute's weekly work hours over the course of the next

year; down to around 6 hours a day, and then down to 4 days a week, and then down to 3 days a

week, and then 2 days a week, until Mrs. Chute finally had to file for Unemployment benefits in

January of 2010. She was terminated on March 8, 2010 (retaliatory termination).

138.    The "Determination Notice" from the South Dakota Department of Labor,

Unemployment Insurance Division (UI Div.) stated:

> "Your request for partial benefits is allowed commencing 01/31/2010...Information
> received indicates you are *currently working reduced hours*...it is determined you have
> not voluntarily quit without good cause....nor have you been discharged for reasons
> constituting misconduct...You are eligible for partial benefits in weeks that you earn less
> than your weekly benefit amount..." (emphasis added)

And a copy of this notice was provided to Mrs. Chute's former attorney, by the Law

Firm, through Ms. Sabers, as an exhibit attached to "Employer/Insurer's Answers to Claimant's First Set of Interrogatories and Requests for Production of Documents" on May 6, 2010.

139.    During the above said year, neither the Insurer, or the Law Firm, or Ms. Sabers, or her supervising attorney, monitored Mrs. Chute's post injury weekly earnings, as required by SDCL § 62-4-5, or paid Mrs. Chute one penny in the difference between her pre injury and post injury earnings, in accordance with the earnings rule in SDCL § 62-4-5, based on the rate of Employment Contract wages of $400.00 per week.

140.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate and monitor, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial.

141.    The next "Determination Notice" from the UI Div., also provided by Ms. Sabers, as stated above, said: *"Your request for benefits is allowed commencing 03/07/2010.... You were discharged for poor performance. Misconduct....has not been substantiated."*

142.    None of the above stated Defendants, investigated or notified, Mrs. Chute of the denial, in whole or in part, to pay the weekly benefits Mrs. Chute was entitled to. This was fraudulent concealment.

143.    About four (4) months after the Employer terminated Mrs. Chute in retaliation for filing this workers compensation claim, and the UI Div.'s last notice; and a year after Insurer hired the Law Firm, their attorney Ms. Sabers wrote in a letter, dated July 14, 2010, addressed to Mrs. Chute's former attorney, Michael Simpson (Mr. Simpson):

31

"Since your correspondence requesting the institution of temporary total disability and also requesting vocational assistance, I have had the opportunity to do some additional investigation. The Employer has advised me that Ms. Chute was terminated due to customer complaints. In this situation, I do not believe that additional temporary total disability would be appropriate, as she was terminated from a position within her restrictions, for reasons unrelated to her work injury. This same rationale would apply to your request that Employer and Insurer voluntarily provide some sort of vocational placement assistance."

144.    Ms. Sabers, knowingly and with intent to deceive, presented this statement in support of

the denial of a claim for payments and benefits, pursuant to the Insurer's WC Insurance Contract,

knowing that the statements contained false, incomplete, and misleading information concerning

the facts entitling Mrs. Chute to compensation for partial disability pursuant to SDCL § 62-4-5,

two (2) Declaratory Rulings from the Department, the Employment Contract, and the test for

entitlement stated in Hendrix (¶ 62 above). Ms. Saber's statement was a deceit, and a fraudulent

insurance act according to SDCL § 58-4A-2(6), made under the direction and supervision of her

Defendant Unknown supervising attorney, the Law Firm, and the Insurer, and caused Mrs. Chute

damages and death.

145.    In Kelsheimer (¶ 62 above); the Department said "Similar cases from other jurisdictions

are persuasive:"

Danley v. General Motors Corp., 173 Mich. App. 271, 433 N.W.2d 329 (1988). The claimant was awarded workers' compensation benefits up to the claimant's last day of work prior to a layoff. The board found that the claimant would no longer have a continuing disability because the work that he performed, which caused his back condition to be symptomatic, would no longer be required of him. The court determined that this finding could be interpreted to mean that the claimant's entitlement to benefits was terminated due to his layoff and held it was error to find that the claimant's layoff from employment terminated his workers' compensation benefits. What is compensable is the loss of wage-earning capacity rather than actual loss of wages. The claimant's layoff did not affect his wage-earning capacity. The court rationalized that if that were the case, *any employer would be able to terminate a claimant's entitlement to benefits by merely laying off the employee.* (emphasis added)

Here, the Employer and Insurer cannot terminate Mrs. Chute's entitlement to benefits

under SDCL § 62-4-5 by simply terminating her employment. Employer and Insurer carefully crafted Mrs. Chute's Employment Contract (*See* ¶113, excerpt subparagraph No. 36 above) to even specifically include such minor benefits as: "Fringe Benefits: Meals @ 50% off list price" in what they termed as this "offer of permanent employment". What the Employer and Insurer carefully and specifically omitted from the "offer of permanent employment," was any sort of a "Termination Clause;" because it isn't needed in a "permanent" Employment Contract.

Mrs. Chute was still under the same work restrictions, as were stated in the employment contract, when she was terminated, and her "wage-earning capacity" had not changed.

146. Further proof that Insurer acted without a reasonable basis for denial of the claim to pay Mrs. Chute weekly compensation for partial disability; and the Insurer knew there was not a reasonable basis to deny the claim, is because Insurer never investigated or determined how much Mrs. Chute's pre injury earnings were; Insurer acted in reckless disregard of the lack of a reasonable basis for denial, as shown by the statements made by Ms. Sabers in a letter dated September 27, 2010, more than two (2) years after Mrs. Chute's date of injury:

> It is my understanding from our communication that you intend to move forward with the claim for indemnity/disability benefits in this case.
> For my part, I have requested that the Employer endeavor to accumulate documentation regarding Claimant's earnings in the 52 weeks prior to her date of injury.

147. Ms. Sabers finally provided "detailed pay records regarding Donna Chute from January 2008 through September 2008" to Mr. Simpson attached to a letter dated October 4, 2010. These were not complete records required to determine the average weekly wage for a year preceding the injury, as four (4) months were missing; September through December of 2007.

148. Mrs. Chute had an employment contract with Employer for permanent employment.

149. The Employer breached the terms of the employment contract by reducing the number of hours Mrs. Chute worked, causing damages and lost wages.

33

150. The Employer breached the employment contract by terminating Mrs. Chute, causing damages and lost wages.

151. The Insurer acted criminally, and in "Bad Faith" as described above, causing Mrs. Chute lost workers compensation benefits, damages, and wrongful death.

152. The Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., Ms. Sabers and her Unknown Defendant supervising attorney, practiced deceit and collusion and felony insurance fraud, as stated and described above, causing Mrs. Chute damages and wrongful death.

## DEMAND FOR RELIEF No. 4

Against EMPLOYER, INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ &

LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

### DEFENDANT SUPERVISING ATTORNEY

153. Mrs. Chute (by and thru the Estate) demands payment from Insurer for all weekly benefits due pursuant to SDCL § 62-4-5, at the rate of $400.00 a week as stated in the Employment Contract, from July 23, 2009 through the end of her life (July 13, 2013), to include the yearly COLA increases determined by the Department, plus penalty and interest.

154. Mrs. Chute (by and thru the Estate) demands payment from Insurer for the statutory penalty of ten thousand dollars for Criminal solicitation described above, plus interest.

155. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

156. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for the crime of Manslaughter in the First Degree, a Class C

34

felony, for the statutory penalty of fifty thousand dollars (SDCL § 22-16-15(1)), plus interest. Insurer is vicariously liable for these damages.

157.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for deceit and collusion, insurance fraud, and wrongful death, of damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars) Insurer is vicariously liable for these damages.

158.    Mrs. Chute (by and thru the Estate) demands punitive damages from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for wrongful death, in the amount of ten (10) times the amount of compensatory damages, for a total of $1,075,000,000.00, plus interest. (One billion seventy five million dollars) Insurer is vicariously liable for these damages.

159.    Mr. Chute demands payment from the Insurer for weekly workers compensation death benefits under SDCL § 62-4-12, except the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

160.    Mr. Chute demands compensatory damages and punitive damages for the wrongful death of his wife from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., in the same amount as Mrs. Chute's demands above. Insurer is vicariously liable for these damages.

161.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for committing deceit and collusion (defined in SDCL § 16-18-26(1)) with the Law Firm, her supervising attorney, and the Insurer, with the intent to deceive Mrs. Chute, for treble damages pursuant to SDCL § 16-18-28, for all of the following Demands:

>     1) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers
>        for insurance fraud (a Class 4 felony) described above, for the statutory penalty of

35

twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for these damages.

2) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for the crime of Manslaughter in the First Degree, a Class C felony, for the statutory penalty of fifty thousand dollars (SDCL § 22-16-15(1)), plus interest; trebled. Insurer is vicariously liable for these damages.

3) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for wrongful death, of damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled. (Three hundred and twenty two million, five hundred thousand dollars) Insurer is vicariously liable for these damages.

4) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for punitive damages for wrongful death, in the amount of ten (10) times the amount of compensatory damages; trebled, for a total of $3,225,000,000.00, plus interest. (Three billion, two hundred twenty five million dollars) Insurer is vicariously liable for these damages.

5) Mr. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for weekly workers compensation death benefits under SDCL § 62-4-12, except the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled. Insurer is vicariously liable for these damages.

SPECIAL DAMAGES

6) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers

36

for her hospital bills for the last two years of her life totaling $352,284.89; trebled to $1,056,854.60. Insurer is vicariously liable for these damages.

7) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for her power chair of $12,605.60; trebled to $37,816.80. Insurer is vicariously liable for these damages.

8) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for all claims submitted to Medicaid of South Dakota for $7,167.79; trebled to $21,503.37. Insurer is vicariously liable for these damages.

9) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for Mrs. Chute's funeral costs of $9,401.10; trebled to $ 28,203.30. Insurer is vicariously liable for these damages.

10) Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for Mrs. Chute's headstone of about $5,300.00; trebled to $15,900.00. Insurer is vicariously liable for these damages.

11) Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00; trebled to $690,000.00.

162.   Mr. and Mrs. Chute demand payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed under ¶161, sub paragraphs 1 through 11 above.

STATEMENT OF CLAIM No. 5

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN,

P.C., DEFENDANT CATHERINE SABERS, Attorney, and the Unknown

DEFENDANT SUPERVISING ATTORNEY

37

## BAD FAITH, DECEIT, INSURANCE FRAUD, COLLUSION, MURDER

### BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

163. All paragraphs above are incorporated herein by this reference.

164. After firing her former attorney, Mr. Simpson, and not receiving a penny in weekly

compensation from Insurer after her injury, Mrs. Chute filed an Amended Petition for Hearing

(Amended Petition) with the Department on January 6, 2011.

165. Employer/Insurer's Answer (E/I Answer) to Claimant's Amended Petition, filed on

March 7, 2011 stated in ¶13:

> With regard to paragraph 14, Employer and Insurer deny that, at the time of the injury
> itself, any medical provider allegedly took Claimant completely off work from
> September 10, 2008 to December 8, 2008. However, a disability insurance form from
> Central States Health and Life Company, indicating that Claimant was "totally disabled"
> from October 8, 2008 through November 26, 2008, was first provided with Claimant's
> Amended Petition. *Employer and Insurer will pay temporary total disability* plus interest
> from October 8, 2008 through November 26, 2008, based on this recently produced
> document. (emphasis added)

166. Insurer knew that Mrs. Chute was totally disabled from October 8, 2008 through

November 26, 2008, after being served with the January 6, 2011 Amended Petition and the

evidence, probably a few days later; but E/I's Answer, promising to pay, wasn't filed until two

months later on March 7, 2011.

167. Insurer's payment of total disability benefits was not forthcoming as promised. Insurer

did not pay those benefits until September 26, 2011, more than eight months after being provided

with the evidence; three months after Mrs. Chute was tested by her cancer doctor, and a month

after Mrs. Chute was diagnosed as terminal. The Insurer had no intention of ever paying those

benefits, as Ms. Sabers and the Insurer promised, a deceit as described in SDCL § 20-10-2(4).

Had the Insurer timely paid those benefits within two weeks, as required by statute

*(See* SDCL § 62-4-10), and Mrs. Chute could have had the money to pay the $285.00 up front to

see her cancer doctor six months earlier, they possibly could have successfully treated her cancer

and saved her life. Insurer knew Mrs. Chute had Breast cancer, and solicited, conspired and

colluded with the Law Firm and their attorneys, to deny, and delay any payment of benefits as

long as possible, to intentionally, and maliciously cause Mrs. Chute's death. In South Dakota,

that's called premeditated design to effect the death, and called murder in the first degree.

168.    After receiving the check, Mrs. Chute again demanded payment of all back benefits in a

letter to Insurer's counsel, Ms. Sabers, three days later on September 29, 2011. The following is

an excerpt:

> In regards to the check I received for temporary total disability (TTD) benefits
> from October 8, 2008 through November 26, 2008, perhaps you can explain this. The
> date of October 8, 2008 is a Wednesday, and November 26, 2008 was also a Wednesday,
> so this check was for seven (7) weeks at the rate of $299.00 a week, or $ 2,093.00.
> Adding the 10% penalty provided for in SDCL 62-4-10.1 of $ 209.30 equals $ 2,302.30,
> plus 12% interest times three (3) years ($ 276.28 per year times three (3) = $828.84)
> equals $ 3,131.14, not $ 2,846.48. My calculator says there's a difference owing of
> $ 284.66, just for those seven weeks.
>
> My injury on September 10, 2008, was also a Wednesday. Just so we're on the
> same page, First Comp is refusing TTD benefits from Wednesday, September 10, 2008
> through Tuesday, October 7, 2008 (4 weeks) and any TTD or permanent partial disability
> (PPD, See SDCL 62-4-5-compensation for partial disability) after November 26, 2008?
>
> My first day back to work was December 8, 2008; so from Thursday, November
> 27th through Wednesday, December 3rd, (1 week) First Comp is denying both PPD and
> TTD?
>
> And from Thursday, December 4th through Wednesday, December 10th (I worked
> 3 days, or 21.54 hours @ $10.00 per hour totaling $ 215.40), actually this pay period was
> from 11-27-2008 – 12-10-2008, or two weeks. According to SDCL 62-4-5, I should have
> received $299.00 per week for those two weeks, minus $215.40, or $ 382.60. Now,
> $382.60 plus a 10% penalty of $38.26 is $$420.86; times 12% interest of $50.50 per year
> times 3 years, or $151.50, added to $ 420.86 is $572.36 for those two weeks.
>
> The next two week pay period, 12-11-2008 – 12-24-2008, I only worked 4 days.
>
> The next two week pay period, 12-25-2008 – 1-7-2009, I worked 47.19 hours, or
> $471.90, and should have been paid (2 times $299.00) $598.00. That's a difference of
> $126.10, plus the 10% penalty and 12% interest for 3 years.

39

> The next two week pay period, 1-8-2009 – 1-21-2009, I worked 46.05 hours, or $460.50, and should have been paid (2 times $299.00) $598.00. That's a difference of $137.50 plus the 10% penalty and 12% interest for 3 years.

> And so on and so on.......up until March 3, 2010 when I was terminated; and then, $299.00 a week since then, until this is settled, that's over 80 additional weeks so far, or $23,920.00, plus penalty and interest (over $37,000.00).

169.    Insurer's counsel, Ms. Sabers, answered Mrs. Chute's demands for weekly compensation

"According to SDCL 62-4-5", one day later, in a letter dated September 30, 2011, saying:

> Thank you for your correspondence of September 29, 2011....

> The reason we have a dispute in calculation on a period of TTD from October 8, 2008 through November 26, 2008, is that I do not believe a penalty is appropriate. Obviously, that is a matter that would have to be resolved by the Department. With regard to the remaining periods between September 10, 2008 and December 8, 2008, there is no indication in any medical record that any physician *completely took you off work.* (emphasis added)
> I disagree with your assertions as to ongoing benefits after you were released to work. Obviously, this will be an issue for mediation or for trial before the Department.

170.    Ms. Sabers provided no explanation of why she disagreed to Mrs. Chute's entitlement to

ongoing benefits after she was released to work (and before she was terminated), in accordance

with SDCL § 62-4-5; nor did she say why the Insurer refused to investigate or pay her claim.

171.    In response to Mrs. Chute's claim for weekly workers compensation benefits submitted to

Insurer and their counsel, ("....*up until March 3, 2010 when I was terminated; and then, $299.00*

*a week since then, until this is settled, that's over 80 additional weeks so far, or $23,920.00, plus*

*penalty and interest (over $37,000.00).* "), after she was terminated, still under her doctor's work

restrictions, and was unemployed and unable to find work (drawing unemployment benefits);

Ms. Sabers and Insurer, both having the duty to disclose the facts of why the Insurer refused to

pay her claim, intentionally and knowingly, suppressed those facts. These were acts of deceit as

described and defined in SDCL § 20-10-2(3) committed by the Insurer, the Law Firm, the

40

Unknown supervising attorney, and Ms. Sabers, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

172.     Ms. Sabers had a premeditated design to effect the death of Mrs. Chute, by colluding with, and following the direction and/or orders of, her supervising attorney, the Law Firm, and the Insurer, knowingly, deceitfully, and intentionally refusing to pay lawful weekly workers compensation benefits that were due to Mrs. Chute pursuant to SDCL § 62-4-5, immediately after being terminated on March 8, 2010, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute. Insurer is vicariously liable for the actions of the Law Firm, Unknown supervising attorney, and Ms. Sabers.

173.     Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate and monitor the post injury weekly earnings, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial; by requiring Mrs. Chute to wait years, and go through legal proceedings with the Department in order to be paid the lawfully owed weekly workers compensation benefits pursuant to SDCL § 62-4-5; causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

174.     Ms. Sabers knowingly, and with intent to deceive, prepared and made the statements made in her letter dated September 30, 2011, as part of Mrs. Chute's workers compensation claim, in support of denying her claim pursuant to the Insurer's insurance policy, knowing that the statements contained false, incomplete, and misleading information concerning the facts of entitlement to weekly benefits pursuant to SDCL § 62-4-5, material to the claim. This was a

41

fraudulent insurance act as defined in SDCL § 58-4A-2(6), and a deceit, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

175.    Ms. Sabers knowingly assisted and conspired with her Defendant Unknown Supervising attorney, the Law Firm, and Insurer, to prepare and make the statements made in her letter dated September 30, 2011, as part of Mrs. Chute's workers compensation claim, in support of denying her claim pursuant to the Insurer's insurance policy, knowing that the statements contained false, incomplete, and misleading information concerning the facts of entitlement to weekly benefits pursuant to SDCL § 62-4-5, material to the claim. This was a fraudulent insurance act as defined in SDCL § 58-4A-2(7), and a deceit, causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

## DEMAND FOR RELIEF No. 5

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN,

P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

## DEFENDANT SUPERVISING ATTORNEY

176.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for willfully committing the crime of deceit (SDCL § 20-10-2(4)) in E/I's Answer, and then delaying payment for over eight months, causing the unlawful wrongful death, and murder of Mrs. Chute for the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered

42

during the last two years of her life, the amount of 20 million dollars; and punitive

damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years

wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred

and seven million, five hundred thousand dollars); and punitive damages in ten times that

amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus

interest.

177.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for willfully

committing the crime of deceit (SDCL § 20-10-2(3)) in Ms. Sabers letter dated September 30,

2011, and refusing to pay weekly benefits to Mrs. Chute after she was terminated on March 8,

2010, causing the unlawful wrongful death, and/or murder of Mrs. Chute described above, for

the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars,

plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-

4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered

during the last two years of her life, the amount of 20 million dollars; and punitive

damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years

wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred

and seven million, five hundred thousand dollars); and punitive damages in ten times that

amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus

interest.

178. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

179. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for willfully committing the crime of deceit (SDCL § 20-10-2(4)) in E/I's Answer, and then delaying payment for over eight months, causing the unlawful wrongful death, and murder of Mrs. Chute for the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

180. Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers in the

44

treble amount of all damages in accordance with SDCL § 16-18-28, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for all damages.

181.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for willfully committing the crime of deceit (SDCL § 20-10-2(4)) in E/I's Answer, and then delaying payment for over eight months, causing the unlawful wrongful death, and murder of Mrs. Chute for the following damages (trebled by SDCL §16-18-28) authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars; trebled, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest; trebled.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars, trebled; and punitive damages in ten times that amount; 200 million dollars; trebled, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled; and punitive damages in ten times that amount; $1,075,000,000.00, plus interest; trebled.

182.    Mrs. Chute demands payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed under ¶179-180, sub paragraphs 1 through 4 above.

STATEMENT OF CLAIM No. 6

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C., DEFENDANT CATHERINE SABERS, Attorney, and the Unknown DEFENDANT SUPERVISING ATTORNEY

BAD FAITH, DECEIT, INSURANCE FRAUD, COLLUSION, MURDER

BREACH OF EMPLOYMENT CONTRACT and SDCL § 62-4-5

183. All paragraphs above are incorporated herein by this reference.

184. Attorney Ms. Sabers made the following statements in a letter dated October 14, 2011;

"....I disagree with your calculation of damages. Unfortunately, I do not think you understand the types of benefits available under workers compensation...I believe the *evidence at hearing* will show that you were *terminated for cause* and thus are not entitled to *additional benefits*. In the alternative, I believe *there will be evidence* to show that your work incident does not prevent you from being employed in the community." (emphasis added)

185. Ms. Sabers did not explain to Mrs. Chute what evidence she was referring to that would be produced at the hearing to show that Mrs. Chute was terminated for cause. Ms. Sabers had a duty and obligation to disclose any such information or evidence through the continuing discovery obligation and process. Mrs. Chute was terminated on March 8, 2010, and Ms. Saber's letter was dated nineteen (19) months later on October 14, 2011. Not disclosing any such evidence was fraudulent concealment.

186. Ms. Sabers had the decisions of the UI Div. that stated "Your request for benefits is allowed commencing 03/07/2010...You were discharged for poor performance. Misconduct...has not been substantiated." (*See* ¶141 above). Employer told the Unemployment Insurance Division, a state agency of South Dakota, that Mrs. Chute was discharged for poor performance. That's not cause as determined by the UI Div. Ms. Sabers was lying to Mrs. Chute, and making false statements for the improper purpose of denying her claim.

187. Ms. Sabers admission that "...I believe *there will be evidence*..." again, imposed a duty and obligation upon Ms. Sabers and the Insurer, to disclose any such evidence. No such disclosure was made. Ms. Sabers was either making false statements or fraudulently concealed said evidence.

188.    Ms. Sabers, knowingly and with intent to deceive, presented this statement in support of the denial of a claim for payments and benefits, pursuant to the Insurer's WC Insurance Contract, knowing that the statements contained false, incomplete, and misleading information concerning the facts entitling Mrs. Chute to compensation for partial disability pursuant to SDCL § 62-4-5, two (2) Declaratory Rulings from the Department, the Employment Contract, and the test for entitlement stated in Hendrix (¶ 62 above). Ms. Saber's statement was a deceit, and a fraudulent insurance act according to SDCL § 58-4A-2(6), made under the direction and supervision of her Defendant Unknown supervising attorney, the Law Firm, and the Insurer, and caused Mrs. Chute damages.

189.    Insurer breached its duty of "Good Faith and Fair Dealing" with Mrs. Chute, and acted in "Bad Faith" by failing to investigate and monitor the post injury weekly earnings, and denying to pay workers compensation benefits due to Mrs. Chute in accordance with the WC Insurance Contract, SDCL § 62-4-5, and the Employment Contract, without a reasonable basis for denial of the claim; and the Insurer knew there was not a reasonable basis to deny the claim. Insurer acted in reckless disregard of the lack of a reasonable basis for denial; by requiring Mrs. Chute to wait years, and go through legal proceedings with the Department in order to be paid the lawfully owed weekly workers compensation benefits pursuant to SDCL § 62-4-5; causing damages, and the unlawful wrongful death, and murder in the first degree of Mrs. Chute.

190.    Insurer's statements were fraudulent insurance acts as defined in SDCL § 58-4A-2(6), constituting criminal activities, and because the amount involved was over $1,000.00, Insurer's fraudulent insurance acts were felonies. (Felony Insurance Fraud), and caused damages to Mrs. Chute.

### DEMAND FOR RELIEF No. 6

Against INSURER, DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN,

P.C., DEFENDANT CATHERINE SABERS, Attorney, and the unknown

DEFENDANT SUPERVISING ATTORNEY

191.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for willfully

committing the crime of deceit (SDCL § 20-10-2(3)) in Ms. Sabers letter dated October 14, 2011,

and refusing to pay weekly benefits to Mrs. Chute after she was terminated on March 8, 2010,

causing the unlawful wrongful death, and/or murder of Mrs. Chute, for the following amount of

damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars,
   plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-
   4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered
   during the last two years of her life, the amount of 20 million dollars; and punitive
   damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years
   wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred
   and seven million, five hundred thousand dollars); and punitive damages in ten times that
   amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus
   interest.

192.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn,

Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the

statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these

damages.

193.    Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn,

Jackson, Shultz & Lebrun, P.C. for willfully committing the crime of deceit (SDCL § 20-10-2(4))

causing the unlawful wrongful death, and murder of Mrs. Chute for the following amount of

damages authorized by SDCL § 20-10-1.

1)  For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars,

    plus interest, and all costs

2)  For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-

    4-5, plus the 10% penalty and 12% interest.

3)  For compensatory damages including pain and suffering, and mental anguish suffered

    during the last two years of her life, the amount of 20 million dollars; and punitive

    damages in ten times that amount; 200 million dollars, plus interest.

4)  For damages in the amount of five (5) million dollars for each of the 21.5 years

    wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred

    and seven million, five hundred thousand dollars); and punitive damages in ten times that

    amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus

    interest.

194.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers in the

treble amount of all damages in accordance with SDCL § 16-18-28, for insurance fraud (a Class

4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest;

trebled. Insurer is vicariously liable for all damages.

195.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers for

willfully committing the crime of deceit (SDCL § 20-10-2(4)) causing the unlawful wrongful

49

death, and murder of Mrs. Chute for the following damages (trebled by SDCL §16-18-28) authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars; trebled, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest; trebled.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars, trebled; and punitive damages in ten times that amount; 200 million dollars; trebled, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled; and punitive damages in ten times that amount; $1,075,000,000.00, plus interest; trebled.

196. Mrs. Chute demands payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed under ¶194, and ¶195, sub paragraphs 1 through 4 above.

197. Mr. Chute demands payment from the Insurer for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

198. Mr. Chute demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

199. Mr. Chute demands payment from attorney Ms. Sabers for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's

50

weekly benefits at the time of her death, in accordance with her employment contract; trebled.

200.    Mr. Chute demands payment from Ms. Sabers Unknown Supervising attorney for weekly

workers compensation death benefits under SDCL § 62-4-12, the amount will be the

continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her

employment contract; trebled.

STATEMENT OF CLAIM No. 7

Against EMPLOYER

201.    All paragraphs above are incorporated herein by this reference.

202.    Mrs. Chute's Amended Petition stated at ¶60: "The reason Claimant was discharged was

retaliatory termination for filing a workers compensation claim. SDCL 62-1-16." Mrs. Chute (by

and through her Estate) still asserts that fact.

203.    Amazingly and unbelievably, Employer and Insurer successfully convinced the

Department's Administrative Law Judge Donald Hageman (ALJ Hageman) (Defendant herein)

that SDCL 62-1-16 was not enforceable by the Department in workers compensation cases, and

required that the injured employee had to pursue any claim for retaliatory termination through

the Circuit Court by filing a civil action. ALJ Hageman was wrong.

DEMAND FOR RELIEF No. 7

Against EMPLOYER

204.    Mrs. Chute (by and thru the Estate) demands payment from Employer, in the amount of

treble damages of her Employment Contract, as stated in ¶61 of her Amended Petition.

STATEMENT OF CLAIM No. 8

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN-in his official capacity

and individually as a licensed South Dakota attorney

51

### 42 U.S.C. § 1983 and SDCL § 16-18-28

205. All paragraphs above are incorporated herein by this reference.

206. Donald W. Hageman is a person and a licensed South Dakota attorney, who is, or was

employed by the South Dakota Department of Labor and Regulation (Department) as a Workers

Compensation Hearing Officer (or Administrative Law Judge-ALJ Hageman) pursuant to SDCL

§ 62-7-12.1; and is, or was, assigned to Mrs. Chute's workers compensation case.

207. Mr. Chute, now the Personal Representative of Mrs. Chute's Estate, has intervened on

behalf of his wife over the years during her terminal illness when she could not act; and has

reached the conclusion that ALJ Hageman has been improperly influenced or bribed in this case,

as his actions and decisions explained herein will either show, or raise considerable suspicion.

208. Mrs. Chute filed an Amended Petition for Hearing (Amended Petition) with the

Department on January 6, 2011, pursuant to SDCL § 62-7-12.

209. In her Amended Petition, Mrs. Chute asked the Department to review her disability

payments pursuant to SDCL § 62-7-33, stating in ¶25 of her Amended Petition:

> "The posted work schedule for Parkway started on Monday and ended on Sunday.
> The schedule from Monday, December 1, 2008 through Sunday, December 7, 2008 had
> already been posted, and Employer did not schedule Claimant to return to work until
> Monday, December 8, 2008. Claimant was not paid any weekly disability benefits, from
> the date of her work related injury on September 10, 2008 through December 8, 2008, the
> date her employer agreed to her work restrictions and placed her back on the work
> schedule to return to work. Claimant is entitled to be paid temporary disability benefits
> pursuant to SDCL 62-4-2 and SDCL 62-4-3 at the rate of $299.00 per week (SD state
> minimum) for the twelve (12) weeks of work she missed (September 10, 2008 through
> December 8,2008) totaling $3588.00, plus interest at the Category C rate of 12% for two
> years and one month, ($430.56 per year plus $35.88) equaling $897.00, plus mileage to
> and from all treatments while off work of $62.53, totaling $ 4,547.53, plus any additional
> penalties and interest allowed."

And concluded her Amended Petition by requesting:

> "...that a hearing be had on all claims and that upon such hearing an award of
> worker's compensation benefits be made for any and all benefits to which Claimant is

entitled under the South Dakota Worker's Compensation Act..."

SDCL § 62-7-33 explains the review of workers compensation payments by the Department:

"...Any payment, including... disability payments under § 62-4-3 if the earnings have substantially changed since the date of injury, made or to be made under this title may be reviewed by the Department of Labor and Regulation pursuant to § 62-7-12 at the written request of the... employee and on such review payments may be ended, diminished, increased, or awarded subject to the maximum or minimum amounts provided for in this title, if the department finds that a change in the condition of the employee warrants such action."

210.    ALJ Hageman's decision on this issue was listed in the Department's Chronological

Index (CI) as page No. 2151 (showing that this case consisted of over two thousand one hundred

and forty five pages filed with the Department, and that didn't count hundreds of pages of

discovery including medical records and doctors reports) and stated:

"The Employer and Insurer filed a Motion for Partial Summary Judgment dated November 28, 2011, and a Motion to Dismiss dated December 23, 2013. The Department has reviewed the briefs and submission of the parties related to those motions and concludes that the arguments made in the Employer and Insurer's briefs in support of those motions expresses the correct rational and status of the law. Therefore, it is hereby,

ORDERED that Employer and Insurer's Motion for Partial Summary Judgement is granted. It is further,

ORDERED that Employer and Insurer's Motion to Dismiss is granted. This matter is, therefore, dismissed with prejudice.

Dated this 18th day of June, 2014.

211.    What? Summary Judgment was granted based on arguments?

212.    Employer and Insurer's Motion for Partial Summary Judgment stated:

"Pursuant to A.R.S.D. 47:03:01:08 and SDCL § 15-6-56(b)..., Employer and Insurer respectfully request an order of partial summary judgment in their favor in this matter. *This Motion is supported by...the Exhibits attached hereto.*" (emphasis added)

213.    Whether or not ALJ Hageman is required by law to follow the State statutes under

Section 6 of Title 15 in workers compensation proceedings, is beyond Mr. Chute's knowledge,

but he does have to follow the Administrative Rules of South Dakota (ARSD) and 47:03:01:08

says in part:

> "...an employer or its insurer may, anytime after expiration of 30 days from the filing of a petition, *move with supporting affidavits* for a summary judgment. The division shall grant the summary judgment immediately *if* the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits,* if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (emphasis added)

214.    In this case, according to ARSD 47:03:01:08, the Employer and Insurer were not allowed

to move for summary judgment *without* supporting affidavits.

215.    A review of Employer and Insurer's Motion for Partial Summary Judgment, listed in the

Department's Chronological Index (CI) as pages 566-623, shows page 566 as the first page of

said motion, signed by Ms. Sabers on November 28, 2011. The second page, No. 567, is the

Certificate of Service, again signed by Ms. Sabers. The third page, No. 568, is marked in the

lower right hand corner as "Exhibit A"; and the last page is, No. 622, making a total of 54 pages

of exhibits, all submitted by Employer and Insurer, through Ms. Sabers, her supervising attorney,

and the Law Firm, without being attached to any affidavit.

216.    Now, SDCL § 15-6-56(e) describes the form of affidavits to be used and attached:

> Form of affidavits for summary judgment....Supporting...affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

217.    All of the unlawful exhibits, which were not attached to any affidavit, and not served with

any affidavit, were referred to over and over and over again, in the Employer and Insurer's Brief

in Support of Motion for Partial Summary Judgment, thereafter ALJ Hageman opined:

> "The Department has reviewed the briefs and submission of the parties related to those motions and concludes that the arguments made in the Employer and Insurer's briefs in support of those motions expresses the correct rational and status of the law."

218. The Employer and Insurer's said motion should have been denied as a matter of law.

219. Nowhere in his decision did ALJ Hageman reply to Mrs. Chute's written request, under SDCL § 62-7-33, to review her entitlement to *disability payments under § 62-4-3 if the earnings have substantially changed since the date of injury*, since after her date of injury, her earnings were zero for the following twelve (12) weeks; and after her date of termination on March 8, 2010, her earnings were also zero until her death on July 17, 2013, more than three years later.

220. ALJ Hageman refused to review Mrs. Chute's request to review the disability payments she was entitled to, as required of him by SDCL § 62-7-33.

221. ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to review Mrs. Chute's written request for review under SDCL § 62-7-33, and caused Mr. and Mrs. Chute damages.

222. ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by accepting and reviewing unlawfully submitted evidence attached to Employer and Insurer's Motion for Partial Summary Judgment, without the required affidavit, and caused Mr. and Mrs. Chute damages.

223. Donald W. Hageman, in his official capacity as ALJ Hageman, and individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney; to knowingly and intentionally deny Mrs. Chute weekly compensation benefits for partial disability in violation of SDCL § 62-4-5, the WC Insurance Contract, two (2) Declaratory Rulings (Re: SDCL 62-4-5 dated August 2, 2001; and Re: SDCL §§ 62-4-2, 62-4-5 dated July 7, 2005) from the Department, the Employment

55

Contract, the test for entitlement as stated in Hendrix, and the requirements of SDCL § 62-7-33; causing damages to Mrs. Chute's Estate and Mr. Chute.

## DEMAND FOR RELIEF No. 8

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN-in his official capacity and individually as a licensed South Dakota attorney

224. Mrs. Chute (by and thru the Estate) demands pursuant to 42 U.S.C. § 1983, that ALJ Hageman's ORDER, dated June 18, 2014 and entered by the Department, be declared void, vacated, or reversed, and/or set aside.

225. Mrs. Chute (by and thru the Estate) demands, pursuant to 42 U.S.C. § 1983, payment from ALJ Hageman in the amount of ten million dollars in compensatory damages; and ten times that amount in punitive damages; one hundred million dollars.

226. Mrs. Chute (by and thru the Estate) demands payment from attorney Donald W. Hageman in the amount of ten million dollars in compensatory damages, trebled; and ten times that amount in punitive damages; one hundred million dollars, trebled, pursuant to SDCL § 16-18-28 for violations of SDCL § 16-18-26(1).

## STATEMENT OF CLAIM No. 9

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN, in his Official Capacity
and Individually as a Licensed South Dakota Attorney, and
MARCIA HULTMAN, in Her Official Capacity as SECRETARY of the
SOUTH DAKOTA DEPARTMENT OF LABOR and REGULATION
SEVENTH JUDICIAL CIRCUIT COURT JUDGE HEIDI LINNGREN
FEDERAL QUESTION, and 42 U.S.C. § 1983

227. Another excerpt from "Claimant's Brief in Support of Response to the Employer and

56

Insurer's Motion to Dismiss" shows on pp 11-12:

Claimant's Amended Petition for Hearing, dated January 6, 2011, explained in ¶28:

"Sometime in the first part of December of 2008, Claimant discovered that Dr. Weiland's [Mrs. Chute's original doctor] Physician's Assistant, Gail Eckert, had disclosed Claimant's personal and private medical information concerning her breast cancer, to her husband, Mel Eckert. Mel Eckert then came into the Parkway casino while Claimant was working one day, and told the Claimant that he knew about her breast cancer, because his wife (Gail) had told him so."

Continuing on page 14, it stated:

The Claimant is not required to prove anything, to anyone, in order to claim the privilege stated in SDCL § 19-13-7, which simply states: "*A patient has a privilege...to prevent any other person from disclosing* [confidential communications]..." The Claimant claimed this privilege, in January of 2009, when she chose to see a new doctor, Dr. Babbitt, in order to prevent the unauthorized disclosure of her private and protected medical information concerning her breast cancer, by Dr. Weiland's office and his employees. Employer's Insurer was then notified by Dr. Babbitt.

Continuing on page 15, it stated:

There's absolutely no doubt, that the Claimant claimed patient's privilege pursuant to SDCL § 19-13-7, and SDCL § 19-13-8; that in order to prevent Dr. Weiland's nurse Gail, from making unauthorized disclosures of Claimant's private medical information, she changed doctors, from a doctor she had seen for more than 5 years (Dr. Weiland), to a doctor she had never seen before, Dr. Babbitt.

228.    Of course, after that, Insurer refused to pay Dr. Babbitt or pay for any prescriptions from

her, because Dr. Weiland didn't refer Mrs. Chute to Dr. Babbitt. "Employer and Insurer's Reply

in Support Motion to Dismiss and Motion for Partial Summary Judgment" argued:

IV. S.D.C.L. § 62-4-43 precludes claims of payment for treatment provided by Dr. Nancy Babbitt before January 12, 2011.

Claimant failed to comply with statutory requirements concerning her decision to initiate treatment outside the chain of referral. S.D.C.L. § 62-4-43 provides in pertinent part:

If the employee desires to change the employee's choice of medical practitioner or surgeon, the employee shall obtain approval in writing from the employer.

The statutory language is not permissive. The use of the term "shall" creates a condition that must occur prior to changing medical providers. Claimant did not obtain the required

57

written approval prior to ending the physician patient relationship with Dr. Weiland and initiating treatment with Dr. Babbitt. By statute,

The employer is not responsible for medical services furnished or ordered by any medical practitioner or surgeon or other person selected by the employee in disregard of this section. S.D.C.L. § 62-4-43.

229.  ALJ Hageman's decision on this issue was:

"The Department has reviewed the briefs and submission of the parties related to those motions and concludes that the arguments made in the Employer and Insurer's briefs in support of those motions expresses the correct rational and status of the law."

230.  Mr. Chute appealed ALJ Hageman's decision to the Secretary of the Department of

Labor (Secretary), Marcia Hultman, who affirmed his decision on this issue and stated in her

ORDER:

"The above-captioned matter comes before the Secretary of the Department of Labor pursuant to a secretarial level appeal as provided by SDCL 62-7-16. Upon reviewing the file, the evidence submitted by the parties, and the Decision of the Division of Labor and Management, it is hereby,

ORDERED, that the Order entered by the Division of Labor and Management on the 18th day of June, 2014, is hereby, in all respects, affirmed, and that the Division enter Findings of Fact and Conclusions of Law consistent with that Order."

Dated this 30th day of June, 2014.

231.  Mr. Chute appealed the Secretaries decision to the Seventh Judicial Circuit Court, where

he argued:

"Gary L. Chute, Personal Representative on behalf of the Estate of Donna M. Chute, couldn't believe that the ALJ had ruled it permissible for an employee of Mrs. Chute's previous doctor (Dr. Weiland) to make unauthorized disclosures of her breast cancer without her permission, in violation of HIPAA [Health Insurance Portability and Accountability Act of 1996] (45 CFR § 164.502(a)), and then required Mrs. Chute to obtain her Employer's written permission, in order to claim patients privilege pursuant to SDCL § 19-13-7, and SDCL § 19-13-8, according to SDCL § 62-4-43. HIPAA preempts state law (45 CFR § 160.203 General rule and exceptions. A standard, requirement, or implementation specification adopted under this subchapter that is contrary to a provision of State law preempts the provision of State law.) This was not just arbitrary and capricious; ALJ Hageman had been improperly influenced or bribed; this was corruption. No South Dakota State law preempts HIPAA or SDCL § 19-13-7, and SDCL § 19-13-8,

58

requiring the Claimant to obtain the written permission of their employer, in order to protect against the unauthorized disclosure of Protected Health Information (PHI)..."

232.    The Honorable Judge Heidi Linngren (Judge Linngren) affirmed the Secretaries decision on this issue.

233.    Mrs. Chute (by and thru her Estate) claimed patient privilege in January of 2009, and has been denied the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c) provides that the personal representative of a deceased patient can also claim the privilege for her) by ALJ Hageman, Secretary Hultman, and Judge Linngren. HIPAA preempts any South Dakota state law, specifically SDCL § 62-4-43, that would require a patient to get written permission from anyone in order to claim patient privilege, and protect themselves against the unauthorized disclosure of their private health information (HIPAA Privacy Rules).

234.    ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c), that preempts SDCL § 62-4-43, and caused Mr. and Mrs. Chute damages.

235.    Secretary Marcia Hultman is a "person", who under color of state law, denied Mr. and Mrs. Chute the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c), that preempts SDCL § 62-4-43, and caused Mr. and Mrs. Chute damages.

236.    Judge Heidi Linngren is a "person", who under color of state law, denied Mr. and Mrs. Chute the protections of HIPAA's Privacy Rules, and SDCL § 19-13-7 and SDCL § 19-13-8; which have been transferred to SDCL § 19-19-503 (SDCL § 19-19-503(c), that preempts SDCL § 62-4-43, and caused Mr. and Mrs. Chute damages.

## FEDERAL QUESTION.

237.    Does SDCL § 62-4-43 preempt HIPAA or vise versa?

## DEMAND FOR RELIEF No. 9

238.    Mr. Chute asserts that HIPAA preempts SDCL § 62-4-43 and asks this Court, pursuant to

42 U.S.C. § 1983, to overturn, vacate, or void the decisions by Judge Linngren, the Secretary,

Marcia Hultman, and ALJ Hageman on this issue.

239.    Mrs. Chute (by and thru the Estate) demands payment from Insurer for all medical bills

and prescriptions by and from Dr. Babbitt for treatment of Mrs. Chute's work related injuries,

plus a 10% penalty and 12% interest.

## STATEMENT OF CLAIM No. 10

Against ADMINISTRATIVE LAW JUDGE DONALD W. HAGEMAN, in his Official Capacity

And EMPLOYER, and MARCIA HULTMAN, in Her Official Capacity as SECRETARY of the

## SOUTH DAKOTA DEPARTMENT OF LABOR and REGULATION

## SEVENTH JUDICIAL CIRCUIT COURT JUDGE HEIDI LINNGREN

## ALL FIVE NAMED SOUTH DAKOTA SUPREME COURT JUSTICES and Their

## UNKNOWN LAW CLERK/ATTORNEYS

## STATE QUESTION - RETALIATORY TERMINATION

240.    Does the South Dakota Department of Labor and Regulation have the jurisdiction and

authority, to hear and decide claims of retaliatory termination in workers compensation cases,

pursuant to SDCL§ 62-1-16, which states:

> Employer civilly liable for retaliatory termination of employee--Burden of proof. An
> employer is civilly liable for wrongful discharge if it terminates an employee in
> retaliation for filing a lawful workers' compensation claim. The burden of proof is on the
> employee to prove the dismissal was in retaliation for filing a workers' compensation
> claim.

60

241.   Employer terminated Mrs. Chute in retaliation for filing a lawful workers compensation claim. Mr. Chute asserts that the Department has the jurisdiction and authority to hear and decide Mrs. Chute's claim of retaliatory termination pursuant to SDCL§ 62-1-16 in her workers compensation case.

242.   Employer and Insurer assert Mrs. Chute has to file a civil suit in Circuit Court for any claim of retaliatory termination pursuant to SDCL§ 62-1-16 in her workers compensation case.

243.   ALJ Hageman's Decision on this issue was:

"The Department has reviewed the briefs and submission of the parties related to those motions and concludes that the arguments made in the Employer and Insurer's briefs in support of those motions expresses the correct rational and status of the law."

244.   ALJ Hageman's Decision was affirmed by the Secretary. The Secretary's Decision was affirmed by Judge Linngren.

245.   Mr. Chute appealed to the South Dakota State Supreme Court, who dismissed his appeal.

246.   Mr. Chute appealed to the U.S. Supreme Court, who denied his Petition for a Writ of Certiorari, and denied his Petition for Rehearing.

247.   ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

248.   Donald W. Hageman, individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, by knowingly and intentionally refusing to hear and decide Mrs. Chute's claim for retaliatory termination benefits pursuant to SDCL§ 62-1-16, causing damages to Mrs. Chute's Estate and

61

Mr. Chute.

249. Marcia Hultman, Secretary of the Department, is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

250. Judge Heidi Linngren, is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

251. Attorney Heidi Linngren is a "person", and practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, by knowingly and intentionally refusing to hear and decide Mrs. Chute's claim for retaliatory termination benefits pursuant to SDCL§ 62-1-16, causing damages to Mrs. Chute's Estate and Mr. Chute.

252. All five of the named South Dakota State Supreme Court Justices, and their unknown law clerk/attorneys are "persons", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to hear and decide Mrs. Chute's claim of retaliatory termination against her Employer, and caused Mr. and Mrs. Chute damages.

253. All five of the named South Dakota State Supreme Court Justices, and their unknown law clerk/attorneys, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, by knowingly and intentionally refusing to hear and decide

Mrs. Chute's claim for retaliatory termination benefits pursuant to SDCL§ 62-1-16, causing damages to Mrs. Chute's Estate and Mr. Chute.

## DEMAND FOR RELIEF No. 10

254.    Mrs. Chute (by and thru the Estate) demands payment from Employer as stated in her Amended Petition at ¶60, for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013 (approximately $275,200.00), plus 12% interest.

255.    Mrs. Chute (by and thru the Estate) demands payment from ALJ Hageman for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest.

256.    Mrs. Chute (by and thru the Estate) demands payment from attorney Donald W. Hageman for deceit and collusion the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest; trebled.

257.    Mrs. Chute (by and thru the Estate) demands payment from Secretary Marcia Hultman for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest.

258.    Mrs. Chute (by and thru the Estate) demands payment from Judge Heidi Linngren for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest.

259.    Mrs. Chute (by and thru the Estate) demands payment from attorney Heidi Linngren for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest; trebled.

260.    Mrs. Chute (by and thru the Estate) demands payment from all five of the named South Dakota State Supreme Court Justices, each, and their unknown law clerk/attorneys, each, for the

amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest.

261.    Mrs. Chute (by and thru the Estate) demands payment from all five of the named South Dakota State Supreme Court Justices, as attorneys, each, and their unknown law clerk/attorneys, as attorneys, each, for the amount of $1,600.00 per week from March 8, 2010 through the end of her life on July 17, 2013, (approximately $275,200.00), plus 12% interest; each, trebled.

## STATEMENT OF CLAIM No. 11

Against DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C.,

DEFENDANT CATHERINE SABERS, Attorney, BARBARA ANDERSON LEWIS, attorney

and the unknown DEFENDANT SUPERVISING ATTORNEY; INSURER,

ALJ DONALD W. HAGEMAN, in his Official Capacity, and as an attorney

and MARCIA HULTMAN, in Her Official Capacity as SECRETARY

JUDGE HEIDI LINNGREN, in her Official Capacity, and as an attorney

262.    All paragraphs above are incorporated herein by this reference.

263.    Deceit and fraud must be specifically pleaded, so Mr. Chute apologizes to the Court for the lengthy excerpt, but he doesn't know any other way to do this.

264.    As stated above (¶230), the Secretary's Decision stated:

"The above-captioned matter comes before the Secretary of the Department of Labor pursuant to a secretarial level appeal as provided by SDCL 62-7-16. Upon reviewing the file, the evidence submitted by the parties, and the Decision of the Division of Labor and Management, it is hereby,

ORDERED, that the Order entered by the Division of Labor and Management on the 18th day of June, 2014, is hereby, in all respects, affirmed, and that the Division enter Findings of Fact and Conclusions of Law consistent with that Order."

Dated this 30th day of June, 2014.

265.    The following is a continuing excerpt from Mr. Chute's Petition for Rehearing:

Please note that Secretary Hultman ordered ALJ Hageman to enter "Findings of Fact and Conclusions of Law" (SDCL § 15-6-52(a)) on June 30, 2014 (Appendix C) and then mailed her decision and order to Mr. Chute only, that same day, as is shown in the cover letter and copy of the envelope in Appendix C. Apparently, Secretary Hultman sent her decision, and order to submit "Findings of Fact and Conclusions of Law" pursuant to SDCL § 15-6-52(a), to the Insurer, *ex parte*, electronically, via email to their attorneys, but I just don't know because nothing in her letter to me (Appendix C) says anything about serving the other parties.

The Insurer, through counsel of record Barbara Anderson Lewis (attorney Lewis), pursuant to SDCL § 15-6-52(a), then submitted proposed "Findings of Fact and Conclusions of Law" to ALJ Hageman the very next day on July 1, 2014, as is shown in the cover letter; with the attached certified United States Postal Service (USPS) envelope and USPS tracking report that shows the date of delivery to Mr. Chute as July 3, 2014. See Appendix D.

It should be noted by this Court, that pursuant to SDCL § 15-6-52(a), "Findings of Fact and Conclusions of Law" are unnecessary on decisions of motions under SDCL § 15-6-56 (Summary Judgment), but in this case, the Secretary ORDERED "Findings of Fact and Conclusions of Law" to be entered by ALJ Hageman.

Without waiting the mandated 5 days after service upon Mr. Chute (*"The court may not sign any findings therein prior to the expiration of five days after service of the proposed findings..." See* SDCL § 15-6-52(a)), ALJ Hageman broke the law and signed the "Findings of Fact and Conclusions of Law" the very next day, on July 2, 2014, as is shown in the letter from ALJ Hageman dated July 2, 2014, along with the Department's file stamped copy signed and dated by ALJ Hageman on July 2, 2014 (See Appendix E). These fraudulent documents were mailed to Mr. Chute on July 2, 2014, as shown by a copy of the USPS certified mail envelope, and the attached USPS tracking report that shows delivery to Mr. Chute was made on July 10, 2014.

Mr. Chute tried to appeal ALJ Hageman's unlawful entry of "Findings of Fact and Conclusions of Law" to the Circuit Court, listing under the "Statement of Issues":

1. Whether each and every one of the ALJ's "Findings of Fact and Conclusions of Law" (which were prepared and submitted by the Employer/Insurer's counsel) dated July 2, 2014 are:

(1) In violation of constitutional or statutory provisions, or;
(2) In excess of the statutory authority of the agency, or;
(3) Made upon unlawful procedure, or;
(4) Affected by other error of law, or;
(5) Clearly erroneous in light of the entire evidence in the record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or
clearly unwarranted exercise of discretion.

2.      Whether the substantial rights of the appellant have been prejudiced because the administrative findings and conclusions are one or more of those listed above in SDCL § 1-26-36(1-6)?

And arguing in Appellant's Amended Brief that:

"In the present case, Mr. Chute, Personal Representative of the Estate of Donna M. Chute, was denied any opportunity to submit objections, or his own Proposed Findings of Fact and Conclusions of Law, and certainly never stipulated to a waiver. The Findings of Fact and Conclusions of Law in this case, were not made until more than two weeks after the ALJ's decision, and then only made after the Secretary affirmed his decision and ordered them."

But the Insurer's attorney Lewis argued to the Circuit Court that:

"Further, Gary L. Chute attempts to raise certain issues for the first time on appeal. Generally, when issues are raised for the first time on appeal, those issues are not addressed. (Citation omitted) Chute provided a list of 16 issues he intended to raise on appeal. For this Court's ready reference, those issues raised for the first time on appeal include Issue Nos.1, 2, and 14...."

"Findings of Fact and Conclusions of Law are not required in summary judgment proceedings. The matters before the Department of Labor were presented by Motions for Summary Judgment. As the South Dakota Supreme Court has recognized, Findings of Fact and Conclusions of are unnecessary in summary judgment proceedings." (Citations omitted)
Circuit Court Judge Heidi Linngren (Circuit Judge Linngren) refused to obey the law (SDCL § 1-26-36), or remand the case for further proceedings pursuant to SDCL § 1-26-36. Circuit Judge Linngren wrote in her Memorandum Decision:

Standard of Review

South Dakota Codified Law § 1-26-36 gives the reviewing Court the authority to reverse or modify "a decision of an agency if a party has been prejudiced by administrative 'findings, inferences, conclusions, or decisions' that are clearly erroneous as a matter of law, or arbitrary, capricious, or characterized by an abuse of discretion." When the issue before the Court is a question of law, the actions of the agency are fully reviewable." (Citations omitted)

"5. This Court is not considering issues raised for the first time by Gary Chute on appeal.

Gary Chute raises multiple issues on appeal that were never before the Department. Generally, issues raised for the first time on appeal are not considered. (Citation omitted) "This rule exists to permit [an administrative agency] an opportunity to correct claimed error, prior to appeal." *Id.* Since this issue was not raised below, this Court will not address it now.

Conclusion

For these reasons, the decision of the Department is AFFIRMED."

It shows it was dated by Circuit Judge Linngren on the 5th day of March, 2015, but file stamped by the Clerk on May 8, 2015. (*See* Appendix F, Petition for Writ of Certiorari, pp 3, 8-9). This date discrepancy raised some confusion and Mr. Chute asked for clarification from the Court. In response, the Court issued the following ORDER (*See* Appendix G, Petition for Writ of Certiorari), dated the 19th of May, 2015. The ORDER states in part:

"The May 5, 2015 memorandum opinion affirming the decision of the South Dakota Department of Labor and Regulation is incorporated in this Order. It is hereby

ORDERED, adjudged and decreed that the decision of the Department of Labor is affirmed, and *the appeal is dismissed.* (emphasis added)

What??? "...*the appeal is dismissed????????* Mr. Chute appealed the unlawful and fraudulent entry of ALJ Hageman's "Findings of Facts and Conclusions of Law" to the Circuit Court, and his appeal was dismissed.

Mr. Chute, the disabled non-lawyer Personal Representative of his deceased wife's estate, timely appealed to the South Dakota Supreme Court, who also dismissed the appeal, stating the estate had to be represented by an attorney.

Mr. Chute then timely appealed to this Court who denied his Petition for a Writ of Certiorari without comment.

266.    First of all, Mr. Chute mailed his Petition for Review of ALJ Hageman's Decision to the

Department, and was received, as shown in the Department's Chronological Index (CI) pages

2152-2154, on June 25, 2014, a Wednesday. Mr. Chute has no idea what time of day the mail

was delivered to the Department on that day.

267.    The Secretary issued her decision, as shown in the CI, page 2157, on June 30, 2014,

which was the following Monday.

268.    Secretary Marcia Hultman is not an attorney or a doctor.

269.    Secretary Hultman has asserted as a fact, in her decision, that she did review the file and

evidence; "*Upon reviewing the file...* (which contained over 2150 pages including medical

records and reports from 14 doctors)...*the evidence submitted by the parties, and the

Decision...the Order entered by the Division...is...in all respects, affirmed...* " Given the benefit

of the doubt, the Secretary got the Petition for Review by noon on Wednesday and not the next

day, plus Thursday and Friday; then took Saturday and Sunday off, and issued her Decision on
Monday at 4:58 p.m.; then she had three and a half days, without any interruptions or telephone
calls, to review 2150 pages and make her decision. That's about 700 pages a day, with 100%
accuracy and total recall of every single fact and law.

270.    The Secretary knows, and is very familiar with, the Declaratory Rulings issued by the

Department, including the two rulings pertinent to this case; Re: SDCL § 62-4-5 dated August 2,

2001; and Re: SDCL §§ 62-4-2, 62-4-5 dated July 7, 2005.

271.    The Secretary knows when injured employees are entitled to weekly compensation

benefits under SDCL § 62-4-5.

272.    The Secretary determined that Mrs. Chute was not entitled or owed even one dollar in

compensation under SDCL § 62-4-5.

273.    The Secretary knew that the Insurer did not investigate Mrs. Chute's claim.

274.    The Secretary knew that the Insurer did not notify Mrs. Chute, or the Department, in

writing, that Insurer was denying the claim in whole or in part.

275.    The Secretary knew that the Insurer did not file the required report within two weeks

pursuant to SDCL § 62-6-3, but did not impose the statutory fine:

> A company or employer which fails, refuses, or neglects to comply with the provisions of
> this section is also subject to an administrative fine of one hundred dollars payable to the
> Department of Labor and Regulation for each act of noncompliance

276.    The Secretary determined that HIPAA did not preempt state law, and required

Mrs. Chute to get her Employers written permission in order to claim patient privilege and

change doctors to prevent the unauthorized disclosure of her private health information, pursuant

to SDCL § 62-4-43 .

277     The Secretary, and/or ALJ Hageman, had *ex parte* communications with the Insurer's law

68

firm and counsel, ordering them to submit proposed Findings of Fact and Conclusions of Law to ALJ Hageman, without Mr. Chute's knowledge or participation.

278.    ALJ Hageman then signed and entered the Findings of Fact and Conclusions of Law submitted to him by the Insurer and their counsel, within twenty four (24) hours without waiting the required five days after service upon Mr. Chute, as required by South Dakota Codified Law SDCL § 15-6-52(a), without Mr. Chute's knowledge or participation.

279.    The "Findings of Fact" listed 18 Findings and included "Donna M. Chute's cause of death was unrelated to any injuries sustained in the work related accident."

280.    The "Conclusions of Law" had 13 conclusions, and included "No benefits are due pursuant to S.D.C.L. § 62-4-5..."

281.    ALJ Hageman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by signing and entering the Findings of Fact and Conclusions of Law within 24 hours, without providing Mr. or Mrs. Chute (by and through her Estate) any knowledge, notice, or opportunity to be involved and caused Mr. and Mrs. Chute damages.

282.    Donald W. Hageman, individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney; to knowingly and intentionally deny Mr. and Mrs. Chute any knowledge, notice, or opportunity to be involved in the determination and entry of the Findings of Fact and Conclusions of Law (suppression of the facts), in violation of SDCL § 15-6-52(a), causing damages to Mrs. Chute's Estate and Mr. Chute.

283.    Secretary Marcia Hultman is a "person", who under color of state law, denied Mr. and

Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by knowingly, intentionally, and deceitfully refusing and failing to review Mrs. Chute's workers compensation case; and making false statements and fraudulent misrepresentations in her Decision, and caused Mr. and Mrs. Chute damages.

284.    Secretary Marcia Hultman is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by knowingly and intentionally having *ex parte* communications with Employer and Insurer regarding the Findings of Fact and Conclusions of Law, and caused Mr. and Mrs. Chute damages.

285.    Judge Heidi Linngren is a "person", who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to review on appeal, the unlawful actions of the Department and ALJ Hageman, and caused Mr. and Mrs. Chute damages.

286.    Heidi Linngren, individually as a licensed South Dakota attorney, practiced deceit (as defined in SDCL § 20-10-2(3)) and collusion with the Department, ALJ Hageman, Employer, Insurer, the Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney; to knowingly and intentionally deny Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) by refusing to review on appeal, the unlawful signing and entry of the Findings of Fact and Conclusions of Law between the Department, ALJ Hageman, the Employer, Insurer, Law Firm, Ms. Sabers, attorney Barbara Anderson Lewis (Ms. Lewis), and their Unknown supervising attorney, and caused Mr. and Mrs. Chute damages.

DEMAND FOR RELIEF No. 11

Against DEFENDANT Law Firm of LYNN, JACKSON, SHULTZ & LEBRUN, P.C.,

DEFENDANT CATHERINE SABERS, Attorney, BARBARA ANDERSON LEWIS, attorney

and the unknown DEFENDANT SUPERVISING ATTORNEY; INSURER,

Against ALJ DONALD W. HAGEMAN, in his Official Capacity, and as an attorney

And MARCIA HULTMAN, in Her Official Capacity as SECRETARY

and JUDGE HEIDI LINNGREN, in her Official Capacity, and as an attorney

287. Mrs. Chute (by and thru the Estate) and Mr. Chute, demands, pursuant to

42 U.S.C. § 1983, that ALJ Hageman's Findings of Fact and Conclusions of Law, entered by the Department, be declared void, vacated, or reversed, and/or set aside.

288. Mrs. Chute (by and thru the Estate) demands payment from Insurer for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) by not informing the Circuit Court of the unlawful signing and entry of the Findings of Fact and Conclusions of Law, which they had a duty to disclose; and for making false and misleading statements to the Circuit Court in regards to the Findings of Fact and Conclusions of Law, the entire amount of damages listed in this Complaint, owed by everyone and every claim listed, as authorized by SDCL § 20-10-1.

289. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C. for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for all damages authorized by SDCL § 20-10-1 including the following special damages . These are additional damages to any other section of this Complaint.

290. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest. Insurer is vicariously liable for these damages.

291. Mrs. Chute (by and thru the Estate) demands payment from the Law Firm of Lynn,

Jackson, Shultz & Lebrun, P.C. for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for the following amount of damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

## SPECIAL DAMAGES

292.    Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last two years of her life totaling $352,284.89.

293.    Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

294.    Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

295.    Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

296.    Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

297.    Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and

72

Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

298.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers, and attorney Ms. Lewis, each, in the treble amount of all damages in accordance with SDCL § 16-18-28, for insurance fraud (a Class 4 felony) described above, for the statutory penalty of twenty thousand dollars, plus interest; trebled. Insurer is vicariously liable for all damages.

299.    Mrs. Chute (by and thru the Estate) demands payment from attorney Ms. Sabers, and attorney Ms. Lewis, each, for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for the following damages (trebled by SDCL §16-18-28) authorized by SDCL § 20-10-1.

   5) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars; trebled, plus interest, and all costs.

   6) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest; trebled.

   7) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars, trebled; and punitive damages in ten times that amount; 200 million dollars; trebled, plus interest.

   8) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest; trebled; and punitive damages in ten times that amount; $1,075,000,000.00, plus interest; trebled.

300.    Mrs. Chute demands payment from Ms. Sabers Unknown Defendant Supervising Attorney for the same amounts listed above for Ms. Sabers.

301.    Mr. Chute demands payment from the Insurer for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly

73

benefits at the time of her death, in accordance with her employment contract.

302. Mr. Chute demands payment from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract.

303. Mr. Chute demands payment from attorney Ms. Sabers for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled.

304. Mr. Chute demands payment from Ms. Sabers Unknown Supervising attorney for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled.

305. Mr. Chute, demands compensatory damages and punitive damages from Insurer, in the same amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars).

306. Mr. Chute demands compensatory and punitive damages from the Law Firm of Lynn, Jackson, Shultz & Lebrun, P.C., in the same amount as Mrs. Chute's demands; a total of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars).

307. Mr. Chute demands compensatory and punitive damages from Ms. Sabers in treble the amount as Mrs. Chute's demands of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars); trebled for a total of $3,547,500,000.00 (Three billion, five hundred forty seven million five hundred thousand dollars), for committing attorney misconduct as defined in SDCL § 16-18-26(1) and authorized by SDCL § 16-18-28.

74

308.    Mr. Chute demands payment from attorney Ms. Lewis for weekly workers compensation death benefits under SDCL § 62-4-12, the amount will be the continuation of Mrs. Chute's weekly benefits at the time of her death, in accordance with her employment contract; trebled.

309.    Mr. Chute demands compensatory and punitive damages from Ms. Lewis in treble the amount as Mrs. Chute's demands of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars); trebled for a total of $3,547,500,000.00 (Three billion, five hundred forty seven million five hundred thousand dollars), for committing attorney misconduct as defined in SDCL § 16-18-26(1) and authorized by SDCL § 16-18-28.

310.    Mr. Chute demands compensatory and punitive damages from Ms. Sabers and/or Ms. Lewis's Unknown supervising attorney, in treble the amount as Mrs. Chute's demands of $1,182,500,000.00 (One billion, one hundred eighty two million, five hundred thousand dollars); trebled for a total of $3,547,500,000.00 (Three billion, five hundred forty seven million five hundred thousand dollars), for committing attorney misconduct as defined in SDCL § 16-18-26(1) and authorized by SDCL § 16-18-28.

311.    Mrs. Chute, pursuant to 42 U.S.C. § 1983 demands payment from ALJ Hageman for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(3)) for the following amount of damages, and special damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs.

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive

75

damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

## SPECIAL DAMAGES

312.    Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last two years of her life totaling $352,284.89.

313.    Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

314.    Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

315.    Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

316.    Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

317.    Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

318.    Mrs. Chute demands payment from attorney Donald W. Hageman, in the treble amount of all those damages listed from ¶293 through ¶299 as authorized by SDCL § 16-18-28.

319.    Mrs. Chute, pursuant to 42 U.S.C. § 1983, demands payment from Secretary, Marcia Hultman, for knowingly and willfully committing the crime of deceit (SDCL § 20-10-2(2) and (3)) for the following amount of damages, and special damages authorized by SDCL § 20-10-1.

1) For the crime of murder in the first degree, the statutory penalty of fifty thousand dollars, plus interest, and all costs.

76

2) For all unpaid weekly benefits for compensation for partial disability under SDCL § 62-4-5, plus the 10% penalty and 12% interest.

3) For compensatory damages including pain and suffering, and mental anguish suffered during the last two years of her life, the amount of 20 million dollars; and punitive damages in ten times that amount; 200 million dollars, plus interest.

4) For damages in the amount of five (5) million dollars for each of the 21.5 years wrongfully taken from her, for a total of $107,500,000.00, plus interest. (One hundred and seven million, five hundred thousand dollars); and punitive damages in ten times that amount; $1,075,000,000.00, plus interest. (One billion seventy five million dollars) plus interest.

## SPECIAL DAMAGES

320.    Mrs. Chute (by and thru the Estate) demands payment for her hospital bills for the last two years of her life totaling $352,284.89.

321.    Mrs. Chute (by and thru the Estate) demands payment of her power chair of $12,605.60.

322.    Mrs. Chute (by and thru the Estate) demands payment of all claims submitted to Medicaid of South Dakota for $7,167.79.

323.    Mr. Chute demands payment of Mrs. Chute's funeral costs of $9,401.10.

324.    Mr. Chute demands payment of Mrs. Chute's headstone of about $5,300.00.

325.    Mr. and Mrs. Chute demand repayment of, all of their bankruptcy creditors debts, and Mrs. Chute's repossessed car for $32,445.36; for a total amount of about $230,000.00.

## STATEMENT OF CLAIM No. 12

### Against DEFENDANTS

Justice David Gilbertson, in his official capacity, and individually as an attorney

77

Justice Steven L. Zinter, in his official capacity, and individually as an attorney

Justice Glen A. Severson, in his official capacity, and individually as an attorney

Justice Lori S. Wilbur, in her official capacity, and individually as an attorney

Justice Janine M. Kern, in her official capacity, and individually as an attorney

and Five Unknown South Dakota Supreme Court Law Clerks/Attorneys, in their official capacity

and individually as attorneys

326.    The above named Defendants will be referred to as the 5 SDSC Justices and their 5 Law

Clerk/attorneys.

327.    All paragraphs above are incorporated herein by this reference.

328.    Again, Mr. Chute apologizes for the following lengthy excerpt from his Petition for a

Writ of Certiorari to the U.S. Supreme Court:

>    Mr. Chute then timely filed a Notice of Appeal, dated May 26, 2015 (AI 286) to
>    the South Dakota Supreme Court (S.D. Sup. Ct.), and attached his Motion to Waive
>    Filing Fees and Costs, and, Affidavit of Indigency (AI 310).

>    The Seventh Judicial Circuit Court issued it's "Oder Waiving Filing Fees, Costs,
>    and Bond" on June 1, 2015 (AI 316).

>    The S.D. Sup. Ct. issued it's "Order to Show Cause" (Case #27466), dated June
>    15, 2015, stating in part:

>    "Gary L. Chute, acting as personal representative of the Estate of Donna M.
>    Chute, filed, *pro se*, a notice of appeal in the above-entitled matter. The name Gary L.
>    Chute does not appear on the roll of persons admitted to practice law maintained by the
>    Clerk of this Court. *See* SDCL 16-16-20. In *Smith v. Rustic Home Builders, LLC*, 2013
>    S.D. 9, 826 N.W. 2d 357, this Court dismissed an appeal filed by the non-lawyer manager
>    of a limited liability corporation because the limited liability corporation had to be
>    represented by a licensed attorney. Other courts have reached similar holdings regarding
>    pro se representation of an Estate by a non-lawyer. *See, e. g. Davenport v. Lee*, 72
>    S.W.3d 85 (Ark. 2002) (holding that filing of pro se complaint by administrators of estate
>    constituted the unauthorized practice of law and dismissing action as a nullity).
>    Therefore, it is:
>    ORDERED that appellant show cause on or before June 29, 2015, why the appeal
>    should not be dismissed on the ground that the Estate is not represented by a licensed
>    attorney...."

Mr. Chute filed his "Appellant's Showing of Cause" on June 24, 2015. Thereafter, the S.D. Sup. Ct. issued its "Order Directing Appearance by Counsel" dated August 7, 2015, stating in part:

"...the Court having considered the showing and response and being fully advised in the premises, now, therefore, it is

ORDERED that a notice of appearance shall be filed by counsel in the above referenced appeal no later than August 27, 2015, or the appeal shall be dismissed

Mr. Chute filed his "Appellant's Motion for Clarification, and Petition for Rehearing dated August 17, 2015, citing his Affidavit of Indigency and explaining that it stated in part:

"2. Attached hereto is a copy of the Estate's bank account balance of $48.39, that reflects an additional $20.00 deposit made by myself, after the bank contacted me and informed me that the account had gone dormant after one year of inactivity, and that I needed to make a small additional deposit to keep the account open.

"5. **I was also Donna's sole beneficiary.** Her estate amounted to little of nothing. We lived in a mobile home that we paid $5,000.00 for, and had homesteaded (where I still reside), and had a 2000 Chevy S-10 Blazer, and a 1982 Ford 26 ft. motorhome. Donna was diagnosed with metastatic (stage 4-terminal) breast cancer in June of 2011 and given two years to live. She didn't own much, but gave away her personal belongings to her daughter and sister during those two years. There was nothing left to inventory when she died July 17, 2013. She left nothing behind in cash, stocks, bonds, or anything of value.

7.....Gary Chute...now receives $1,643.90 a month in Social Security Disability Benefits, before they deduct $104.90 for Medicare. I have no other income, and am still disabled."

Mr. Chute asked the S.D. Sup. Ct. two very important questions in his Appellant's Motion for Clarification:

"Or surely, the South Dakota Supreme Court doesn't actually think that Gary can hire an attorney for the $28.39 in the Estate's bank account?

And surely, the South Dakota Supreme Court has not just ordered (SC Order) the Social Security Disability Benefits of Gary Chute, to somehow be subjected to execution, levy, attachment, garnishment, or other legal process to pay for an attorney; in violation of 42 U.S.C. § 407 (Assignment of benefits--(a) In general--The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.)?"

> The S.D. Sup. Ct. refused to answer those questions, or respond at all, and issued it's "Order Denying Appellant's Motion for Clarification and Petition for Rehearing" dated September 11, 2015, along with its "Order Dismissing Appeal", dated September 11, 2015.

329.    Mr. Chute doesn't like to be taken advantage of because he is disabled, almost 65 years old, only has a 10th grade education, dropped out of high school in 1967, and has no GED. Nobody has to tell me that I don't know what I'm doing, or how bad I am at it. And I don't expect to be treated fairly, but I do expect to be treated with honesty, by attorneys and judges.

330.    All of the 5 SDSC Justices and their 5 Law Clerk/attorneys have practiced deceit and collusion against Mr. Chute; have made fraudulent misrepresentations; they have discriminated against Mr. Chute because he is disabled, denying him access to the Courts, in violation of the American with Disabilities Act (ADA); and conspired and colluded to unlawfully subject Mr. Chute's Social Security Disability Insurance (SSDI) benefits to "other legal process."

331.    Unlike Mr. Chute, all of the 5 SDSC Justices and their 5 Law Clerk/attorneys finished high school, college, and law school; where Mr. Chute believes every one of them probably had to take a class on "Basic Legal Research", such as "Fundamental Legal Skills" at the University of South Dakota (Listed as LAW 707 in the course catalog), where, as Mr. Chute just read, four of the 5 SDSC Justices went to school. It is described as:

> Description: Students develop fundamental writing, researching, and analytical skills during the first semester. Students learn to research and synthesize legal authorities; organize research; analyze statutory, common-law, and other authorities; predict outcomes on various legal issues through a series of written assignments; and communicate those outcomes to legal and non-legal audiences. The first semester assignments will include multiple drafts of office memoranda and client correspondence. *Research instruction includes* print and *computerized resources*. (emphasis added)

332.    The SD Sup. Ct. fraudulently concealed and misrepresented the facts in its "Order to Show Cause" by stating that:

> Other courts have reached similar holdings regarding pro se representation of an Estate

80

by a non-lawyer. *See, e. g. Davenport v. Lee*, 72 S.W.3d 85 (Ark. 2002) (holding that filing of pro se complaint by administrators of estate constituted the unauthorized practice of law and dismissing action as a nullity).

333. None, not one, of the 5 SDSC Justices or one of their 5 Law Clerk/attorneys, who

researched "pro se representation of an Estate" in South Dakota, or the 8th Circuit Court of

Appeals, on LexisNexis (our State provided legal research system) came up with the same

similar holdings that Mr. Chute came up with; Jones v. Correctional Medical Services, Inc., 401

F.3d 950 (8th Cir. 2005) which explained at length, that the Personal Representative of an Estate,

who was the sole beneficiary (as Mr. Chute is) with no creditors, could represent the Estate, and

even cited Davenport :

> The district court dismissed, applying Arkansas law on survival actions, which
> prohibits "a person who is not a licensed attorney and who is acting as an administrator,
> executor or guardian [from] practic[ing] law in matters relating to his trusteeship on the
> theory that he is practicing for himself." Davenport v. Lee, 72 S.W.3d 85, 90 (Ark. 2002),
> quoting Arkansas Bar Ass'n v. Union Nat'l Bank of Little Rock, 273 S.W.2d 408, 410
> (Ark. 1954)

> 28 U.S.C. § 1654 protects a party's right to "plead and conduct their own cases personally
> or by counsel," but subjects the pleading and conduct to the rules of federal courts. See
> Carr Enters., Inc. v. United States, 698 F.2d 952, 953 (8th Cir. 1983). A federal court
> has "inherent power to oversee attorneys" who appear before it. McKenna v. Champion
> Int'l Corp., 747 F.2d 1211, 1215 (8th Cir. 1984), overruled on other grounds by
> Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 167 n.1 (1989)

> In this case, Adrian Jones is not the only beneficiary/creditor of Dennis Jones's estate.
> Thus, as a non-attorney, Adrian Jones may not engage in the practice of law on behalf of
> others. See Ackra Direct Mktg. Corp. v. Fingerhut Corp., 86 F.3d 852, 857 (8th Cir.
> 1996); Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994); United
> States v. Van Stelton, 988 F.2d 70, 70 (8th Cir. 1993).

> ....Where a party not licensed to practice law in this state attempts to represent the
> interests of others by submitting himself or herself to jurisdiction of a court, those actions
> such as the filing of pleadings, are rendered a nullity.... Davenport, 72 S.W.3d at 94.

334. The 5 SDSC Justices and their 5 Law Clerk/attorneys knew about Jones, and that other

courts have ruled the same as the 8th Circuit; in Bass v. Leatherwood, 788 F.3d 228, 230 (6th Cir.

2015) (holding that "the sole beneficiary of an estate without creditors may represent the estate pro se"); and in Guest v. Hansen, 603 F.3d 15, 17 (2d Cir. 2010) ("[A]n administrator can proceed *pro se* where an estate has neither creditors nor beneficiaries other than the administrator.").

335.   Even Jones reiterated that 28 U.S.C. § 1654 protects a party's right to "plead and conduct their own cases personally or by counsel,"

336.   The SD Sup. Ct. knew that Mr. Chute was representing himself and failed to state or explain in their Decisions, the names of any other persons who rights were being squandered by Mr. Chute representing them, because there wasn't anybody else.

337.   The South Dakota Supreme Court must obey 28 U.S.C. § 1654 and allow Mr. Chute due process under the 14th amendment, (U.S. Const. amend. XIV, § 1), to represent himself, as he is the sole beneficiary of Mrs. Chute's Estate that has no creditors.

338.   The Decision in Jones, was issued by the United States Court of Appeals for the Eighth Circuit, and must be followed by the SD Sup. Ct. pursuant to South Dakota law, SDCL§ 1-1A-1; that declares the SD Sup. Ct.'s violations, and it's Order of Dismissal, as void.

339.   And the SD Sup. Ct. cannot enforce "any statute, rule, regulation, executive order, or office policy that is in violation of SDCL § 1-1A-1. (Enforcement of unconstitutional policies prohibited)" SDCL § 1-1A-2.

340.   The SD Sup. Ct. was required to protect Mr. Chute's rights to Due Process under the 14th Amendment by SDCL § 1-1A-3, which states:

> State officers to protect constitutional rights. Every state officer is directed to utilize the full force and authority of his office to resist the intrusion of such unlawful provisions and to protect the constitutional rights of the State of South Dakota and its individual citizens from the encroachments of such provisions.

341.   All 5 SDSC Justices willfully and intentionally failed to perform their official duty and

82

protect the constitutional right of Mr. Chute to Due Process under the 14th Amendment. (U.S. Const. amend. XIV, § 1), and protect his right to represent himself pursuant to 28 U.S.C. § 1654 as described in SDCL § 3-16-1, thereby committing Class 2 misdemeanors.

342.    Mr. Chute timely filed a Notice of Appeal, dated May 26, 2015 to the South Dakota Supreme Court (S.D. Sup. Ct.), and attached his Motion to Waive Filing Fees and Costs, and, Affidavit of Indigency. The Seventh Judicial Circuit Court issued it's "Oder Waiving Filing Fees, Costs, and Bond" on June 1, 2015.

343.    Mr. Chute explained in his "Affidavit of Indigency" that: "Gary Chute...now receives $1,643.90 a month in Social Security Disability Benefits (SSDI), before they deduct $104.90 for Medicare. I have no other income, and am still disabled."

344.    The SD Sup. Ct. ordered Mr. Chute, a disabled person, to hire an attorney to represent the Estate of Mrs. Chute before the SD Sup. Ct., using his sole source of income, his Social Security Disability Insurance (SSDI) benefits.

345.    The SD Sup. Ct. threaten to dismiss Mr. Chute's appeal if he did not hire an attorney.

346.    Mr. Chute refused to surrender control over, or to use, his SSDI benefits, to hire an attorney.

347.    The SD Sup. Ct, carried out its threat and dismissed Mr. Chute's appeal.

348.    The following is an excerpt from Mr. Chute's Petition for a Writ of Certiorari to the U.S. Supreme Court:

"....almost 60 million Americans received Social Security Benefits in 2015. Those benefits are protected by 42 U.S.C. 407(a) that acts as an anti-attachment statute and provides that:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment,

83

garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

...and the recipients right "to choose how to use the payments" as stated in the Social Security Administrator's Program Operations Manual System (POMS). POMS GN 02410.001(A) (entitled "Assignment of Benefits") (2014). "A beneficiary or recipient can use Sec. 207 or 1631(d)(1) of the Act as a personal defense if ordered to pay his or her payments to someone else, or if his or her payments are ordered to be taken by legal process." Id.

This Court has already ruled that "When a state court order attaches to social security benefits in contravention of 42 U.S.C. 407(a), the attachment amounts to a conflict with federal law, and such a conflict is one "that the [s]tate cannot win." In *re Lampart*, 306 Mich. App. 226, 229-251, 856 NW 2d 192 (Mich. 2014), citing *Bennett v Arkansas*, 485 US 395, 397; 108 S Ct 1204; 99 L Ed 2d 455 (1988). The S.D. Sup. Ct. has not followed this Court's decision.

349. The SD Sup. Ct. violated 42 U.S.C. 407(a) by ordering Mr. Chute to hire an attorney using his SSDI benefits.

350. All 5 SDSC Justices willfully and intentionally failed to perform their official duty and protect the constitutional right of Mr. Chute to Due Process under the 14th Amendment. (U.S. Const. amend. XIV, § 1), and equal protection of his rights under 42 U.S.C. 407(a), as described in SDCL § 3-16-1, thereby committing Class 2 misdemeanors.

351. Justice David Gilbertson is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

352. Justice Steven L. Zinter is a "person", as stated in 42 USC § 1983, who under color of

state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

353.     Justice Glen A. Severson is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

354.     Justice Lori S. Wilbur is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

355. Justice Janine M. Kern is a "person", as stated in 42 USC § 1983, who under color of state law, denied Mr. and Mrs. Chute due process under the 14th Amendment (U.S. Const. amend. XIV, § 1) and equal protection of their rights; discriminated against Mr. Chute as prohibited by the Americans with Disabilities Act of 1990 (ADA) 42 U.S.C. § 12132; conspired and colluded with the other named SDSC Justices and his/her law clerk/attorney as defined in 42 U.S.C. § 1985 to discriminate against Mr. Chute, a disabled person; and had the authority and power to prevent said actions, knowingly and intentionally failed to do so in violation of 42 U.S.C. § 1986; violated 42 USC § 407(a); and caused Mr. and Mrs. Chute damages.

356. The 5 SDSC Justices and their 5 Law Clerk/attorneys conspired and colluded with each other, as defined in 42 U.S.C. § 1985, to discriminate against Mr. Chute, a disabled person, and deny him access to the Court in violation of the 42 U.S.C. § 1983, § 1985, the ADA, the Americans with Disabilities Act of 1990 (ADA), and SDCL § 20-13-24.

## DEMAND FOR RELIEF No. 12

357. The damages allowed to be recovered under 42 U.S.C. § 1983, § 1985, and § 1986 in this case are *all damages,* from all defendants named in this section (The 5 SDSC Justices and their (unknown) 5 Law Clerk/attorneys).

358. Mr. Chute demands payment from each of the named Defendant South Dakota Supreme Court Justices, in their official capacity, in this section, of all damages listed in this Complaint.

359. Mr. Chute demands payment from each of the named Defendants, the 5 SDSC Justices and their (unknown) 5 Law Clerk/attorneys, in their personal capacity as attorneys, liable under SDCL § 16-18-28, all of the damages listed in this Complaint, in treble amount.

## STATEMENT OF CLAIM No. 13

## Against DEFENDANTS

86

Honorable John G. Roberts, Jr., Chief Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Anthony M. Kennedy, Associate Justice of the United States Supreme Court in

his official capacity, and individually as an attorney

Honorable Clarence Thomas, Associate Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Ruth Bader Ginsburg, Associate Justice of the United States Supreme Court, in

her official capacity, and individually as an attorney

Honorable Stephen G. Breyer, Associate Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Samuel Anthony Alito, Jr., Associate Justice of the United States Supreme Court, in

his official capacity, and individually as an attorney

Honorable Sonia Sotomayor, Associate Justice of the United States Supreme Court, in

her official capacity, and individually as an attorney

Honorable Elena Kagan, Associate Justice of the United States Supreme Court, in

her official capacity, and individually as an attorney

And at least Eight Unknown United States Supreme Court Law Clerks/Attorneys, in

their official capacity and individually as attorneys

360. All paragraphs above are incorporated herein by this reference.

361. After the above stated actions and violations of State and Federal law were made by the

SD Sup. Ct. Justices and their unknown law clerks/attorneys, Mr. Chute filed a Petition for a Writ

of Certiorari (PWC) with the U.S. Supreme Court (U.S. Sup. Ct.) as stated in ¶22 above:

> Mr. Chute then filed a Petition for a Writ of Certiorari in the United States Supreme Court
> along with a Motion for Leave to Proceed in *Forma Pauperis* on December 4, 2015,

87

which was placed on the Court's Docket on December 9, 2015 as No. 15-7302. On February 29, 2016, the Petition was denied. Mr. Chute filed a Petition for Rehearing on March 21, 2016. On April 18, 2016, the Rehearing was denied.

362.    The eight unknown U.S. Sup. Ct. law clerk/attorneys; after having read Mr. Chute's PWC, and having knowledge of the SD Sup. Ct.'s discrimination against Mr. Chute for being disabled, and threats against Mr. Chute to dismiss his appeal if he didn't surrender and give up his rights to entitlement to his SSDI benefits by having to hire and pay for an attorney with those benefits as ordered by the SD Sup. Ct., and the fact that the Court carried out that threat, and the SD Sup. Ct.'s denial of Mr. Chute's right of access to the Court, and the SD Sup. Ct.'s denial of due process; each, conspired, as defined in 42 USC § 1985, and colluded with the SD Sup. Ct. and their 5 law clerk/attorneys, and submitted verbally, or in written documents, recommendations to their prospective Justices, that the Court deny Mr. Chute's PWC.

363.    All eight of the named Defendant U.S. Sup. Ct. Justices, individually conspired, as defined in 42 USC § 1985, and colluded with each of their prospective unknown Defendant law clerk/attorneys, and with the 5 SD Sup. Ct. Justices and their 5 law clerk/attorneys; to discriminate against Mr. Chute because he is disabled, and deny his right to Due Process and of access to the Courts; and to subject his SSDI benefits to the power and control of the Courts in violation of 42 USC § 407(a); as stated in 42 USC § 1985 and §1986, by denying Mr. Chute's PWC and his Petition for Rehearing.

364.    Each one of the eight named Defendant U.S. Sup. Ct. Justices (conspirators) actions were motivated by an intent to deprive Mr. Chute, a disabled person, of the equal protection of the laws. (42 USC § 1985)

365.    Each one of the eight named Defendant U.S. Sup. Ct. Justices, had knowledge of the wrongs conspired to be committed and done by the SD Sup. Ct., and had the power and authority

88

to prevent or aid in the preventing the commission of the same; but neglected and/or refused to do so, and those wrongs were thereafter committed by the SD Sup. Ct., thus injuring the Estate of Mrs. Chute and Mr. Chute. (42 U.S.C.A. § 1986)

366.    Each of the eight unknown U.S. Sup. Ct. law clerk/attorneys are liable to Mrs. Chute's Estate, and Mr. Chute for their injuries, for all damages caused by such wrongful acts, including treble damages for deceit under SDCL § 16-18-28, which such persons by reasonable diligence could have prevented. (42 U.S.C.A. § 1986)

367.    Each one of the eight named Defendant U.S. Sup. Ct. Justices are liable to Mrs. Chute's Estate, and Mr. Chute for their injuries, for all damages caused by such wrongful acts, including treble damages for deceit under SDCL § 16-18-28, which such persons (each one of the eight named Defendant U.S. Sup. Ct. Justices) by reasonable diligence could have prevented. (42 USC § 1986)

## DEMAND FOR RELIEF No. 13

368.    Mrs. Chute (by and thru the Estate) demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

369.    Mrs. Chute (by and thru the Estate) demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

370.    Mrs. Chute (by and thru the Estate) demands payment from each of the eight named Defendant U.S. Sup. Ct. Justices, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

371.    Mrs. Chute (by and thru the Estate) demands payment from each of the eight named

Defendant U.S. Sup. Ct. Justices, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

372. Mr. Chute demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

373. Mr. Chute demands payment from each of the eight unknown U.S. Sup. Ct. law clerk/attorneys, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

374. Mr. Chute demands payment from each of the eight named Defendant U.S. Sup. Ct. Justices, pursuant to 42 USC § 1986, the total amount of all damages listed in this Complaint.

375. Mr. Chute demands payment from each of the eight named Defendant U.S. Sup. Ct. Justices, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint; trebled.

ADDITIONAL CLAIMS and JOINDER OF U.S. DISTRICT COURT CHIEF JUDGE the

HONORABLE JEFFREY L. VIKEN pursuant to 42 U.S.C. §§ 1985 and 1986.

376. All paragraphs above are incorporated herein by this reference.

377. Plaintiff's Combined Briefs; In Support of Motion to Amend Findings, and; In Support of Motion to Join Parties and Exhibits #1, #2, and #3 attached thereto, are hereby incorporated into this First Amended Complaint by this reference.

378. Mr. Chute, both, individually, and as the Personal Representative of the Estate of Donna M. Chute, brings this action against the U.S. District Court Chief Judge, the Honorable Jeffrey L. Viken (Judge Viken) pursuant to 42 U.S.C. §§ 1985(2) and (3), and § 1986; in his official capacity, and pursuant to SDCL § 16-18-28 individually as an attorney, as allowed and

90

specified in 42 U.S.C. § 1988.

379,    After Mr. Chute filed the original Complaint (Docket 1), along with a Motion to Proceed *In Forma Pauperis* (Docket 3), but before the Court would serve the summons and Complaint, Judge Viken conspired and colluded with his law clerk/attorney, 29 of the dismissed defendants, and possibly more unknown parties, under the disguise of "reviewing the Complaint" pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii), and engaged in the *"outright intentional exclusion"* of the disabled (Mr. Chute), by all out blanket discrimination, by the use of boilerplate forms specifically designed to accomplish that purpose (three exhibits/copies of those forms were attached to Plaintiff's Combined Briefs; In Support of Motion to Amend Findings, and; In Support of Motion to Join Parties as Exhibits #1, #2, and #3), and thereafter issued an ORDER (Docket 6) on said boilerplate form, wherein he dismissed all claims of discrimination made by Mr. Chute in the Complaint against 29 of the defendants listed; for the purpose of impeding, hindering, obstructing, and/or defeating, in any manner, the due course of justice in South Dakota, with intent to deny to a citizen, Mr. Chute, the equal protection of the laws; discriminating against Mr. Chute because he is disabled; denying Mr. Chute due process; and causing irreparable damages to the Estate and Mr. Chute.

380.    In the Court's ORDER (Docket 6), Judge Viken maliciously and in bad faith, asserted the affirmative defenses of: (1) the state's [South Dakota] sovereign immunity under the Eleventh Amendment; (2) the government's sovereign immunity, and; (3) absolute or judicial immunity, on behalf of the various 29 defendants (judges, attorneys, and the Secretary of the South Dakota Department of Labor and Regulation), in collusion and conspiracy with his law clerk/attorney, those 29 defendants dismissed, and possibly others, such as the United States Attorney for South Dakota, the U.S. Attorney General, and/or the South Dakota Attorney General.

381.    Fed. R. Civ. P . Rule 12(b) allows the only ways to present defenses: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." Even South Dakota law states that any claim of immunity "...may be raised by way of affirmative defense." See SDCL §§ 21-32A-2 and 3.

382.    Judge Viken acted with bad faith and malice by asserting defenses for the defendants, who were then dismissed by him, before serving the Complaint on them.

383.    Judge Vikens actions were motivated by an intent to deprive Mr. Chute, a disabled person, of the equal protection of the laws and due process under the Fourteenth Amendment.

384.    All out blanket discrimination against the disabled, and *"outright intentional exclusion"* from the courts, are the policies and customs of the U.S. District Court, District of South Dakota, Western Divisions Chief Judge Jeffrey L. Viken, who is the highest official responsible for setting policy in the governments business (judicial/courts) in western South Dakota.

385.    Judge Viken conspired and colluded with ALJ Hageman, Secretary Marcia Hultman, Judge Heidi Linngren, Employer, Insurer, the Law Firm, attorney Catherine Sabers, attorney Barbara Anderson Lewis, and their Unknown supervising attorney, to deny Mr. and Mrs. Chute due process under the 14ᵗʰ Amendment (U.S. Const. amend. XIV, § 1) by allowing Secretary Hultman and ALJ Hageman, to have prohibited *ex parte* communications with the Employer, Insurer, the Law Firm, attorney Catherine Sabers, attorney Barbara Anderson Lewis, and their Unknown supervising attorney; and to sign and enter the Findings of Fact and Conclusions of Law within 24 hours (which is statutorily prohibited by SDCL § 15-6-52(a)), without providing Mr. or Mrs. Chute (by and through her Estate) any knowledge, notice, or opportunity to be involved, and caused Mr. and Mrs. Chute irreparable damages. See ¶¶ 281-286 above.

386.    Judge Viken further conspired with the South Dakota Supreme Court (S.D. Sup. Ct.)

Justices, having knowledge that the S.D. Sup. Ct.: refused to allow Mr. Chute to represent himself, or the Estate of Donna M. Chute (See ¶ 328 herein above); ordering Mr. Chute to hire an attorney using his sole source of income, his monthly Social Security Disability Insurance (SSDI) benefits; attempting to exercise unlawful control over how Mr. Chute used those SSDI benefits, as prohibited by 42 U.S.C. § 407, not only threatening to dismiss Mr. Chute's and the Estate's appeal, but carrying out that threat and dismissing the appeal, intentionally discriminating against Mr. Chute for being disabled, and denying him access to the courts and judicial services and remedies; Judge Viken, having said knowledge, and having power to prevent or aid in preventing the commission of the wrongs about to be committed, refused and neglected to do so, violated 42 U.S.C. § 1986, and Mr. Chute's appeal has been dismissed by the S.D. Sup. Ct., and has caused irreparable damages to the Estate and Mr. Chute.

387.    Judge Viken, having knowledge of the wrongs conspired to be done by the S.D. Sup. Ct. and their law clerk/attorneys, and the U.S. Supreme Court Justices and their law clerk/attorneys, has refused and neglected to prevent or aid in the preventing of the commission of those wrongs, and is liable to Mr. Chute and the Estate for all damages caused by such wrongful acts; and may be joined aa a defendant in the action pursuant to 42 U.S.C. § 1986.

### DEMAND FOR RELIEF No. 14

388.    Mrs. Chute (by and thru the Estate) demands payment from Judge Viken, pursuant to 42 U.S.C. § 1986, the total amount of all damages listed in this Complaint, plus costs and interest.

389.    Mrs. Chute (by and thru the Estate) demands payment from Judge Viken, pursuant to SDCL § 16-18-28, the total amount of all damages listed in this Complaint, plus costs and interest; trebled.

390.    Mr. Chute demands payment from Judge Viken, pursuant to 42 USC § 1986, the total

93

amount of all damages listed in this Complaint, plus costs and interest.

391.    Mr. Chute demands payment from Judge Viken pursuant to SDCL § 16-18-28, the total

amount of all damages listed in this Complaint, plus costs and interest; trebled.

## ADDITIONAL SPECIAL DAMAGES

392.    The following claim for special damages is to be added to all special damage demands

listed anywhere in the First Amended Complaint.

Demand for payment of prescription drug costs for the last two years of Donna M.

Chute's life in the amount of $ 16,103.56. And where demanded, that amount trebled.

I declare under penalty of perjury that the foregoing is true and correct.


Signed this  31st  day of August, 2016.


Gary L. Chute – *pro se*
1550 Seger Dr. Lot #116
Rapid City, SD 57701
(605) 484-8584

94